UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE JOHN A. KRONSTADT

UNITED STATES DISTRICT JUDGE PRESIDING

- - -

```
USA,                               )
                                   )
              PLAINTIFF,           )
                                   )
VS.                                ) CR18-00050-JAK
                                   )
SHIH, ET AL.,                      )
              DEFENDANTS.          )
_____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

THURSDAY, OCTOBER 4, 2018; 8:30 AM

_____

ALEXANDER T. JOKO, CSR NO. 12272
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CA 90012
AJ_CSR@YAHOO.COM

1   **APPEARANCES OF COUNSEL:**

2   FOR PLAINTIFF:      KHALDOUN SHOBAKI
                        JUDITH HEIZ
3                       AUSA - OFFICE OF US ATTORNEY
                        312 NORTH SPRING STREET
4                       LOS ANGELES, CA 90012

5

6

7   FOR DEFENDANT SHIH:
                        JAMES SPERTUS
                        JOHN HANUSZ
8                       SPERTUS LANDES AND UMHOFER LLP
                        1990 SOUTH BUNDY DRIVE
9                       SUITE 705
                        LOS ANGELES, CA 90025

10

11  FOR DEFENDANT MAI:

                        JOHN LEWIS LITTRELL
12                      BIENERT MILLER AND KATZMAN PLC
                        903 CALLE AMANECER
13                      SUITE 350
                        SAN CLEMENTE, CA 92673
14
                        ANTHONY R. BISCONTI
15                      BIENERT MILLER AND KATZMAN PLC
                        903 CALLE AMANECER
16                      SUITE 350
                        SAN CLEMENTE, CA 92673
17

18

19

20

21

22

23

24

25

```
1          LOS ANGELES, CALIFORNIA; THURSDAY, OCTOBER 4, 2018

2                           8:30 AM

3                           - - - - -

4

5

6          THE COURT:  ITEM NO. 5, CR18-00050, USA V.

7   YI-CHI SHIH, ET AL.

8               WOULD YOU STATE YOUR APPEARANCES, PLEASE.

9          MR. SHOBAKI:  GOOD MORNING, YOUR HONOR.  KHAL

10  SHOBAKI AND JUDITH HEINZ ON BEHALF OF THE

11  UNITED STATES.

12         THE COURT:  GOOD MORNING.

13         MR. HANUSZ:  GOOD MORNING, YOUR HONOR.  JOHN

14  HANUSZ FOR YI-CHI SHIH.  HIS WAIVER IS ON FILE.

15         MR. LITTRELL:  GOOD MORNING, YOUR HONOR.  JOHN

16  LITTRELL HERE WITH TONY BISCONTI ON BEHALF OF KIET MAI.

17  HE IS PRESENT.  THERE'S A WAIVER ON FILE, BUT I HAVE

18  INSTRUCTED HIM TO APPEAR OUT OF AN ABUNDANCE OF

19  CAUTION, AS THEY SAY, SO THAT THE COURT CAN TAKE A

20  COLLOQUY AS THE GOVERNMENT -- WITHOUT BELABORING IT,

21  THE COURT -- I UNDERSTAND THE GOVERNMENT OBJECTS TO THE

22  WAIVER OF PRESENCE, AND THEY WANT A COLLOQUY TO BE

23  DONE.  SO I ASK THE COURT TO DO THAT TODAY SO, IN THE

24  FUTURE, MR. MAI WILL NOT HAVE TO APPEAR, IF THE COURT

25  DETERMINES THAT'S REQUIRED.
```

```
 1              THE COURT:  OKAY.  THANK YOU.

 2                   PLEASE BE SEATED.

 3                   LET'S START WITH THAT.  THE GOVERNMENT --

 4    WELL, THE GOVERNMENT -- DOES THE GOVERNMENT CONTINUE TO

 5    OBJECT TO THE WAIVER -- THE WRITTEN WAIVER OF

 6    APPEARANCE THAT WAS MADE -- WELL, ACTUALLY, EACH

 7    DEFENDANT MADE IT, AND ONE IS HERE.

 8              MR. SHOBAKI:  YES, YOUR HONOR.  FOR THE

 9    REASONS SET FORTH IN THE OBJECTION FILED BY THE

10    UNITED STATES.

11                   THE POSITION OF THE UNITED STATES IS THAT

12    THE WAIVER, AS CONTAINED IN THAT DOCUMENT, IS NOT

13    SUFFICIENT.  AND, ALBEIT, UNDERSTANDING THAT IT'S A

14    COURT FORM, THE UNITED STATES' POSITION IS THAT IT'S

15    NOT SUFFICIENT.  CITED SOME CASE LAW DEALING WITH THAT

16    ISSUE.

17                   YOU KNOW, LIKE ANY OTHER WAIVER OF

18    CONSTITUTIONAL RIGHTS, IT NEEDS TO BE KNOWING AND

19    VOLUNTARY.  THERE'S NO INDICATION ON THAT FORM THAT

20    IT'S KNOWING AND VOLUNTARY.

21                   COURTS HAVE DONE A VARIETY OF THINGS TO

22    SATISFY THAT.  THE MOST COMMON IS THE SAME THING THAT

23    THIS COURT DOES DURING EVERY PLEA HEARING, IS SPEAKING

24    WITH THE DEFENDANT AND THEIR ATTORNEY, MAKING SURE THEY

25    WERE ADVISED, AND THEN DEEMING THE WAIVER KNOWING AND
```

```
1    VOLUNTARY.

2                 WITH RESPECT TO TODAY'S PROCEEDING, THE

3    UNITED STATES' POSITION IS THAT, IF NO WAIVER IS -- NO

4    KNOWING AND VOLUNTARY WAIVER IS TAKEN BEFORE THE COURT

5    AND THE COURT PROCEEDS, THE UNITED STATES WOULD ASK,

6    WITH RESPECT TO MR. SHIH, THAT, AT THE NEXT HEARING IN

7    THIS MATTER, THAT THE COURT TAKE THAT WAIVER AND -- AT

8    THE VERY LEAST.

9                 THERE'S AN ARGUMENT THAT, UNDER RULE 43,

10   THE ISSUES PRESENTED HERE ARE ISSUES OF LAW.  THERE'S

11   AN ARGUMENT THAT POSSIBLY NO PRESENCE IS REQUIRED FOR

12   THE HEARING ON THAT BASIS.

13                HOWEVER, BECAUSE THE UNITED STATES,

14   ULTIMATELY, IN ANY APPELLATE PROCEEDING, WOULD HAVE TO

15   SHOW THAT A WAIVER WAS KNOWING AND VOLUNTARY, TO

16   PROTECT THE RECORD, WE'RE ASKING THAT THE COURT TAKE

17   THOSE WAIVERS.

18           THE COURT:  WHAT IS YOUR POSITION WITH RESPECT

19   TO A WAIVER MADE TODAY ON THE RECORD WITH MR. MAI AND

20   ITS APPLICATION TO FUTURE PROCEEDINGS, IF HE SIGNS A

21   WRITTEN WAIVER EACH TIME?

22           MR. SHOBAKI:  YOUR HONOR, THE GOVERNMENT'S

23   POSITION IS THAT A WAIVER TAKEN UNDER ADVICE BY THE

24   COURT TODAY BY MR. MAI WOULD BE SUFFICIENT, OTHER THAN

25   FOR CRITICAL ASPECTS OF THE CASE, SUCH AS TRIAL,
```

```
1   SENTENCING.  BUT FOR OTHER PROCEEDINGS, I THINK THAT
2   WAIVER WOULD BE SUFFICIENT.
3             THE COURT:  AND DO YOU AGREE WITH THAT?
4             MR. LITTRELL:  YES, I DO.
5             THE COURT:  OKAY.  THANK YOU.
6                  MR. HANUSZ, WHAT'S YOUR VIEW WITH RESPECT
7   TO MR. SHIH?
8                  MR. HANUSZ:  I'M GOING TO TAKE THE LECTERN, IF
9   I CAN, YOUR HONOR?
10            THE COURT:  THAT'S FINE.
11            MR. HANUSZ:  IT'S EASIER THAN BENDING OVER.
12                 SO A COUPLE THINGS, YOUR HONOR.  AS THE
13  GOVERNMENT NOTES, WE FILED THE COURT'S FORM MOTION.
14  THERE'S NO -- THERE IS NO SLOT ON THAT PIECE OF PAPER
15  FOR THE COURT TO SIGN.
16                 THE GOVERNMENT HAS CITED NO CONTROLLING
17  CASE LAW.
18                 THE SECOND CIRCUIT CASE WHICH THE
19  GOVERNMENT CITES INDICATES IT'S NOT A CONSTITUTIONAL
20  ISSUE.  AND IT ALSO INDICATES THAT, SHOULD THE COURT
21  WANT TO TAKE A COLLOQUY WITH THE ATTORNEY, THE COURT
22  MAY DO THAT.  THE CIRCUMSTANCES IN THAT CASE DEALT WITH
23  A RESENTENCING.  WE'RE DEALING WITH A MOTION'S HEARING.
24  AND IT WAS ALSO A LETTER SIGNED -- WHAT WAS SUBMITTED
25  TO THE COURT WAS A LETTER SIGNED BY THE ATTORNEY, WHICH
```

1   IS VERY DIFFERENT FROM WHAT WE HAVE HERE.  AND,

2   CERTAINLY, DR. SHIH HAS SIGNED PLENTY OF BOND

3   DOCUMENTS.  THE COURT IS ABLE TO COMPARE THOSE

4   SIGNATURES AND MAKE A JUDGMENT AS TO WHETHER THOSE

5   SIGNATURES ARE ACCURATE.

6               DR. SHIH IS NOT HERE TODAY BECAUSE HIS

7   BROTHER DIED.  AND HE IS IN ATLANTA WITH PRETRIAL

8   SERVICES' PERMISSION TO BE AT A FUNERAL.  HE WOULD

9   OTHERWISE BE HERE.  THIS IS SOMETHING THAT CAME UP IN

10  THE LAST COUPLE OF DAYS.

11              BUT THERE'S NO COLLOQUY NEEDED.  AND OUR

12  POSITION IS KIND OF MUCH ADO ABOUT NOTHING.  WE HAVE

13  FILED THE FORM.  I'M HAPPY TO STATE TO THE COURT THAT I

14  HAVE ADVISED DR. SHIH ABOUT HIS RIGHTS.

15              THE COURT:  YOU'VE HAD A -- DID YOU CONFER

16  WITH DR. SHIH AFTER THE GOVERNMENT OBJECTED?

17              MR. HANUSZ:  NO.  I CONFERRED BEFORE THE

18  WAIVER WAS SIGNED.

19              THE COURT:  SO YOU HAVEN'T CONFERRED WITH HIM

20  SINCE THE WAIVER WAS SIGNED?

21              MR. HANUSZ:  YOUR HONOR, THE OBJECTION -- OR

22  THE --

23              THE COURT:  YOU'VE ANSWERED MY QUESTION.

24              PRIOR TO THE SIGNING OF THE WAIVER, I

25  DON'T WANT TO INTRUDE INTO THE ATTORNEY/CLIENT

```
 1    PRIVILEGE BEYOND A VERY -- AT ALL, FRANKLY.  SO I'M NOT

 2    ASKING YOU FOR ADVICE, ANY COMMUNICATION ABOUT LEGAL

 3    ADVICE NECESSARILY GIVEN.

 4                    BUT IS THERE ANY QUESTION IN YOUR MIND

 5    THAT DR. SHIH UNDERSTOOD THAT HE HAD THE RIGHT TO BE

 6    PRESENT?

 7                 MR. HANUSZ:  THERE'S NO QUESTION IN MY MIND,

 8    YOUR HONOR.

 9                 THE COURT:  AND IS THERE ANY QUESTION IN YOUR

10    MIND THAT IN LIGHT OF THE -- I'M SORRY TO HEAR ABOUT

11    HIS LOSS.  THAT IN LIGHT OF THE FAMILY LOSS, THAT HAD

12    HE WISHED TO DO BOTH - THAT IS TO SAY, TRAVEL TO

13    ATLANTA TO BE AT THE MEMORIAL SERVICE AND ATTEND A

14    HEARING ON THE ISSUES THAT ARE SCHEDULED FOR TODAY -

15    ONE OPTION COULD HAVE BEEN TO REQUEST THAT THE HEARING

16    BE RESCHEDULED SO THAT HE CAN DO BOTH?

17                 MR. HANUSZ:  SO THE QUESTION IS, IS THERE ANY

18    DOUBT IN MY -- I GUESS I'M NOT SURE OF THE COURT'S

19    QUESTION.

20                 THE COURT:  MY QUESTION IS, DO YOU FEEL -- DO

21    YOU KNOW WHETHER HE FELT HE HAD TO MAKE A CHOICE,

22    ATTEND A HEARING OR ATTEND A FUNERAL?

23                 MR. HANUSZ:  NO, I DON'T BELIEVE HE THOUGHT HE

24    HAD TO MAKE A CHOICE.

25                 THE COURT:  SO IT IS YOUR VIEW THAT THE -- BY
```

1  SIGNING THE WAIVER, HE KNOWINGLY, VOLUNTARILY AND

2  INTELLIGENTLY GAVE UP HIS RIGHT TO BE HERE TODAY WITH

3  RESPECT TO TODAY'S PROCEEDINGS; IS THAT RIGHT?

4           MR. HANUSZ:  IT'S CERTAINLY WITH RESPECT TO

5  TODAY'S PROCEEDINGS, BUT I THINK -- YES, YOUR HONOR.

6  WITH RESPECT TO TODAY'S PROCEEDINGS.

7              I THINK THE WAIVER IS A LITTLE BROADER

8  THAN THAT.  BUT, YES, WITH RESPECT TO TODAY'S

9  PROCEEDINGS, THAT'S CORRECT.

10          THE COURT:  YOU SAID THIS EARLIER, BUT I WANT

11 TO CONFIRM IT.  I TAKE IT THAT -- IS IT YOUR VIEW HE

12 WILL BE HERE IN THE FUTURE ABSENT SOME UNUSUAL

13 CIRCUMSTANCES LIKE THE ONES PRESENTED FOR TODAY?

14          MR. HANUSZ:  I DO, YOUR HONOR.  JUST AS HE'S

15 BEEN HERE FOR EVERY HEARING.

16          THE COURT:  THAT'S FINE.

17              THANK YOU.

18          MR. HANUSZ:  THANK YOU, YOUR HONOR.

19          THE COURT:  MR. MAI?

20          DEFENDANT MAI:  YES.

21          THE COURT:  HAVE YOU BEEN FOLLOWING ALONG WITH

22 THE DISCUSSIONS THAT I'VE HAD?

23          DEFENDANT MAI:  YES.

24          THE COURT:  YOU UNDERSTAND YOU HAVE A RIGHT TO

25 BE PRESENT AT EVERY PROCEEDING?

```
1            DEFENDANT MAI:  YES, YOUR HONOR.
2            THE COURT:  AND THE REASON FOR THAT IS, SO
3    THAT IF THERE'S -- AMONG OTHER THINGS, IS THAT YOU
4    FULLY UNDERSTAND WHAT'S HAPPENED.
5                  AND ANOTHER REASON FOR THAT IS, SO THAT
6    IF, DURING THE COURSE OF ANY PROCEEDING, THERE'S
7    INFORMATION THAT YOU HAVE AND YOU WISH TO SHARE IT WITH
8    COUNSEL OR WISH TO HAVE COUNSEL COMMUNICATE TO YOU SO
9    YOU CAN, IN TURN, PROVIDE INFORMATION TO COUNSEL, THAT,
10   IF YOU'RE NOT HERE, YOU CAN'T DO THAT.
11            DO YOU UNDERSTAND THAT?
12            DEFENDANT MAI:  YES, I DO, YOUR HONOR.
13            THE COURT:  OKAY.  BUT WITH RESPECT -- YOU
14   SIGNED A FORM PRIOR TO TODAY; IS THAT RIGHT?
15            DEFENDANT MAI:  YES, I DID.
16            THE COURT:  AND BY SIGNING THAT FORM, YOU --
17   DID YOU UNDERSTAND THAT YOU WERE GIVING UP YOUR RIGHT
18   TO BE HERE TODAY?
19            DEFENDANT MAI:  YES, YOUR HONOR.
20            THE COURT:  BUT YOU'RE HERE NONETHELESS;
21   CORRECT?
22            DEFENDANT MAI:  YES, YOUR HONOR.
23            MR. LITTRELL:  TO CLARIFY, HE WAS NOT GIVING
24   UP HIS RIGHT TO BE HERE.
25            THE COURT:  WELL --
```

1          MR. LITTRELL:  I DON'T MEAN TO MUDDY UP THE

2     RECORD, BUT HE WAS GIVING HIMSELF THE OPTION NOT TO BE

3     HERE.

4          THE COURT:  I THINK HE HAD THE RIGHT TO BE

5     HERE.  AND IF HE CHOSE NOT TO BE HERE, I THINK HE WAS

6     GIVING UP THE RIGHT TO BE HERE.

7          MR. LITTRELL:  I AGREE WITH THAT, YOUR HONOR.

8          DEFENDANT MAI:  I UNDERSTOOD YOU ON THAT

9     POINT.

10         THE COURT:  AND, MR. MAI, DO YOU ALSO

11    UNDERSTAND THAT, IF THERE WERE A HEARING IN THE FUTURE,

12    AND AFTER CONFERRING WITH MR. LITTRELL AND/OR

13    MR. BISCONTI, YOU DETERMINED THAT YOU -- YOU WERE NOT

14    GOING TO BE AT THE HEARING, THAT YOU DID NOT NEED TO BE

15    AT THE HEARING, EVEN THOUGH YOU HAD THE RIGHT TO BE

16    HERE, DO YOU UNDERSTAND THAT YOU COULD SIGN ANOTHER

17    FORM WITH RESPECT TO THAT HEARING?

18         DEFENDANT MAI:  ABSOLUTELY, YOUR HONOR.

19         THE COURT:  IS THAT YOUR PLAN?

20         MR. LITTRELL:  NO, YOUR HONOR.

21          WE INTEND THIS FORM TO WAIVE HIS RIGHT TO

22    BE PRESENT AT ANY HEARING, OTHER THAN, YOU KNOW, AS SET

23    FORTH IN THE TERMS OF THE ORDER.  WE DID NOT INTEND TO

24    DO THIS PIECEMEAL.  I DON'T THINK THE GOVERNMENT

25    OBJECTS TO THAT.

```
 1              HE'S WAIVING HIS RIGHT TO BE PRESENT AS

 2   SET FORTH IN THAT ORDER.

 3              THE COURT:  DO YOU AGREE WITH THAT?

 4              MR. SHOBAKI:  YES, YOUR HONOR.

 5              THE COURT:  ALL RIGHT.  I'LL ACCEPT THE

 6   WAIVER, PROVIDED, HOWEVER, THAT IF THERE IS -- IF

 7   EITHER OR BOTH DEFENDANTS DO NOT OR DOES NOT APPEAR AT

 8   A HEARING, AND IN MY DETERMINATION THE MATTERS ARE

 9   SUFFICIENTLY WEIGHTY THAT I'M CONCERNED ABOUT THEIR NOT

10   BEING PRESENT, I'LL RESERVE THE ISSUE AS TO WHETHER I

11   WILL PROCEED WITHOUT EITHER OR BOTH OF THEM AT SOME

12   SUCH HEARING IN THE FUTURE, NOTWITHSTANDING THEIR

13   AGREEMENT THAT THEY DO NOT NEED TO BE HERE.

14              NOW, THERE WAS ANOTHER ISSUE CONCERNING

15   THE TERMS OF THE BOND OF MR. SHIH; CORRECT?

16              THAT WAS WHETHER THE DAILY PHONE CONTACT

17   HAD TO BE MADE?

18              MR. HANUSZ:  THAT'S THE -- TWO ISSUES THERE,

19   YOUR HONOR.  THE FIRST IS THE DRUG TESTING CONDITION,

20   WHICH THE GOVERNMENT APPEARS TO NOT OBJECT TO LIFTING

21   THAT.  AND THEN THE PHONE -- THE DAILY PHONE CALL TO

22   PRETRIAL SERVICES.

23              THE COURT:  IN YOUR SUBMISSION WITH RESPECT TO

24   THAT, YOU STATED THAT YOUR CLIENT IS -- IS HE WEARING

25   AN ELECTRONIC MONITORING DEVICE?
```

```
1              MR. HANUSZ:  HE IS, PURSUANT TO THIS COURT'S
2     ORDER.
3              THE COURT:  OKAY.  HE'S WEARING THAT IN
4     ATLANTA, AS FAR AS YOU KNOW?
5              MR. HANUSZ:  HE IS, YOUR HONOR.
6              AND JUST -- IF I MAY, YOUR HONOR?
7              I SPOKE TO MANUEL IBANEZ FROM PRETRIAL
8     SERVICES ABOUT THIS ISSUE.  I THINK IT'S CLEARLY STATED
9     IN OUR POSITION, BUT HE IS -- SUPPORTS LIVING BOTH
10    CONDITIONS.
11             THE COURT:  I UNDERSTAND.
12             MR. SHOBAKI, ARE YOU GOING TO ADDRESS
13    THIS?
14             MS. HEINZ:  YOUR HONOR, I WILL ADDRESS THIS.
15             THE COURT:  ALL RIGHT.  MS. HEINZ?
16             MS. HEINZ:  YES, YOUR HONOR.
17             THERE'S NO NEW INFORMATION HERE TO
18    SUPPORT A CHANGE IN THE BOND CONDITIONS.
19             AT THE TIME THAT YOUR HONOR ORDERED THE
20    INITIAL BOND CONDITIONS, YOUR HONOR ORDERED THAT
21    MR. SHIH BE PLACED ON ACTIVE GPS MONITORING WITH THE
22    ANKLE BRACELET, AND ALSO THAT HE CALL ONCE A DAY AT --
23    WELL, THEY SET IT UP FOR 2:00 O'CLOCK EACH DAY.  THAT
24    HE CALL EACH DAY AND PERSONALLY SPEAK TO HIS PRETRIAL
25    SERVICES OFFICER AND CONFER WITH THE PRETRIAL OFFICER
```

```
1    AND TELL HIM WHERE HE WAS.  AND I ASSUME ANY OTHER

2    INFORMATION THAT THE PRETRIAL SERVICES OFFICER WISH TO

3    KNOW AT THAT TIME.

4              SO THOSE TWO CONDITIONS WERE SET UP.  AND

5    YOUR HONOR SET THOSE UP ACCORDING TO THE DETENTION --

6    PRETRIAL SERVICES BOND CONDITIONS ORDER THAT YOUR

7    HONOR -- THAT YOUR ORDER -- I'M SORRY, THAT YOUR HONOR

8    ISSUED, SET THOSE UP BECAUSE OF THE EXTREME FLIGHT RISK

9    THAT DEFENDANT SHIH POSES.

10              THOSE FLIGHT RISKS FACTORS HAVE NOT

11    CHANGED HERE.  THERE IS NOTHING DIFFERENT HERE.

12              TO THE EXTENT THAT DEFENDANT SHIH AND/OR

13    THE PRETRIAL SERVICES OFFICER HAS ARGUED THAT THAT

14    PHONE CALL IS REDUNDANT BECAUSE PRETRIAL SERVICES

15    KNOWS, ACCORDING TO THE ACTIVE MONITORING, WHERE

16    DEFENDANT SHIH IS, THAT DOESN'T CHANGE THE FACT THAT

17    THAT WAS THE ORDER FROM THE VERY BEGINNING.  AND SO

18    THAT REDUNDANCY WAS BUILT INTO THE SYSTEM.  IT WAS AN

19    EXTRA MEASURE, WHICH THIS COURT IMPOSED, DUE TO THE

20    EXTREME FLIGHT RISK THAT DEFENDANT SHIH POSES.  SO THE

21    GOVERNMENT BELIEVES THERE IS NOTHING THAT SHOULD BE

22    CHANGED HERE.

23              THE GOVERNMENT DOES NOTE THAT DR. SHIH

24    HAS UNDERGONE MANY DRUG TESTS AND HAS NEVER TESTED

25    POSITIVE FOR DRUGS.  SO IT DOES THINK THAT THAT'S A
```

1    CHANGED CONDITION.  AND SO IT DOES NOT OPPOSE

2    ELIMINATING THAT CONDITION FROM THE BOND CONDITIONS.

3              THE COURT:  ALL RIGHT.  DO YOU CONTEND THAT

4    DR. SHIH DIDN'T MAKE ANY OF THE REQUIRED CALLS?

5              MS. HEINZ:  NO.  THE GOVERNMENT DOESN'T -- THE

6    GOVERNMENT'S UNDERSTANDING IS, THAT HE DOES MAKE THAT

7    PHONE CALL EVERYDAY.

8              THE COURT:  AND, MR. HANUSZ, WHAT IS THE

9    BURDEN OF MAKING THE -- WHAT IS THE BASIS FOR THE

10   REQUEST AS TO THE PHONE -- DAILY PHONE CALL?

11             MR. HANUSZ:  SO, YOUR HONOR, THE BASIS OF THE

12   REQUEST -- AND I WOULD DISAGREE WITH THE GOVERNMENT'S

13   POSITION.  THERE ARE CHANGED CIRCUMSTANCES --

14             THE COURT:  NO.

15             WHAT I WANT TO KNOW IS, WHY IS IT

16   BURDENSOME TO MAKE A PHONE CALL EVERYDAY?

17             MR. HANUSZ:  I DON'T THINK THE QUESTION IS

18   "WHY IS IT."  I WOULD REFRAME THE QUESTION AS --

19             THE COURT:  WELL, HOW ABOUT ANSWERING MY

20   QUESTION?

21             MR. HANUSZ:  HOW IS IT BURDENSOME?  IT'S ONE

22   MORE OBLIGATION.  IT'S ONE MORE REQUIREMENT THAT HE HAS

23   TO FULFILL AS PART OF HIS BOND.

24             YOUR HONOR, IF I MAY?

25             THE COURT:  BRIEFLY.  GO AHEAD.

```
1            MR. HANUSZ:  MY UNDERSTANDING IS THAT THE VAST
2    MAJORITY OF DAYS, HE JUST LEAVES A MESSAGE.  HE CALLS
3    MR. IBANEZ'S CELL PHONE AND LEAVES A MESSAGE.
4                    WITH HIS GPS, THEY KNOW WHERE HE IS ALL
5    THE TIME.
6            THE COURT:  IS THERE ANYTHING YOU WANTED TO
7    ADD?
8            MS. HEINZ:  YOUR HONOR, EVEN IF HE'S JUST
9    LEAVING A MESSAGE, THEN HIS PRETRIAL SERVICES OFFICER
10   RECEIVES THAT MESSAGE, KNOWS THAT HE HAS COMPLIED WITH
11   IT.  AND IT DOES NOT APPEAR, AT LEAST TO THE
12   GOVERNMENT, THAT THIS IS PARTICULARLY BURDENSOME AT
13   ALL.
14           THE COURT:  THANK YOU.
15               MY VIEW ON THIS IS THE FOLLOWING:  I
16   THINK IT'S WITHIN THE DISCRETION OF A COURT TO CONSIDER
17   A REQUEST TO MODIFY CERTAIN CONDITIONS, AND CAN
18   EVALUATE THAT REQUEST IN THE CONTEXT OF WHAT THE
19   POSITION OF THE OFFICER WHO IS OVERSEEING THE DEFENDANT
20   STATES AS TO THAT PERSON'S VIEW, BECAUSE THAT IS THE
21   PERSON THAT IS CARRYING OUT THE OVERSIGHT.
22               I AGREE THAT -- AND THERE'S NO DISPUTE
23   BETWEEN THE PARTIES WITH RESPECT TO WHETHER THE DRUG
24   TESTING CONDITION SHOULD BE MODIFIED BY BEING
25   TERMINATED.  AND I AGREE THAT THE DRUG TESTING
```

```
1    CONDITION WILL BE REMOVED, PROVIDED, HOWEVER, THIS

2    WOULD BE WITHOUT PREJUDICE TO A LATER REQUEST BY THE

3    PRETRIAL SERVICES OFFICER TO REINSTATE THAT CONDITION,

4    IF THERE'S A FACTUAL BASIS UPON WHICH SUCH A REQUEST IS

5    MADE.

6              WITH RESPECT TO THE REQUIRED PHONE

7    CONTACT, MY VIEW IS THAT, I DON'T HAVE EVIDENCE.  I

8    HAVE STATEMENTS CONCERNING WHETHER THE DEFENDANT AND

9    THE PRETRIAL SERVICES OFFICER ACTUALLY SPOKE EACH TIME

10   THE CALL -- EACH TIME DR. SHIH CALLED.  I DON'T KNOW.

11             BUT MY VIEW IS THAT -- AND I ALSO AM OF

12   THE VIEW THAT MAKING A DAILY CALL, PARTICULARLY IF

13   IT'S -- IF THE REPRESENTATION THAT'S MADE IS THAT IT'S

14   LEAVING A VOICE MAIL, THAT LEAVING A VOICE MAIL ONCE A

15   DAY AT A CERTAIN HOUR IS NOT PARTICULARLY BURDENSOME.

16             AT THE SAME TIME, I'M MINDFUL THAT THE

17   PRETRIAL SERVICES OFFICER DOESN'T BELIEVE THAT THIS

18   CONDITION REMAINS ONE THAT IS NECESSARY TO ENSURE

19   COMPLIANCE.

20             AND IN LIGHT OF THE ELECTRONIC

21   MONITORING, I'M GOING TO MODIFY THE CALL REQUIREMENT

22   AND REQUIRE THAT IT BE A WEEKLY CALL TO BE PLACED

23   MONDAY OF EACH WEEK AT THE SAME HOUR THAT WAS

24   PREVIOUSLY SET BY THE PRETRIAL SERVICES OFFICER AND

25   DEFENDANT DR. SHIH.
```

```
 1                      PROVIDED, HOWEVER, AGAIN, THAT TO THE

 2      EXTENT -- THAT IS WITHOUT PREJUDICE TO A DETERMINATION

 3      WITHIN THE DISCRETION OF THE PRETRIAL SERVICES OFFICER

 4      TO REQUIRE MORE FREQUENT CALLS, IF THERE'S A BASIS UPON

 5      WHICH THE PRETRIAL OFFICER BELIEVES, IN HIS DISCRETION,

 6      THAT MORE CALLS ARE APPROPRIATE.

 7                      MS. HEINZ:  YOUR HONOR, MAY I BE HEARD FOR ONE

 8      MINUTE?

 9                      THE COURT:  YES.

10                      MS. HEINZ:  WOULD YOU CONSIDER ALLOWING THE

11      PRETRIAL SERVICES OFFICER MAKE THE DAY OF THE WEEK?

12      MONDAYS CAN SOMETIMES BE BUSY FOR PRETRIAL.

13                      THE COURT:  ANY OBJECTION TO THAT?

14                      MR. HANUSZ:  NO, YOUR HONOR.  JUST SO IT'S

15      CLEAR TO EVERYONE INVOLVED.  THAT'S FINE.

16                      THE COURT:  I'M GOING TO SET IT -- I'M GOING

17      TO SET IT FOR MONDAY AT THE 2:00 P.M. HOUR THE PARTIES

18      PREVIOUSLY HAD BEEN USING.  HOWEVER, IN THE DISCRETION

19      OF THE PRETRIAL SERVICES OFFICER, A DIFFERENT TIME CAN

20      BE ADOPTED AND A DIFFERENT DAY OF THE WEEK CAN BE

21      ADOPTED.

22                      MR. HANUSZ:  THANK YOU, YOUR HONOR.

23                      THE COURT:  THANK YOU.

24                      MS. HEINZ:  THANK YOU, YOUR HONOR.

25                      THE COURT:  THE ANKLE -- ALL OTHER TERMS AND
```

```
1    CONDITIONS OF THE BOND REMAIN IN PLACE, INCLUDING THE
2    ELECTRONIC MONITORING.
3              THE NEXT ISSUE CONCERNS THE -- THERE ARE
4    TWO MOTIONS.  ONE IS A MOTION TO DISMISS.  AND THE
5    OTHER, A MOTION -- OR A REQUEST FOR A BILL OF
6    PARTICULARS.
7              JUST A MOMENT.
8              I'M GOING TO PROVIDE YOU WITH -- EACH
9    SIDE WITH A COPY OF A TENTATIVE RULING WITH RESPECT TO
10   THE MOTION TO DISMISS COUNT 9.
11             AS IT STATES AT THE TOP, THIS IS ONLY A
12   TENTATIVE.  IT'S NOT TO BE COPIED IN ANY FASHION,
13   WHETHER BY CAMERA, TELEPHONE, IN HAND OR ANY OTHER
14   MEANS.  AND AT THE END OF TODAY'S HEARING, IT'S TO BE
15   RETURNED TO THE CLERK.
16             AND, AGAIN, THIS ADDRESSES ONLY THE
17   MOTION TO DISMISS.  IT DOESN'T ADDRESS THE BILL OF
18   PARTICULARS.
19             **(PAUSE IN THE PROCEEDINGS)**
20        THE COURT:  MR. LITTRELL, HAVE YOU HAD A
21   CHANCE TO REVIEW THAT?
22        MR. LITTRELL:  I DID, YOUR HONOR.
23        THE COURT:  AND, MR. HANUSZ?
24        MR. HANUSZ:  YES, YOUR HONOR.
25        THE COURT:  OKAY.  MS. HEINZ?
```

```
 1              MS. HEINZ:  YES, YOUR HONOR.

 2              THE COURT:  MR. SHOBAKI?

 3              MR. SHOBAKI:  YES, THE GOVERNMENT HAS REVIEWED

 4     IT.  THANK YOU.

 5              THE COURT:  WHO WILL ADDRESS THIS FOR THE

 6     MOVING PARTIES?

 7              MR. LITTRELL:  YOUR HONOR, I APPRECIATE THE

 8     THOUGHT THAT THE COURT PUT INTO THE TENTATIVE RULING.

 9     OBVIOUSLY, WE DISAGREE.  AND I THINK THAT THIS IS A

10     DIFFICULT ISSUE, AND I WANT TO LET THE COURT KNOW WHY I

11     THINK THE COURT GETS IT WRONG HERE.

12              THE COURT:  IT DOES HAPPEN TO ME FROM TIME TO

13     TIME, PEOPLE DISAGREE WITH WHAT I THINK.

14                BUT TO BE CLEAR, I DON'T TYPICALLY GIVE

15     OUT WRITTEN TENTATIVE VIEWS.  BUT I RECOGNIZE, HERE,

16     THE ISSUES ARE SOMEWHAT COMPLEX.  SO I WANTED YOUR

17     VIEWS AFTER YOU'VE READ THIS, SO I CAN LEARN FROM WHAT

18     YOU HAVE TO SAY.

19                GO AHEAD, PLEASE.

20              MR. LITTRELL:  I THINK, AS A STARTING POINT, I

21     THINK IT'S ALL -- ALL THESE CASES HAVE TO BE READ WITH

22     THE UNDERSTANDING THAT, WHEN CONGRESS PASSED THIS

23     STATUTE, THEY WANTED TO PENALIZE HACKING.  THEY WANTED

24     TO PUNISH UNAUTHORIZED ACCESS TO A COMPUTER.  THEY

25     DIDN'T WANT TO PUNISH THE UNAUTHORIZED USE OF
```

1    INFORMATION THAT WAS OBTAINED FROM THE COMPUTER,

2    REGARDLESS OF HOW IT WAS OBTAINED.

3              AND THE REASONING THERE WAS, IF THE

4    STATUTE WERE INTERPRETED BROADLY ENOUGH TO MAKE -- TO

5    CRIMINALIZE WITH A FELONY, SOMEBODY WHO HAD JUST

6    MISUSED INFORMATION THAT HAD BEEN UNLAWFULLY ACCESSED,

7    IT WOULD REACH A BROAD SWATH OF CONDUCT.  AND THAT'S

8    NOT WHAT CONGRESS INTENDED.

9              AND SO THE FIRST THREE CASES THAT THE

10   COURTS DECIDED RECOGNIZE THAT DISTINCTION.

11             AND OUR ARGUMENT, ESSENTIALLY, JUST TO

12   BOIL IT DOWN, IS THAT THIS CASE REALLY IS

13   INDISTINGUISHABLE FROM NOSAL I, WHICH IS THE 2012

14   DECISION IN THE NINTH CIRCUIT.

15             THE CASES LIE ON A SPECTRUM, THE WAY I

16   SEE IT, WITH BREKKA ON ONE END OF THE SPECTRUM AND

17   NOSAL II ON THE OTHER END OF THE SPECTRUM.

18             BUT A COUPLE -- AND I CAN TELL THE

19   COURT'S READ THE CASES AND UNDERSTANDS WHAT THEY SAY.

20   AND IT SOUNDS LIKE, ULTIMATELY, THE COURT'S CONCLUSION

21   IS THE SAME AS THE GOVERNMENT'S, WHICH IS THAT THIS IS

22   LIKE NOSAL II AND NOT LIKE NOSAL I.

23             I WOULD MAINTAIN THAT THIS CASE IS JUST

24   LIKE NOSAL I.  AND IT REALLY TURNS ON TWO THINGS.  ONE

25   IS, WHY IS THE USE UNAUTHORIZED OR WHY IS THE ACCESS

```
 1    UNAUTHORIZED?
 2                  AND, TWO, NOTICE.
 3                  IN TERMS OF UNAUTHORIZED ACCESS, ONE OF
 4    THE THINGS THAT'S VERY CLEAR FROM THESE STATUTES IS
 5    THAT, SIMPLY OBTAINING -- SIMPLY, BASICALLY, IF A -- IF
 6    A COMPUTER OR A WEBSITE OR A COMPANY HAS A POLICY THAT
 7    FORBIDS THE USE OF INFORMATION IN A CERTAIN WAY, THAT
 8    DOES NOT -- AND SOMEBODY BLATANTLY VIOLATES THAT
 9    POLICY, THAT IS NOT AN UNAUTHORIZED ACCESS TO
10    INFORMATION.  THAT'S AN UNAUTHORIZED USE.
11                  SO IN NOSAL I, THERE WERE EMPLOYEES THAT
12    WERE E-MAILING FORMER EMPLOYEES OF THE COMPANY
13    CONFIDENTIAL INFORMATION FROM THE COMPANY'S SERVER.
14    THAT WAS IN DIRECT VIOLATION OF THAT COMPANY'S POLICY.
15    AND IT CREATED REAL HARM TO THAT COMPANY.
16                  NONETHELESS, THE NINTH CIRCUIT HELD,
17    BECAUSE THE ORIGINAL ACCESSORS OF THAT INFORMATION WERE
18    AUTHORIZED TO ACCESS IT, WHAT HAPPENED TO IT AFTERWARD
19    DIDN'T MATTER.  IT DIDN'T MATTER HOW IT WAS USED OR WHO
20    USED IT WITHOUT AUTHORIZATION BECAUSE THERE WAS AT
21    LEAST ONE ORIGINAL AUTHORIZED ACCESS.
22                  WHAT DIFFERENTIATES NOSAL I FROM NOSAL II
23    IS THAT, IN NOSAL II, THERE WAS NO ORIGINAL AUTHORIZED
24    ACCESS TO THE COMPUTER.  AND THE REASON FOR THAT WAS
25    THAT AUTHORIZATION HAD BEEN EXPLICITLY CUTOFF.
```

1          SO IN NOSAL II, AUTHORIZATION TO ACCESS

2     THE DATA HAD BEEN RESCINDED.

3               AND SO HERE'S THE CRITICAL DIFFERENCE:

4     IT'S ONE THING TO VIOLATE A COMPANY POLICY.  IT'S

5     ANOTHER TO ACCESS DATA AFTER YOUR ACCESS HAS BEEN

6     EXPLICITLY RESCINDED.

7               AND THAT'S THE DISTINCTION THAT THEY MADE

8     IN THE FACEBOOK CASE AS WELL.  THAT WAS ALSO A CASE

9     WHERE THE DEFENDANTS WERE ACCUSED OF, SORT OF, MISUSING

10    LOG-IN CREDENTIALS.  THAT THERE'S NO DOUBT THAT THEY

11    HAD AUTHORIZATION TO LOG INTO FACEBOOK.  THEY CERTAINLY

12    HAD A RIGHT EVEN TO -- FACEBOOK HAD A POLICY THAT

13    FORBID THEM, THE FACEBOOK USERS, FROM GIVING THEIR

14    LOG-IN CREDENTIALS TO A THIRD PARTY.  THEY VIOLATED

15    THAT POLICY.  AND, YET, THE COURT MADE CLEAR THAT

16    VIOLATING THAT POLICY WOULD NOT BE A VIOLATION OF THE

17    COMPUTER FRAUD AND ABUSE ACT.

18               WHAT MADE IT A CRIMINAL STATUTE IS THAT,

19    THERE WAS A CEASE AND DESIST ORDER.  SO THERE WAS A

20    SPECIFIC ORDER, A DIRECTION FROM FACEBOOK CLARIFYING

21    THAT THESE PEOPLE DID NOT HAVE ACCESS TO THE

22    INFORMATION.

23               AND WHAT THE --

24          THE COURT:  WHY ISN'T THERE A FACTUAL ISSUE

25    POTENTIALLY PRESENTED AS TO WHETHER DR. SHIH HAD

1    RECEIVED PERMISSION BY -- FROM CREE TO USE THE

2    COMPUTER?

3                    MR. LITTRELL:  THAT MAY WELL BE A FACTUAL

4    ISSUE AT TRIAL.

5                    AND I AGREE WITH THE GOVERNMENT THAT THAT

6    WOULD BE A COMPLETE DEFENSE TO THIS CHARGE.

7                    I ALSO AGREE WITH THE GOVERNMENT THAT

8    WE'RE STUCK WITH WHAT'S PLED IN THIS ACTUAL INDICTMENT.

9                    AND THE GOVERNMENT READS IT DIFFERENTLY

10   THAN I DO.  THIS INDICTMENT ALLEGES A CONSPIRACY

11   BETWEEN KIET MAI AND DR. SHIH TO PROVIDE UNAUTHORIZED

12   ACCESS TO THE COMPUTER.

13                   AND SO IF YOU JUST TAKE THOSE LEGAL

14   CONCLUSIONS THAT ARE PLED IN THE INDICTMENT, AND IF

15   THAT'S SUFFICIENT TO STATE A CLAIM, THEN I THINK THE

16   GOVERNMENT WINS.

17                   THE PROBLEM IS, THE GOVERNMENT STATED

18   FACTS UPON WHICH THOSE LEGAL CONCLUSIONS ARE BASED.

19   AND THE FACTS THAT ARE ACTUALLY ALLEGED IN THIS

20   INDICTMENT ARE NO DIFFERENT FROM NOSAL I.

21                   THE FACTS ALLEGED IN THIS INDICTMENT THAT

22   MAKE UP THIS CONSPIRACY ARE, KIET MAI OBTAINING ACCESS

23   WITH AUTHORIZATION TO THE COMPUTER SERVERS OF CREE AND

24   THEN PASSING IT ON TO DR. SHIH.  SO IT'S REALLY NO

25   DIFFERENT ON THE FACTS FROM NOSAL I.

1        I'LL NOTE THAT THIS CHRISTENSEN, WHICH IS

2    A CASE THAT FOLLOWED NOSAL I EXACTLY, ADOPTED ITS

3    RULING.  IN THAT CASE, THE DEFENDANTS WERE CHARGED WITH

4    AIDING AND ABETTING THE UNAUTHORIZED ACCESS OF

5    INFORMATION BY SOMEBODY ELSE.

6        AND SO I THINK WHAT THE GOVERNMENT IS

7    ESSENTIALLY ALLEGING IS THAT, BY ALLEGING IT AS A

8    CONSPIRACY, THEN KIET MAI CAN ESSENTIALLY BE HELD

9    LIABLE, NOT FOR THE UNAUTHORIZED ACCESS TO THE

10   COMPUTER, BUT JUST FOR THE CRIMINAL AGREEMENT, THE

11   AGREEMENT WITH DR. SHIH THAT DR. SHIH WOULD ACCESS THAT

12   INFORMATION.

13       THE PROBLEM IS, THE OBJECT OF THAT

14   CONSPIRACY -- AND I KNOW THIS IS COMPLICATED.  THE

15   OBJECT OF THAT CONSPIRACY ITSELF HAS TO BE LEGAL.  AND

16   IF THE OBJECT OF THAT CONSPIRACY, AS THE GOVERNMENT

17   ALLEGES, IS THAT KIET MAI WOULD GAIN AUTHORIZED ACCESS

18   TO LOG-IN CREDENTIALS AND THEN GIVE THEM TO DR. SHIH,

19   AND THAT IS WHAT'S ALLEGED, THAT'S JUST, AS A MATTER OF

20   LAW, CANNOT VIOLATE THE COMPUTER FRAUD AND ABUSE ACT.

21       AND I THINK THAT THE REASON THAT THAT --

22   THIS CASE IS A VERY GOOD EXAMPLE OF WHY THAT SHOULDN'T

23   APPLY IS, THE GOVERNMENT HAS ALLEGED EIGHT COUNTS OF

24   FRAUD, I BELIEVE.  AND IN OTHER COUNTS IN THE

25   INDICTMENT, THEY'RE CLAIMING THAT KIET MAI DEFRAUDED

1    CREE TO ACCESS -- AND THAT'S WHAT THIS CASE IS REALLY

2    ABOUT, FROM THE GOVERNMENT'S PERSPECTIVE.

3              AND SO TO ALLOW THE GOVERNMENT TO PROVE

4    TWO, SORT OF, OPPOSING THINGS DOESN'T MAKE MUCH SENSE.

5              AND SO I THINK THAT THE COMPUTER FRAUD

6    AND ABUSE ACT CHARGE IS A REAL STRETCH HERE.  THEY'RE

7    TRYING TO BASICALLY DRESS UP SOME FACTS THAT ARE

8    INDISTINGUISHABLE FROM NOSAL I AND CHRISTENSEN AND

9    BREKKA AND CALL IT A "CONSPIRACY."  AND THEN BASICALLY

10   GET AROUND THE PLAIN LANGUAGE OF THOSE DECISIONS.  AND

11   I THINK THEY CAN'T -- I UNDERSTAND WHY THE COURT WOULD

12   BE INCLINED TO WANT TO SEE THIS AS A FACTUAL ISSUE.

13   BUT THE GOVERNMENT HAS TO LIVE WITH THE FACTS THAT THEY

14   HAVE PLED.  AND THERE'S REALLY NO PLEADING AROUND WHAT

15   ACTUALLY HAPPENED IN THIS CASE, FROM THE GOVERNMENT'S

16   PERSPECTIVE.

17             ONE OF THE THINGS THAT THEY PLED IS THAT

18   THE INITIAL ACCESS WAS WITH AUTHORIZATION OR THAT THEY

19   AT LEAST DON'T CLAIM IT WAS WITHOUT AUTHORIZATION.  AND

20   UNDER BREKKA, NOSAL AND CHRISTENSEN, THAT REALLY IS THE

21   END OF THE MATTER.

22             THE COURT:  ALL RIGHT.  THANK YOU,

23   MR. LITTRELL.

24             MR. HANUSZ, ANYTHING TO ADD?

25             MR. HANUSZ:  NOTHING TO ADD, YOUR HONOR.

```
 1              THE COURT:  THANK YOU.

 2                   THANK YOU FOR ANSWERING MY QUESTION

 3      DIRECTLY.

 4              MR. HANUSZ:  I'LL DO MY BEST, YOUR HONOR.

 5              THE COURT:  MR. SHOBAKI?

 6              MR. SHOBAKI:  SO, FIRST, I JUST -- TO BE

 7      CLEAR, MR. LITTRELL DOES NOT SPEAK FOR THE GOVERNMENT

 8      AS TO WHAT THE GOVERNMENT'S VIEWS OF WHAT THIS CASE

 9      REALLY IS ABOUT ARE.

10                   THE GOVERNMENT, OBVIOUSLY, AGREES WITH

11      THE TENTATIVE.  I DO WANT TO MAKE A FEW POINTS --

12              THE COURT:  WHAT ABOUT THE ISSUE THAT WAS

13      RAISED CONCERNING WHETHER THE ALLEGATIONS IN THE

14      INDICTMENT MATCH THE ARGUMENT ABOUT WHY THERE'S A FACT

15      ISSUE?

16                   IN OTHER WORDS, WHETHER THE ALLEGATIONS

17      IN THE INDICTMENT ARE CONSISTENT WITH THE FACTUAL

18      DISPUTE AS TO WHETHER THERE WAS PERMISSION?

19              MR. SHOBAKI:  PERMISSION FOR DEFENDANT SHIH OR

20      DEFENDANT MAI?

21              THE COURT:  EITHER.

22              MR. SHOBAKI:  WITH RESPECT TO DEFENDANT MAI,

23      THE WAY THAT THE INDICTMENT IS WRITTEN, MR. MAI WAS

24      GIVEN AUTHORIZED ACCESS BY CREE.  THAT ACCESS WAS

25      GAINED THROUGH A FRAUDULENT SCHEME.
```

```
 1                    BUT FOR THE PURPOSES OF THIS MOTION, WE
 2      CAN ASSUME THAT MR. MAI'S ACCESS WAS AUTHORIZED.
 3                    WITH RESPECT TO MR. SHIH, HE WAS NEVER
 4      GIVEN AUTHORIZATION TO ACCESS CREE'S COMPUTERS.
 5                    AND TO THAT POINT, THERE'S ONE CITATION
 6      FROM THE INDICTMENT THAT I FAILED TO INCLUDE IN OUR
 7      PAPERS THAT IS IMPORTANT ON THIS, WHICH IS PARAGRAPH
 8      13, PAGE 6 IN THE INTRODUCTORY ALLEGATIONS.  AMONG
 9      THOSE, WHEN DISCUSSING MICRO EX, WHICH IS MR. MAI'S
10      COMPANY, THERE IS AN ALLEGATION, ALSO, THAT MR. SHIH IS
11      NOT AN EMPLOYEE, AGENT OR OTHERWISE ASSOCIATED WITH
12      MICRO EX.  THAT BEARS, IN PART, ON WHAT REALLY IS, AS
13      THE COURT RECOGNIZED, A FACTUAL MATTER RELATED TO
14      WHETHER SOMEHOW MR. MAI'S AUTHORIZATION WOULD TRANSFER
15      TO MR. SHIH.
16                    BUT STEPPING BACK, YOUR HONOR, THIS --
17      THE POSITION TAKEN BY THE DEFENDANT HERE IS REALLY THE
18      NOSAL II DISSENT POSITION, WHICH WAS EXPLICITLY
19      REJECTED BY THE MAJORITY THERE.
20                    IN BOTH NOSAL II AND POWER, THE ACCESS
21      WAS DONE USING AUTHORIZED CREDENTIALS.  THOSE WERE
22      CREDENTIALS -- IN NOSAL II, THE CREDENTIALS OF SOMEBODY
23      WHO STILL WORKED THERE AT THE COMPANY WHOSE COMPUTERS
24      WERE ACCESSED.
25                    IN POWER, IT WAS ACCESS USING THE
```

CREDENTIALS OF FACEBOOK USERS WHO HAD GIVEN THEM TO
POWER VENTURES.

SO IN BOTH OF THOSE SITUATIONS, YOU HAD
SOMEBODY WHO WAS AUTHORIZED TO HAVE ACCESS, HAD
CREDENTIALS TO GAIN ACCESS.

A THIRD PARTY WHO WAS UNAUTHORIZED USED
THOSE CREDENTIALS TO ACCESS THE SERVICE.

THOSE SITUATIONS ARE VERY DIFFERENT FROM
THE OTHER CASES DISCUSSED BEFORE, BREKKA AND NOSAL I IN
PARTICULAR.

IN THOSE CASES -- AND THE DEFENSE MUDDIED
THE WATER A LITTLE BIT ON THIS IN ARGUMENT.

IN THOSE CASES, THE USERS WHO ACTUALLY
ACCESSED INFORMATION AND TOOK IT AND USED IT OR GAVE IT
TO ANOTHER WERE THE AUTHORIZED USERS.

SO IN THOSE CASES, IT WAS INSIDERS AT
KORN/FERRY WHO GOT INFORMATION OFF KORN/FERRY'S
COMPUTERS AND THEN GAVE THAT TO NOSAL.

SO IN THAT SITUATION, THE COURT DEALT
WITH WHETHER THERE'S AN "EXCEEDS AUTHORIZATION" THERE.
AND THE COURT, TALKING ABOUT IT, SAID YOU CAN'T --
KORN/FERRY'S POLICIES CAN'T CREATE CRIMINAL LIABILITY
FOR AN OUTSIDER WHO IS HANDED INFORMATION BY INSIDERS
WHO, USING CREDENTIALS, TAKE THAT OFF THE SYSTEM.

THAT'S VERY DIFFERENT FROM THE SITUATION

1    HERE WHERE THE ALLEGATION IS THAT MR. MAI HAD

2    CREDENTIALS, AND THEN HE GAVE THEM TO AN OUTSIDER, AS

3    IN NOSAL II AND POWER, TO ACCESS THE COMPUTER.

4             THE COURT:  IF I WERE TO ADHERE TO THE

5    TENTATIVE, IF I DID, RECOGNIZING -- AND I'LL REVIEW

6    PARAGRAPH 13, AS WELL AS THE OTHER CITATIONS AGAIN TO

7    THE INDICTMENT.

8                  BUT IF I WERE TO ADHERE TO THAT VIEW AND

9    CONCLUDE THAT THERE A FACT ISSUE COULD BE PRESENTED

10   WITH RESPECT TO THE AUTHORIZATION, WHAT IS YOUR VIEW AS

11   HOW THAT FACT ISSUE COULD BE ADDRESSED PRIOR -- COULD

12   THAT FACT ISSUE BE ADDRESSED IN ANY FASHION PRIOR TO

13   TRIAL?

14            MR. SHOBAKI:  NO, YOUR HONOR.

15            THE COURT:  OKAY.  DO YOU AGREE WITH THAT?

16                  I KNOW YOU DISAGREE WITH PREMISE, BUT --

17            MR. LITTRELL:  I THINK, ULTIMATELY, THE -- I'M

18   NOT SURE I UNDERSTOOD THE COURT'S QUESTION.

19            THE COURT:  WELL, THE QUESTION IS, I

20   UNDERSTAND THE POSITION YOU HAVE ADVANCED, INCLUDING

21   JUDGE -- I MEAN, JUDGE REINHARDT'S DISSENT IN ONE OF

22   CASES GOES THROUGH SOME OF THIS AS WELL.

23                  BUT MY QUESTION IS, IF THERE WERE A

24   FACT -- IF I WERE TO ADHERE TO THE VIEW THAT A FACT

25   QUESTION IS PRESENTED CONCERNING ACCESS -- AUTHORIZED

1    ACCESS, COULD THAT BE RESOLVED OTHER THAN AT TRIAL?

2              MR. LITTRELL:  WELL, THERE ARE CIRCUMSTANCES

3    WHERE, IF A FACT IS TRULY UNDISPUTED, THE COURT COULD

4    INCORPORATE THAT INTO ITS RULING.  AND SO IF THAT WERE

5    THE CASE, YES.  OTHERWISE, IF IT'S A TRUE FACT ISSUE,

6    THEN, NO.

7              THE COURT:  NO, I UNDERSTAND -- THAT MUCH, I

8    KNOW.

9              I REALLY WAS WONDERING WHETHER YOU

10   ANTICIPATE THAT THERE WOULD BE A DEVELOPMENT OF

11   EVIDENCE BETWEEN NOW AND TRIAL THAT WOULD PERMIT AN

12   ASSESSMENT OF WHETHER THERE IS A GENUINE ISSUE OF

13   MATERIAL FACT ON FACT, WHETHER THE PARTIES MIGHT

14   STIPULATE OR --

15             MR. LITTRELL:  I'M CERTAINLY OPEN TO THAT

16   POSSIBILITY.

17             BUT IN THE END, I REALLY DO THINK THIS

18   TURNS ON THE LEGAL DEFINITION OF WHAT UNAUTHORIZED

19   ACCESS IS.  AND I THINK WE WIN BASED ON THE INDICTMENT

20   AS PLED.

21             THE COURT:  OKAY.  THANK YOU, MR. LITTRELL.

22             ALL RIGHT.  I'LL ISSUE A WRITTEN RULING

23   ON THIS.  THANK YOU.

24             MR. SHOBAKI:  THANK YOU, YOUR HONOR.

25             THE COURT:  WITH RESPECT TO THE BILL OF

```
 1    PARTICULARS MOTION, WELL, I'D LIKE TO HEAR FROM YOU
 2    ABOUT THIS.
 3              I UNDERSTAND THE GOVERNMENT'S -- I DON'T
 4    FIND -- MY TENTATIVE VIEW IS, THAT I DON'T FIND
 5    COMPELLING, THE ARGUMENT OF -- THE PROCEDURAL ARGUMENTS
 6    OR THE -- AND I NEED BETTER TO UNDERSTAND TWO THINGS.
 7    I NEED TO UNDERSTAND WHY THE GOVERNMENT BELIEVES THAT
 8    IT WOULD BE PREJUDICIAL IF IT WERE TO PROVIDE A --
 9    PROVIDE GREATER SPECIFICITY THROUGH A BILL OF
10    PARTICULARS WITH RESPECT TO THE ITEMS THAT HAVE BEEN
11    IDENTIFIED.  I THINK THERE'S SIX.  ALTHOUGH, ITEM FOUR
12    HAS SUBPARTS.
13              AND I'D LIKE TO KNOW, FROM THE MOVING
14    PARTIES, IN LIGHT OF THE VOLUME OF DISCOVERY THAT THE
15    GOVERNMENT HAS IDENTIFIED AS HAVING BEEN PRODUCED,
16    WHAT -- WHY IT'S NECESSARY TO HAVE FURTHER
17    CLARIFICATION OF THE GOVERNMENT'S POSITION?
18              MR. SHOBAKI, WILL YOU BE ADDRESSING THIS
19    AS WELL?
20         MR. SHOBAKI:  YES, YOUR HONOR.
21         THE COURT:  LET ME HEAR FROM YOU FIRST.
22         MR. SHOBAKI:  DID THE COURT HAVE A SPECIFIC
23    QUESTION?
24         THE COURT:  SPECIFICALLY, WHAT I'D LIKE TO
25    UNDERSTAND IS THIS:  IF THE MOTION WERE GRANTED AS TO
```

1      ANY OF THE SPECIFICS AS TO WHICH A BILL OF PARTICULARS

2      IS BEING SOUGHT, WHAT'S THE PREJUDICE TO THE

3      GOVERNMENT?

4              MR. SHOBAKI:  WELL, IN THE FIRST INSTANCE, THE

5      PREJUDICE TO THE GOVERNMENT IS THAT THE GOVERNMENT IS

6      BEING FORCED TO DO A BUNCH OF WORK THAT IT'S NOT

7      REQUIRED TO DO BY LAW.

8                  ALSO, WITH RESPECT TO THE CONSPIRACY

9      COUNT, THE UNITED STATES ISN'T REQUIRED TO ALLEGE A

10     SINGLE OVERT ACT, LET ALONE ALL OVERT ACTS WITH RESPECT

11     TO THAT CONSPIRACY.  SO IT SETS THE GOVERNMENT IN A

12     POSITION OF HAVING TO DECIDE, RIGHT NOW, ISSUES WITH

13     RELATION TO THE CONSPIRACY THAT MAY BE DECIDED

14     DIFFERENTLY AS WE GET CLOSER TO TRIAL.

15                 BUT THERE'S STILL DISCOVERY ONGOING.  AND

16     IT WOULD BE FORCING THE GOVERNMENT TO, A, ARTICULATE

17     POSITIONS.  AND, B, POTENTIALLY STICKING THE GOVERNMENT

18     WITH THOSE POSITIONS TO THE GOVERNMENT'S DETRIMENT.

19              THE COURT:  WELL, TO THE EXTENT THAT THE

20     GOVERNMENT DOESN'T YET HAVE -- HASN'T COMPLETED

21     DISCOVERY, COULDN'T IT QUALIFY THE BILL OF PARTICULARS

22     IN THAT FASHION SAYING, BASED ON WHAT WE PRESENTLY KNOW

23     OR THAT -- THAT THE BILL OF PARTICULARS -- THE ACTS

24     WOULD INCLUDE, BUT NOT BE LIMITED TO?

25              MR. SHOBAKI:  YOUR HONOR, AS A THRESHOLD

1    MATTER, SOME OF THE QUESTIONS ARE JUST NOT REALLY

2    PROPER QUESTIONS FOR A BILL OF PARTICULARS.  THEY

3    APPEAR TO BE SEEKING SOME SORT OF EXPLANATION OR

4    HORNBOOK ON HOW THE LAW WORKS RELATED TO THESE MATTERS.

5            AND THE DISCOVERY THAT THE GOVERNMENT HAS

6    PROVIDED IS -- INDEED, EASILY PROVIDES THE ANSWERS TO

7    THESE QUESTIONS, AS DOES GOOGLE IN SOME RESPECTS.

8            FOR EXAMPLE, WITH RESPECT TO THE -- THE

9    KEY QUESTION HERE, AS I READ IT, LOOKING AT THEIR

10   PAPERS, IS THEY'RE WONDERING ABOUT THE ECCN, WHICH

11   RELATES TO THE LICENSE FOR EXPORT.

12           AND THE GOVERNMENT HAS PROVIDED THE

13   DISCOVERY IN COMPUTER SEARCHABLE FORM TO DEFENSE.

14           AND I HOPPED ON THE GOVERNMENT'S COPY OF

15   THE DATABASE AND SEARCHED FOR "ECCN."  AND THERE ARE

16   FEWER THAN 500 OF THOSE 1.5 MILLION DOCUMENTS THAT

17   INCLUDE ECCN.  IF YOU LIMIT IT BY OTHER TERMS, SUCH AS

18   "LICENSE," IT'S EVEN LOWER THAN THAT.

19           AND, QUITE READILY, WITHIN 20 MINUTES,

20   HOPPING INTO THE DATABASE, I WAS ABLE TO FIND DOCUMENTS

21   THAT DISCUSSED THE SPECIFIC ECCN'S AT ISSUE HERE.

22        THE COURT:  I UNDERSTAND THAT.

23           LET ME -- THE FIRST ELEMENT OF THE BILL

24   OF PARTICULARS -- A PROPOSED -- THE REQUESTED BILL OF

25   PARTICULARS IS THE ITEMS THAT THE GOVERNMENT CONTENDS

1    DEFENDANTS CONSPIRED TO EXPORT.

2            MR. SHOBAKI:  YES, YOUR HONOR.  I THINK

3    THIS --

4            THE COURT:  LET ME FINISH MY QUESTION.

5                WITH RESPECT TO THE TYPE OF SEARCH TO

6    WHICH YOU'VE JUST REFERRED, WOULD THAT SEARCH BE

7    FACILITATED IF THE ITEMS THEMSELVES HAD BEEN

8    IDENTIFIED?

9            MR. SHOBAKI:  THE ITEMS -- SPECIFIC ITEMS ARE

10   IDENTIFIED IN THE INDICTMENT, YOUR HONOR, WHICH ARE THE

11   CREE WAFERS.

12               WHAT MORE IDENTIFICATION -- THAT'S THE

13   QUESTION THE GOVERNMENT HAS.  THESE QUESTIONS DON'T

14   MAKE A LOT OF SENSE.

15           THE COURT:  OKAY.

16           MR. SHOBAKI:  THE GOVERNMENT IS NOT TRYING TO

17   BE DIFFICULT HERE.  THE BILL OF PARTICULARS IS VERY

18   DIFFICULT TO PARSE AS TO WHY IT'S EVEN NECESSARY.

19           THE COURT:  I UNDERSTAND THAT THE ALLEGATIONS

20   REFER TO, AS YOU JUST STATED THE -- YOU'RE REFERRING TO

21   THESE MMIC'S?

22           MR. SHOBAKI:  YES, YOUR HONOR.  I'M SORRY, THE

23   MMIC'S.

24               AND I SHOULD SAY "U.S. COMPANY B," AND

25   PERHAPS ASK THAT THAT BE A SUBSTITUTED FOR THE COMPANY

```
1    I JUST DESCRIBED.
2            THE COURT:  THAT'S FINE, BUT -- WELL, I
3    THINK -- DO YOU BELIEVE THAT THE INDICTMENT IS --
4    ALLEGES SOLELY THAT THAT'S THE SOLE ITEM THAT COULD BE
5    THE BASIS FOR THE GOVERNMENT'S -- THE CHARGE?
6            MR. SHOBAKI:  YOUR HONOR, WITH RESPECT TO
7    COUNT 2 OF THE INDICTMENT, THAT IS WHAT IS ALLEGED IN
8    COUNT 2.  COUNT 2 GIVES TWO KEY FACTS NECESSARY FOR THE
9    DEFENSE, WHAT IT WAS, THE COMPANY B WAFERS, AND THE
10   PLACE TO WHICH THEY WERE EXPORTED, THE PEOPLE'S
11   REPUBLIC OF CHINA.
12           WITH RESPECT TO THE CONSPIRACY, AGAIN, I
13   GO BACK TO THE PRIOR POSITION.  AGAIN, THIS SPECIFIC
14   EXPORT IS PART OF THE CONSPIRACY TOO.
15           THE COURT:  SO LET ME ASK YOU A QUESTION,
16   SUPPOSE -- SO BASED ON WHAT YOU -- WHAT THE INDICTMENT
17   ALLEGES, WOULD THE GOVERNMENT BE PRECLUDED FROM SEEKING
18   TO INTRODUCE EVIDENCE ABOUT EXPORT TO A COUNTRY OTHER
19   THAN CHINA?
20           MR. SHOBAKI:  WITH RESPECT TO COUNT 1?
21           THE COURT:  OR 2.
22           MR. SHOBAKI:  WITH RESPECT TO COUNT 1, NOT IF
23   THERE WAS EVIDENCE OF THAT.  IF IT WAS EVIDENCE OF AN
24   EXPORT TO -- ANOTHER ILLEGAL EXPORT.
25           WITH RESPECT TO COUNT 2, COUNT 2
```

SPECIFICALLY REFERS TO AN EXPORT TO CHINA, AN EXPORT TO

CHINA THAT COULD, AS IN THIS CASE, GO THROUGH ANOTHER

COUNTRY BEFORE GETTING THERE.

           SO TO THE EXTENT THERE COULD BE EVIDENCE

OF TRANSSHIPMENT, CERTAINLY THE GOVERNMENT COULD PUT ON

EVIDENCE OF EXPORTS TO OTHER COUNTRIES ON THE WAY TO

CHINA.

           THE COURT:  GOING BACK TO SOMETHING YOU SAID

EARLIER.  LET'S SUPPOSE, HYPOTHETICALLY -- I THINK WHAT

YOU JUST SAID IS THAT THE GOVERNMENT -- THE GOVERNMENT

CONTENDS THAT THE INDICTMENT CHARGES AN EXPORT OF A

PARTICULAR DEVICE OR ITEMS TO CHINA.

           MR. SHOBAKI:  YES.  COUNT 2 OF THE INDICTMENT

CERTAINLY DOES.

           THE COURT:  AND WITH THE QUALIFICATION THAT

YOU JUST MADE, IT COULD BE THAT EVIDENCE WILL SHOW THAT

THE ITEMS WENT FROM THE UNITED STATES TO ANOTHER -- TO

AN INTERIM COUNTRY AND THEN TO CHINA.  BUT YOU WOULD

CONTEND THAT'S -- YOU WOULD SAY THAT'S STILL A SHIPMENT

TO CHINA.

           IF THE BILL OF PARTICULARS WERE REQUIRED,

AND THE GOVERNMENT SAID, AT THE PRESENT TIME, WE'RE

TALKING ABOUT SHIPMENTS DIRECTLY OR INDIRECTLY TO CHINA

MADE BY THE DEFENDANTS, AND LATER THE GOVERNMENT

LEARNED -- BELIEVED IT LEARNED THAT THERE WERE

1    SHIPMENTS TO A COUNTRY OTHER THAN CHINA, THEN WHAT

2    WOULD HAPPEN?

3              WOULD THE GOVERNMENT THEN HAVE TO SEEK TO

4    REINDICT, OR WOULD THE GOVERNMENT NOT BE LIMITED BY

5    THE -- OR WOULD THAT FIT WITHIN THE LANGUAGE OF THE

6    CURRENT INDICTMENT?

7              HOW WOULD THAT PLAY OUT?

8         MR. SHOBAKI:   THE CURRENT INDICTMENT DOES

9    ALLEGE THAT THE SCHEME WAS TO EXPORT.   THE SCHEME

10   BETWEEN YI-CHI SHIH AND ISHIANG SHIN WAS TO DEVELOP A

11   FOUNDRY IN CHINA AND EXPORT MATERIALS TO CHINA.

12             SO WHETHER EXPORTS TO ANOTHER COUNTRY,

13   HONESTLY, YOUR HONOR, I HAVEN'T STUDIED THIS IN DEPTH

14   TO KNOW WHETHER IT WOULD BE ABSOLUTELY CONTAINED WITHIN

15   THE SCOPE OF THE CONSPIRACY.   MY INSTINCT IS, THE

16   ANSWER IS PROBABLY, NO.

17        THE COURT:   OKAY.   IS THERE ANYTHING ELSE YOU

18   WANTED TO ADD AT THIS POINT?

19        MR. SHOBAKI:   WITH RESPECT TO ANY OF THE

20   QUESTIONS THE COURT ASKED?

21        THE COURT:   WELL, ANY OF THE BILL OF

22   PARTICULARS -- ANY OF THE ELEMENTS OF THE BILL OF

23   PARTICULARS WHERE YOU CONTEND, IF IT WERE IMPOSED ON

24   THE GOVERNMENT, IT WOULD BE INAPPROPRIATE.

25        MR. SHOBAKI:   YOUR HONOR, WITH RESPECT TO SOME

```
 1    OF THE -- I THINK THAT IF THE DEFENSE FIGURES OUT WHAT

 2    THE ECCN IS, IT WILL PROBABLY SOLVE MOST OF THEIR

 3    PROBLEMS.

 4                    AND I FEEL THAT, STANDING UP HERE, I'VE

 5    GIVEN A PRETTY EASY ROADMAP FOR HOW TO FIND THAT.

 6                    I'D ALSO JUST NOTE, YOUR HONOR, THAT WITH

 7    RESPECT TO THE MONOLITHIC MICROWAVE INTEGRATED

 8    CIRCUITS, OR "MMIC'S," THE TERM THE COURT RAISED,

 9    AGAIN, THIS IS NOT AN ARCANE QUESTION OF LAW OR

10    REGULATION.

11                    THIS MORNING, BEFORE COMING TO COURT, I

12    TYPED "MMIC CCL" AND "BIS" INTO GOOGLE.  AND THE FIRST

13    THING THAT POPPED UP WAS THE CCL ENTRY FOR MMIC'S AND

14    THE ASSOCIATED ECCN'S THAT MMIC'S COULD FALL INTO ON

15    THE BIS WEBSITE, WHICH IS A VERY HELPFUL WEBSITE WHEN

16    DEALING WITH EXPORT CONTROL ISSUES.

17                    AGAIN, THAT'S A QUESTION THAT THE

18    INTERNET CAN ANSWER.

19              THE COURT:  OKAY.  THANK YOU, MR. SHOBAKI.

20                    WHO IS GOING TO -- MR. HANUSZ?

21              MR. HANUSZ:  I'M GOING TO ADDRESS THE COURT'S

22    QUESTION FIRST.

23                    IN TERMS OF THE DISCOVERY, I THINK THE

24    GOVERNMENT AND THE DEFENSE HAVE A DIFFERENT VIEW OF

25    WHAT THE DISCOVERY SHOWS.
```

```
 1                 I, LIKE MR. SHOBAKI, HAVE DONE LOTS OF

 2     SEARCHES IN THESE 1.5 MILLION PAGES OF DISCOVERY.

 3     THERE IS NO REFERENCE THAT I HAVE SEEN ANYWHERE TO --

 4     AND I THINK THE GOVERNMENT IS RIGHT.  THE IMPORTANT

 5     NUMBER IS THE ECCN, WHICH IS THE EXPORT CONTROL

 6     CLASSIFICATION NUMBER.  SO THAT'S IMPORTANT, YOUR

 7     HONOR, BECAUSE THERE'S -- THESE REGULATIONS DON'T SAY

 8     THAT THE SHIPMENT OF MMIC'S TO CHINA IS ILLEGAL OR THE

 9     SHIPMENT -- THEY ARE VERY SPECIFIC IN TERMS OF COUNTRY,

10     IN TERMS OF TIME AND IN TERMS OF THE SPECIFICATION OF

11     THE OBJECT THAT'S BEING SHIPPED.

12                 SO WHAT THE GOVERNMENT HAS NOT DONE IN

13     THIS INDICTMENT OR IN THE DISCOVERY IS SPECIFIED WHICH

14     REGULATIONS -- THE UNDERLYING REGULATIONS THAT ARE

15     BEING VIOLATED IN THIS CASE.

16                 IT DOESN'T TALK ABOUT WHY THE LICENSE WAS

17     ISSUE -- WAS REQUIRED AND WHAT LICENSE WAS REQUIRED.

18     AND THAT'S REALLY THE KIND OF -- THAT'S THE BASIS FOR

19     COUNTS 1 AND COUNTS 2.

20                 THE COURT:  BEFORE WE GET TO THE REGULATIONS

21     ISSUE, WITH RESPECT TO THE FACT ISSUE, THE EECN NUMBERS

22     TO WHICH YOU HAVE REFERRED, WHAT DO YOU CONTEND THE

23     GOVERNMENT COULD DO OTHER THAN DO WHAT EACH OF YOU HAS

24     MENTIONED, WHICH IS DOING A SEARCH -- A WORD SEARCH OF

25     THE DOCUMENTS AND REVIEWING THE EECN NUMBERS THAT ARE
```

```
 1    LOCATED BY THAT SEARCH?
 2              MR. HANUSZ:  I THINK THE GOVERNMENT COULD
 3    PROVIDE THE ECCN NUMBERS CORRESPONDING TO THE ITEMS IT
 4    CLAIMS WERE SHIPPED TO CHINA.
 5              YOUR HONOR, IF I MAY?
 6              THE POINT OF THE MOTION FOR A BILL OF
 7    PARTICULARS IS TO PREVENT SURPRISE AT TRIAL.
 8              WHAT WE HAVE NO INSIGHT INTO IS TO WHAT
 9    SPECIFIC REGULATIONS.
10              THE GOVERNMENT SPELLED OUT -- DID A NICE
11    INTRO IN THE INDICTMENT, BUT THE INDICTMENT DOESN'T
12    SPECIFY WHAT LICENSES WERE REQUIRED AND WHY THEY WERE
13    REQUIRED.  THAT'S THE GOVERNMENT'S -- THE GOVERNMENT
14    HAS TO PROVE THAT AT TRIAL.  CONSPIRACY COUNT OR NO
15    CONSPIRACY COUNT, THE GOVERNMENT HAS TO PROVE THAT.
16              THE COURT:  WELL --
17              MR. HANUSZ:  SO, YOU KNOW, WE ARE ASKING FOR
18    REAL BASIC INSIGHT --
19              THE COURT:  JUST A MINUTE.
20              WITH RESPECT TO THE REGULATIONS, DOES THE
21    GOVERNMENT HAVE TO PROVE -- ARE YOU SAYING THE
22    GOVERNMENT WOULD HAVE TO PROVE A LEGAL ISSUE AT TRIAL,
23    OR THAT THAT WOULD BE PART OF JURY INSTRUCTIONS OR SOME
24    OTHER ELEMENT?
25              MR. HANUSZ:  I THINK THE GOVERNMENT NEEDS TO
```

1    SHOW THAT THESE REGULATIONS AND THESE RULES ARE

2    APPLICABLE TO THE ITEMS AT ISSUE.

3         THE COURT:  IS THAT A FACT QUESTION FOR THE

4    JURY OR A LEGAL ISSUE?

5         MR. HANUSZ:  I THINK IT'S ULTIMATELY -- YOU

6    KNOW, YOUR HONOR, I THINK IT'S BOTH.

7              BUT THE BIGGER THING IS, IN TERMS OF THE

8    DEFENSE'S ABILITY TO PREPARE FOR TRIAL AND TO NARROW

9    DOWN WHAT THIS CASE IS ABOUT.  THAT'S THE REAL ISSUE

10   HERE.  AND OUR INABILITY TO DO THAT BECAUSE OF THE

11   GOVERNMENT'S REFUSAL TO DISCLOSE WHAT IT BELIEVES ARE

12   THE PARTICULAR REGULATIONS AT ISSUE HERE, AND WHY THESE

13   ITEMS FALL UNDER THOSE PARTICULAR REGULATIONS.

14         THE COURT:  JUST A MINUTE.

15              IF YOU EXAMINED THE DISCOVERY THAT'S BEEN

16   PRODUCED, AND DID A WORD SEARCH LIKE THE ONES WE'VE

17   BEEN DISCUSSING, AND IDENTIFIED THE EECN NUMBERS, AND

18   THEN DID YOUR OWN EVALUATION OF THE REGULATIONS, AS YOU

19   INTERPRET THEM AND AS THEY APPLY, WOULD THAT BE A BASIS

20   UPON WHICH YOU COULD BRING A MOTION TO DISMISS BASED ON

21   THE FACT THAT THERE'S NO SHOWING THAT THESE REGULATIONS

22   WERE VIOLATED?

23         MR. HANUSZ:  I THINK -- YOUR HONOR, I THINK WE

24   COULD.

25              THE KIND OF FOUNDATIONAL ISSUE IS, WHAT

```
 1    THE NUMBERS ARE AND WHAT NUMBERS APPLY.

 2              IT'S A VERY COMPLICATED -- THESE ARE VERY

 3    COMPLICATED REGULATIONS.

 4              AND ONE REGULATION REFERS TO ANOTHER,

 5    WHICH REFERS TO ANOTHER, WHICH REFERS TO ANOTHER.  AND

 6    THEY GET SO SPECIFIC.  THESE REGULATIONS ARE INCREDIBLY

 7    SPECIFIC.  BUT WE DON'T HAVE THE INFORMATION FROM THE

 8    GOVERNMENT IN TERMS OF WHY THESE ITEMS ARE CONTROLLED.

 9    AND THAT'S WHAT WE'RE ASKING FOR.

10              THE COURT:  OKAY.  THANK YOU, MR. HANUSZ.

11              DO YOU HAVE ANYTHING TO ADD?

12              MR. LITTRELL:  YES, YOUR HONOR.

13              AND I HAVE SOMETHING I -- I DON'T SEE A

14    DOCUMENT CAMERA HERE.

15              OKAY.  THAT'S SOMETHING THE COURT CAN

16    SEE.

17              SO JUST TO ADDRESS A COUPLE OF THINGS

18    REALLY BRIEFLY.  THIS IS A CHART THAT'S PUT OUT BY THE

19    DEPARTMENT OF COMMERCE.  AND IT'S PART OF THE E.A.R.,

20    THE REGULATIONS THAT WOULD -- THAT THE GOVERNMENT SAYS

21    APPLIES.

22              AND THIS, BASICALLY, TELLS AN EXPORTER

23    WHAT STEPS THEY MUST TAKE TO DETERMINE WHETHER THEIR

24    ITEM IS SUBJECT TO THE E.A.R. AND WHAT LICENSE IS

25    REQUIRED.
```

1    AND AS THE GOVERNMENT POINTS OUT, THE

2    ECCN IS THE CRITICAL INFORMATION THERE.

3    NOW, WHEN THE GOVERNMENT PRESENTED THIS

4    CASE TO THE GRAND JURY, IT HAD TO HAVE TOLD THE -- IF

5    THERE'S AN AGREEMENT, A CRIMINAL CONSPIRACY TO EXPORT

6    AN ITEM TO CHINA - AND THAT'S THE ONLY THING THAT I'M

7    CONCERNED ABOUT WITH COUNT 1 - THE OBJECT OF THAT

8    CONSPIRACY HAS TO HAVE BEEN TO EXPORT SOMETHING VERY

9    SPECIFIC.  IT CERTAINLY LOOKS LIKE THE ITEMS THAT THE

10   GOVERNMENT ALLEGES WERE THE OBJECT OF THIS CONSPIRACY

11   TO EXPORT WERE THE MMIC WAFERS THAT ARE NAMED IN COUNT

12   2.  AND IT'S POSSIBLE THAT WE COULD IDENTIFY THE

13   SPECIFICATIONS OF THOSE MMIC'S, LOOK THROUGH THE EXPORT

14   REGULATIONS AND TAKE A GUESS, MAYBE EVEN AN EDUCATED

15   GUESS ABOUT WHICH ECCN APPLIES TO THOSE WAFERS.

16   FROM THAT POINT, WE COULD GO THROUGH THIS

17   DECISION TREE AND MAKE JUDGMENT CALLS AS IF WE WERE THE

18   EXPORTER AND DRAW OUR OWN CONCLUSIONS ABOUT WHAT WE

19   THINK THE GOVERNMENT MIGHT BE ALLEGING HERE.

20   THE PROBLEM IS, WE MIGHT BE WRONG.

21   AND EVEN NOW THE GOVERNMENT IS MAKING

22   STATEMENTS THAT SUGGEST THAT, IT BELIEVES THAT IT COULD

23   DEVELOP EVIDENCE, SUBSEQUENT TO TODAY, AND CHANGE ITS

24   THEORY OF THE CASE.

25   AND WE -- IF THAT HAPPENS, WE ARE -- WE

```
1    WILL BE COMPLETELY AMBUSHED AT TRIAL.

2            THE COURT:  THAT WAS IN RESPONSE TO ONE OF MY

3    QUESTIONS.  I DON'T THINK THE GOVERNMENT SAID THAT

4    OTHERWISE.

5            MR. LITTRELL:  WELL, WHAT -- THE COURT ASKED A

6    VERY SPECIFIC QUESTION ABOUT WHETHER IF -- IF THE

7    GOVERNMENT WAS -- LEARNED THAT AN ITEM WAS EXPORTED TO

8    A DIFFERENT COUNTRY, COULD IT INCORPORATE THAT IN THE

9    INDICTMENT?  AND I THINK THE GOVERNMENT WAS RIGHT TO

10   SAY, NO.

11           HOWEVER, THIS -- THE POSITION THEY'RE

12   TAKING TODAY LEAVES OPEN THE POSSIBILITY THAT THEY

13   COULD ARGUE AT TRIAL THAT THERE WAS A CONSPIRACY TO

14   EXPORT SOMETHING OTHER THAN THE WAFERS THAT ARE

15   IDENTIFIED IN COUNT 2.

16           IF WE'RE WRONG ABOUT THAT, IF THE

17   GOVERNMENT INTENDS TO PRESENT A CONSPIRACY WITH THE

18   OBJECT TO IDENTIFY THE SPECIFIC WAFERS -- OR WAFER OR

19   WAFERS THAT ARE IDENTIFIED IN COUNT 2, THEN IT SHOULD

20   JUST SAY SO THAT WE CAN GET PREPARE FOR TRIAL AND

21   RETAIN THE EXPERTS THAT WE WOULD NEED TO RETAIN IN

22   ORDER TO GO THROUGH THIS PROCESS IN AN EDUCATED WAY.

23           NOW, I SHOULD NOTE, THEY HAVE SAID THAT

24   THIS IS NOT REQUIRED, AND THAT IT WOULD BE VERY EASY

25   FOR US TO GO THROUGH THE DISCOVERY AND FIGURE OUT WHICH
```

1    ECCN APPLIES.  AND IT SOUNDS LIKE THEY HAVE DONE THAT.

2    BUT HERE'S WHY THAT'S NOT SUFFICIENT:

3                   WE WOULD GO THROUGH THAT, AND WE CAN MAKE

4    AN EDUCATED GUESS.  BUT WHAT WE DON'T ACTUALLY KNOW IS

5    WHETHER WE'RE RIGHT, WHETHER THEY INTEND TO EXPAND THE

6    SCOPE OF THE CONSPIRACY, WHETHER THEY WANT TO CHANGE

7    THEIR THEORY SUCH THAT A DIFFERENT LICENSE IS REQUIRED

8    AT TRIAL THAN THE LICENSE THAT THEY TOLD THE GRAND JURY

9    WOULD HAVE BEEN REQUIRED.  AND THAT WOULD BE A

10   CONSTRUCTIVE AMENDMENT OF THE INDICTMENT.

11                  ALL WE'RE ASKING IS THAT THEY GIVE US THE

12   SAME INFORMATION THAT THEY GAVE TO THE GRAND JURY.

13                  AND, REALLY, IT COMES TO THE ECCN, WHICH

14   I THINK THE GOVERNMENT COULD DO TODAY.

15               THE COURT:  ALL RIGHT.  THANK YOU,

16   MR. LITTRELL.

17                  MR. SHOBAKI?

18             MR. SHOBAKI:  YOUR HONOR, TO BE CLEAR, THE

19   UNITED STATES HAS NOT REFUSED TO DISCLOSE THE BASIS OF

20   THE CHARGES.  THAT BASIS IS DISCLOSED IN DISCOVERY.  IT

21   IS DISCLOSED IN DISCOVERY, INCLUDING, AMONG OTHER

22   THINGS, DEPARTMENT OF COMMERCE DOCUMENTS EVALUATING THE

23   EXPORTED GOODS AND INCLUDING LICENSE DETERMINATIONS,

24   WHICH ARE AMONG THE DOCUMENTS THAT, IF YOU DID THE

25   SEARCH THAT I DESCRIBED BEFORE, YOU WOULD FIND.

```
1              THE COURT:  YOU CONTEND THAT THOSE DOCUMENTS
2    IDENTIFY THE APPLICABLE REGULATIONS?
3              MR. SHOBAKI:  THEY IDENTIFY THE ECCN AND THE
4    APPLICABLE REGULATIONS.
5                      AND, INDEED, THEY ANSWER EVERY QUESTION
6    ON THIS FLOW CHART.  AND THEY'RE SITTING THERE IN THE
7    DISCOVERY.
8              THE COURT:  IF AN INDICTMENT CHARGES SOMEBODY
9    WITH A VIOLATION OF A STATUTE, THE INDICTMENT
10   IDENTIFIES THE STATUTE.
11                  DO YOU AGREE WITH THAT?
12             MR. SHOBAKI:  YES.
13             THE COURT:  I MEAN, AS A GENERAL MATTER.  I'M
14   NOT ASKING ABOUT EVERY POTENTIAL CONSPIRACY.  I'M NOT
15   SAYING THAT, IN A CONSPIRACY COUNT, NECESSARILY EVERY
16   OTHER POTENTIAL STATUTE MAY EVERY TIME BE IDENTIFIED.
17   BUT, IN GENERAL, THAT WOULD BE THE CONCEPT.
18                  NOW, REGULATIONS ARE DIFFERENT THAN
19   STATUTES IN THAT THEY CAN BE MORE VOLUMINOUS.  THEY CAN
20   BE.  NOT ALWAYS, BUT THEY CAN BE.
21                  AND I DON'T THINK VIOLATING -- THE
22   VIOLATION OF A REGULATION ITSELF, I DON'T THINK WOULD
23   BE -- IS A CRIME.  WHAT WOULD BE A CRIME WOULD BE, IF
24   THERE'S A STATUTE THAT SAYS, BY VIOLATING THIS
25   REGULATION, YOU HAVE COMMITTED A CRIME.
```

1          DO YOU AGREE WITH THAT?

2               MR. SHOBAKI:  YES, YOUR HONOR.

3                    AND THAT'S COMMON IN MANY AREAS OF THE

4    CRIMINAL LAW, CLEAN AIR ACT.  THEY INCORPORATE AND MAKE

5    CRIMINALIZED VIOLATIONS OF REGULATIONS.

6               THE COURT:  I UNDERSTAND.

7                    SO I GUESS THE -- WHAT I'M -- WHAT I WANT

8    TO BE -- I THINK THE QUESTION I HAVE REALLY IS THIS:

9                    IS THERE REALLY A MYSTERY AS TO WHICH

10   REGULATIONS ARE AT ISSUE?

11                   I UNDERSTAND THAT ANYBODY CAN GO THROUGH

12   THE DISCOVERY.  BUT WHEN GOVERNMENT EVALUATED THIS

13   MATTER, PRESUMABLY, YOU THOUGHT ABOUT THE REGULATIONS

14   AND THE -- WHICH ONES WOULD APPLY.  AND YOU'VE PRODUCED

15   DISCOVERY WHICH IDENTIFIES REGULATIONS.  AND WITHOUT --

16   I UNDERSTAND THAT AS THE -- AS YOU COMPLETE YOUR

17   PREPARATION FOR THE TRIAL, YOU MIGHT HAVE ADDITIONAL

18   INSIGHTS, BUT I -- IS THERE A REASON THAT THERE HAS TO

19   BE ANY DOUBT ON BOTH SIDES AS TO, AT THE MOMENT, WHICH

20   REGULATIONS APPEAR RELEVANT?

21              MR. SHOBAKI:  YOUR HONOR, THERE'S NO DOUBT.

22   WE CITE THE REGULATIONS IN THE INDICTMENT.  AND IN

23   DISCOVERY, WE PROVIDE THE COMMERCE DOCUMENTS THAT

24   INCLUDE AN EVALUATION OF THE GOODS AND WHAT -- WHETHER

25   THEY REQUIRE AN EXPORT LICENSE.

1          THE COURT:  THEN WHAT WOULD BE THE PREJUDICE

2    OF SAYING THE SAME THING IN A BILL OF PARTICULARS?

3          MR. SHOBAKI:  YOUR HONOR, THIS ISN'T CIVIL

4    DISCOVERY.  WE'RE NOT REQUIRED TO ANSWER

5    INTERROGATORIES.  WE GAVE THEM THE INFORMATION.

6          THE COURT:  WELL, I'M NOT ASKING ABOUT

7    INTERROGATORIES.  JUST RESTATING WHAT'S IN THE

8    INDICTMENT, HERE'S THE -- ALL RIGHT.  I'LL REFLECT ON

9    THIS.

10          MR. SHOBAKI:  THANK YOU, YOUR HONOR.

11          THE COURT:  THANK YOU FOR YOUR HELP.

12               I THINK I UNDERSTAND THE DISPUTE HERE.

13               IS THERE SOMETHING NEW?

14          MR. LITTRELL:  IF I COULD JUST SAY, IF THE

15    GOVERNMENT COULD SPECIFY THE BATES RANGE OF THE EXACT

16    REPORT THAT IT IS PLEDGING SETS FORTH THE ECCN, IT

17    ESSENTIALLY WOULD DO THE SAME THING.

18          THE COURT:  PERHAPS THE TWO SIDES CAN CONFER.

19    MAYBE YOU CAN REACH SOME AGREEMENT.

20               BUT LET ME KNOW WITHIN A WEEK IF YOU'VE

21    BEEN ABLE TO DO THAT, BUT --

22          MR. SHOBAKI:  THE UNITED STATES IS HAPPY TO

23    PROVIDE THE BATES NUMBERS THAT CORRESPOND TO THE

24    DEPARTMENT OF COMMERCE DOCUMENTS.

25          THE COURT:  ALL RIGHT.  THAT MAY SOLVE THE

1    PROBLEM.

2              MR. LITTRELL:  AGAIN, I JUST WANT TO MAKE THE

3    RECORD CLEAR.  THE GOVERNMENT, AS IT SITS HERE TODAY,

4    KNOWS WHICH ECCN'S THIS CASE IS BASED ON.  THEY ARE

5    TELLING US WE CAN FIND THAT INFORMATION, BUT THEY WON'T

6    TELL US WHAT IT IS.  AND IT IS REALLY ABOUT THEM TRYING

7    TO LEAVE OPTIONS OPEN TO PROVE SOMETHING DIFFERENT AT

8    TRIAL THAN WHAT THEY PROVED TO THE GRAND JURY.  THEY

9    SHOULDN'T HAVE THE OPPORTUNITY TO DO THAT.

10             THE COURT:  I UNDERSTAND.

11             WHAT I'D LIKE YOU TO DO IS TO CONFER, AND

12   THEN FILE A JOINT REPORT IN A WEEK AS TO WHETHER THERE

13   ARE ANY OPEN ISSUES.  I'M NOT ASKING YOU FOR

14   REBRIEFING.  I JUST WANT TO KNOW WHETHER ANY ISSUES

15   HAVE BEEN RESOLVED.

16             CAN YOU DO THAT?

17             MR. HANUSZ:  WE CAN, YOUR HONOR.

18             MR. SHOBAKI:  YES, YOUR HONOR.

19             THE COURT:  THANK YOU.

20             THERE'S ANOTHER MATTER WHICH CONCERNS THE

21   DISCUSSION WE'VE HAD IN THE PAST ON THE GOVERNMENT'S

22   APPLICATION THAT I CONDUCT CERTAIN MATTERS IN CAMERA.

23             THE GOVERNMENT SENT A LETTER.  THERE WAS

24   A RESPONSE TO THE LETTER IN THE DOCKET, SO -- BUT WHICH

25   I'M GOING TO GET TO.

```
 1              TO THE EXTENT, MR. SHOBAKI OR MS. HEINZ,

 2   I ENTER AN AREA WHERE YOU THINK IT IS SOMETHING THAT

 3   SHOULD BE DISCUSSED IN AN IN CAMERA SESSION, I'D LIKE

 4   YOU TO LET ME KNOW THAT.

 5              BUT I'M STARTING WITH THE GOVERNMENT'S

 6   LETTER, WHICH IS IN THE PUBLIC DOCKET, AND THE

 7   RESPONSE, AND THEN THE BRIEFING WITH RESPECT TO THE

 8   ISSUE OF WHETHER -- OF WHO HAS TO SIGN A PARTICULAR

 9   AUTHORIZATION, WHETHER IT'S THE HEAD OF THE AGENCY OR

10   NOT.  THAT'S BEEN BRIEFED.

11              IS THAT AN ISSUE ON WHICH THE GOVERNMENT

12   CONTENDS THERE SHOULD BE IN CAMERA DISCUSSIONS?

13         MS. HEINZ:  YOUR HONOR, I BELIEVE THE PARTIES

14   HAVE OFFERED A BRIEFING ON THE LAW ON THE LEGAL PART OF

15   THIS ISSUE.  AND THE ISSUE IS A PRETTY NARROW ONE.

16   IT'S, BASICALLY, WHAT IS THE IDENTITY OR POSITION OF

17   THE PERSON WHO HAS TO SIGN A SUPPORTING DECLARATION?

18              THAT LEGAL PART OF IT AND THAT LEGAL

19   ANALYSIS IS -- CERTAINLY DOES NOT HAVE TO BE ADDRESSED

20   IN CAMERA.

21              IF WE GO MUCH FURTHER THAN THAT, WE MIGHT

22   STRAY INTO TERRITORY WHERE I MIGHT SAY WE NEED TO BE IN

23   CAMERA.

24         THE COURT:  LET ME ASK YOU THIS QUESTION:

25   DOES THE GOVERNMENT CONTEND THAT THE IDENTITY OF THE
```

```
1     PERSON OR PERSONS WHO SIGNED THE DOCUMENT -- IN OTHER
2     WORDS, THE TITLE OF THAT PERSON IS AN IN CAMERA ISSUE?
3              MS. HEINZ:  YES, YOUR HONOR.
4              THE COURT:  SO LET ME ASK YOU THIS QUESTION:
5     I UNDERSTAND THE PARTIES DISPUTE ABOUT WHO IS
6     AUTHORIZED TO SIGN SUCH A DOCUMENT, AND I UNDERSTAND
7     THAT PRESENTS A LEGAL ISSUE.
8              WHAT I'M A LITTLE UNCLEAR -- WHAT I'M
9     THINKING ABOUT IS THIS -- WELL, IF THE DEFENDANT'S
10    POSITION WERE ADOPTED -- THAT IS TO SAY, IF I WERE TO
11    DETERMINE THAT THE DEFENDANTS ARE CORRECT AS TO WHO HAS
12    TO SIGN SUCH A DOCUMENT AND, HYPOTHETICALLY, THAT
13    PERSON OR THE PERSON WITH THAT TITLE SIGNED THAT
14    DOCUMENT, THEN THERE WOULDN'T HAVE BEEN A JUSTICIABLE
15    ISSUE TO BEGIN WITH.
16             SO MY QUESTION REALLY IS, HOW DO I -- HOW
17    DO I DETERMINE WHETHER THERE'S A JUSTICIABLE ISSUE?
18             I DO THAT IN CAMERA?
19             AND THEN IF I -- IF I DETERMINE THEN
20    THERE IS A JUSTICIABLE ISSUE, WOULDN'T THAT, IN EFFECT,
21    DISCLOSE THAT SOMEBODY, OTHER THAN THE PERSON THAT THE
22    DEFENDANTS CONTEND HAS TO SIGN IT, SIGNED IT?
23             MS. HEINZ:  YOUR HONOR, TO ANSWER THE FIRST
24    QUESTION, IS THERE A JUSTICIABLE ISSUE, THE GOVERNMENT
25    WOULD POINT TO THE MOTION ITSELF, WHICH IS CLASSIFIED
```

```
1    AND FILED IN CAMERA AND UNDER SEAL.
2              SO BY EXAMINING THE MOTION ITSELF, THE
3    COURT -- THE GOVERNMENT BELIEVES THE COURT COULD
4    DETERMINE WHETHER OR NOT THERE IS A JUSTICIABLE ISSUE.
5              THE COURT:  WELL, SUPPOSE -- AGAIN, JUST
6    HYPOTHETICALLY, SUPPOSE THAT I AGREED WITH THE --
7    DETERMINED THAT THE LAW REQUIRES THE PERSON IDENTIFIED
8    BY DEFENDANTS HAVE SIGNED THE DOCUMENT.  AND SUPPOSE,
9    HYPOTHETICALLY, I MAKE AN IN CAMERA REVIEW, AND I
10   DETERMINE THAT THE PERSON WHO SIGNED THE DOCUMENT WAS
11   NOT THE PERSON THAT I'VE DETERMINED, AS A LEGAL MATTER,
12   SHOULD HAVE SIGNED THE DOCUMENT.  THEN I ACCEPT YOUR
13   POSITION THAT THERE WOULD BE A JUSTICIABLE -- WELL, I'D
14   HAVE TO FIRST DETERMINE WHO SIGNED THE DOCUMENT TO
15   DETERMINE IF THERE'S A JUSTICIABLE ISSUE.  BECAUSE IF
16   THE PERSON WHO SIGNED THE DOCUMENT IS THE PERSON THAT
17   DEFENDANTS CONTEND SHOULD HAVE SIGNED IT, THEN THERE
18   WOULD BE NO DISPUTE.
19             IF THE PERSON IS NOT, THERE WOULD BE A
20   DISPUTE.
21             DO YOU FOLLOW ME?
22        MS. HEINZ:  I DO FOLLOW YOU, YOUR HONOR.
23        THE COURT:  SO BACK TO MY QUESTION.  UNDER
24   ARTICLE III, I THINK I HAVE JURISDICTION TO DECIDE
25   DISPUTED ISSUES, BUT I DON'T KNOW EXACTLY HOW TO
```

```
1     PROCEED HERE GIVEN THAT SOME THINGS ARE IN CAMERA AND

2     SOME ARE NOT, AND THAT THE -- THERE ARE VARIOUS,

3     OBVIOUSLY, FLOW CHARTS HERE AS TO THE POTENTIAL

4     OUTCOMES OF THIS LEGAL ISSUE.  BUT THERE IS AT LEAST

5     ONE PURSUANT TO WHICH IT COULD BE INFERRED THAT THE

6     PERSON WHO SIGNED THE DOCUMENT WAS NOT THE PERSON THAT

7     THE DEFENDANTS CONTEND SHOULD HAVE SIGNED IT.  IT WAS A

8     DIFFERENT PERSON OR A PERSON WITH A DIFFERENT TITLE.

9     SO THAT'S --

10              MS. HEINZ:  I THINK I'M FOLLOWING YOUR HONOR.

11              I THINK WE'RE STUCK ON A CLASSIFIED FACT,

12    AND THAT'S WHERE IT IS.

13              THE COURT:  LET ME ASK YOU THIS:  I KNOW THAT

14    I CAN EXAMINE THE DOCUMENT.  AND I KNOW I CAN DETERMINE

15    WHO SIGNED THE DOCUMENT.  OKAY.  I KNOW THAT.

16              AND I KNOW THAT I CAN EVALUATE THE LEGAL

17    ISSUES AS TO WHO -- I DETERMINE MUST SIGN SUCH A

18    DOCUMENT.  I KNOW THAT.

19              IF I DETERMINE THAT THE PERSON WHO SIGNED

20    THE DOCUMENT IS SUFFICIENT, BUT THAT THAT PERSON WAS

21    NOT THE PERSON WHO THE DEFENDANTS CONTEND SHOULD HAVE

22    SIGNED IT, THEN HOW IS THAT RULING ANNOUNCED?

23              IS IT ANNOUNCED?

24              MS. HEINZ:  WELL, IT WOULD -- IT WOULD DEPEND

25    ON THE WORDING.  AND I THINK THAT -- I THINK THAT THE
```

1    COURT COULD CONSULT WITH THE CLASSIFIED -- I'M SORRY,

2    THE CISO, THE CLASSIFIED INFORMATION SECURITY OFFICER,

3    ABOUT IF THE COURT WANTED TO ISSUE A PUBLIC DECISION ON

4    THE PUBLIC DOCKET, HOW THAT COULD BE PHRASED.

5                AND IF THE COURT WANTED TO SAY SOMETHING

6    FURTHER THAT WOULD REQUIRE IT TO BE A CLASSIFIED ORDER,

7    THEN IT WOULD HAVE TO BE A CLASSIFIED ORDER.

8                BUT I THINK THE -- I WOULD DEFER TO THE

9    CISO ON WHAT EXACTLY COULD BE INCLUDED IN AN ORDER.

10         THE COURT:  LET ME ASK YOU A DIFFERENT

11   QUESTION OR PUTTING IT A DIFFERENT WAY.

12               IN LIGHT OF THE ISSUES ON THE -- THE

13   CONFIDENTIALITY ISSUES UNDER THE STATUTE, WOULD THAT

14   CREATE A JUSTICIABLE ISSUE ITSELF?

15               MEANING, THAT I COULD DETERMINE PUBLICLY

16   WHOM I THINK IS REQUIRED TO SIGN WITHOUT ANNOUNCING

17   PUBLICLY WHO SIGNED?

18         MS. HEINZ:  IF YOUR HONOR MADE THE DECISION

19   THAT A, QUOTE, UNQUOTE, "HEAD OF THE DEPARTMENT" --

20   WHICH IS THE PHRASE THAT IS USED IN SOME OF THE CASES

21   AND WAS ALSO USED IN THE TURI CASE, WHICH IS THE

22   DISTRICT COURT CASE OUT OF ARIZONA.  IF YOUR HONOR WERE

23   TO DETERMINE THAT IT NEEDED TO BE A HEAD OF THE

24   DEPARTMENT, THEN I -- I THINK THAT YOUR HONOR COULD

25   ISSUE A PUBLIC ORDER ON THE PUBLIC DOCKET SIMPLY SAYING

```
 1    THAT YOUR HONOR HAD DETERMINED THAT.

 2              IT'S SORT OF SIMILAR TO THE PUBLIC RULING

 3    THAT WAS MADE IN THE TURI CASE -- IN THE U.S. V. TURI

 4    CASE IN ARIZONA WHERE THE COURT ANNOUNCED THAT IT

 5    BELIEVED THAT THE DECLARATION NEEDED TO BE SIGNED BY --

 6    AND IT JUST IDENTIFIED AS A PERSON, AS A POSITION.

 7              THE COURT:  ALL RIGHT.  IF I WERE TO MAKE

 8    THE -- IF I PUBLICLY MADE THE -- RESOLVED THE DISPUTED

 9    LEGAL ISSUE HERE AS TO WHO HAS TO SIGN, AND THEN I

10    WERE -- I DETERMINED THAT THAT PERSON HAD NOT SIGNED,

11    IS THAT SOMETHING THAT YOU THINK I WOULD HAVE TO

12    EVALUATE TOGETHER WITH THE CONFIDENTIALITY OFFICER AS

13    TO HOW THINGS WOULD THEN PROCEED?

14              MS. HEINZ:  WELL, I -- THERE, PERHAPS, IS A

15    SECONDARY ISSUE, WHICH, AGAIN, I GUESS YOUR HONOR WOULD

16    NEED TO DECIDE, IS WHETHER OR NOT WHAT WAS SUBMITTED BY

17    THE GOVERNMENT IN SUPPORT OF THE MOTION WAS SUFFICIENT.

18    WAS IT A SUFFICIENT SHOWING, WHICH IS THE LANGUAGE THAT

19    IS IN CIPA.  AND SO I THINK THAT WOULD BE ANOTHER --

20    MAYBE ANOTHER DECISION THERE THAT WOULD NEED TO BE

21    MADE.

22              MY UNDERSTANDING OF DEFENSE -- THE

23    DEFENDANT'S BRIEFING IS, IS THAT THEY BELIEVE THAT THE

24    TERM "SUFFICIENT SHOWING" AND THE NEED TO HAVE

25    SOMETHING SIGNED BY THE HEAD OF THE DEPARTMENT ARE
```

```
1    CO-EXTENSIVE, THAT THEY'RE THE SAME.

2                    AND I THINK THE GOVERNMENT DISAGREES WITH

3    THAT, BUT I THINK THAT'S BEEN BRIEFED.

4              THE COURT:  ALL RIGHT.  THANK YOU.

5                    WHO IS GOING --

6              MR. HANUSZ:  I'LL CERTAINLY AT LEAST BEGIN,

7    YOUR HONOR.

8                    YOUR HONOR, I DON'T -- I THINK THAT

9    ARTICLE III GIVES THE COURT AUTHORITY TO PROTECT THE

10   DEFENDANT'S DUE PROCESS RIGHTS IN THE COURSE OF

11   DISCOVERY.

12                   I THINK THE GOVERNMENT'S DEFAULT IS THAT

13   EVERYTHING IS CLASSIFIED.

14                   AND I SEE -- I KNOW -- I'M AWARE --

15   UNAWARE OF ANY SUPPORT SHOWING THAT -- REGARDING THE

16   IDENTITY OF THE PERSON, THEIR TITLE, WHY ALL OF THAT IS

17   CLASSIFIED.  AND I THINK THIS ILLUSTRATES THE PROBLEM

18   THAT WE'VE TALKED ABOUT BEFORE IN THAT THE DEFENSE HAS

19   ABSOLUTELY NO INSIGHT INTO WHAT THE GOVERNMENT IS

20   DOING.

21                   AND THE COURT -- WE APPRECIATE THE

22   POSITION THE COURT IS IN.  BUT THE COURT, JUST LIKE THE

23   DEFENSE, IS FLYING BLIND IN TERMS OF PROTECTING

24   DR. SHIH AND MR. MAI'S DISCOVERY RIGHTS.

25              THE COURT:  ALL RIGHT.  I'LL REFLECT ON THIS.
```

```
1               I HAVE YOUR COMPETING POSITIONS.  I
2    UNDERSTAND AS TO THE -- WHO HAS TO -- WHO MUST SIGN.
3    AND I'LL EVALUATE HOW I -- WHEN I RESOLVE THAT ISSUE,
4    HOW I WILL GO ABOUT DOING SO.
5               MEANING, ANNOUNCING THE DECISION, IF AT
6    ALL.
7               OR WHAT THE EFFECT OF A -- IF I ADOPT THE
8    DEFENDANT'S -- IF I AGREE WITH THE DEFENDANT'S
9    POSITION, HOW THAT WOULD BE IMPLEMENTED IN LIGHT OF
10   EVERYTHING ELSE.  I'LL REFLECT ON IT.
11        MR. HANUSZ:  VERY WELL, YOUR HONOR.
12        THE COURT:  THE OTHER -- THE OTHER ISSUE
13   THAT'S RAISED BY THE -- WELL, FROM WHAT YOU HAVE JUST
14   SAID, MR. HANUSZ, THERE REMAINS -- I UNDERSTAND THERE
15   REMAINS A DISAGREEMENT AS TO WHAT SCOPE OF INFORMATION
16   SHOULD BE UNAVAILABLE TO THE DEFENDANTS.
17               AND MY QUESTION IS, PROCEDURALLY, DO YOU
18   ANTICIPATE ANY OTHER PROCESS, OTHER THAN THE ONE THAT'S
19   BEEN COMMENCED, PURSUANT TO WHICH I WOULD MAKE A
20   DETERMINATION -- RESOLVE THE DISPUTE?
21        MR. HANUSZ:  YOUR HONOR, IT'S TOUGH TO ANSWER
22   THAT QUESTION WITHOUT HAVING ANY INSIGHT INTO WHAT THE
23   INFORMATION THAT'S WITHHELD CONSISTS OF.
24               I KNOW THE COURT HAD DISCUSSED BEFORE THE
25   DEFENSE MAKING SOME SORT OF PROFFER TO THE COURT.
```

1    WE'RE CONCERNED ABOUT THAT, YOUR HONOR.  WE'RE

2    CONCERNED ABOUT THE PROFFER.  WE'RE CONCERNED ABOUT

3    INADVERTENT DISCLOSURES, CERTAINLY NOT OF -- CERTAINLY

4    NOT WHAT THE COURT WOULD INTEND TO DO.

5              BUT I THINK WE'VE SEEN, BY THE FILING OF

6    THE MOTION THIS MORNING, WHICH WE'LL APPARENTLY DEAL

7    WITH IN A COUPLE OF WEEKS, THAT THE GOVERNMENT IS VERY

8    INTERESTED IN GIVING INSIGHT AS TO THE DEFENSE CASE.

9              AND WE DON'T HAVE TO PROVIDE, NOR SHOULD

10   WE BE REQUIRED TO PROVIDE, THAT INFORMATION.  SO OUR

11   OBJECTION, YOUR HONOR, IS BROADER AND --

12             THE COURT:  LET ME ASK YOU THIS QUESTION:  THE

13   GOVERNMENT HAS CERTAIN DISCOVERY OBLIGATIONS IN A

14   CRIMINAL CASE, SPEAKING GENERALLY.  AND TO THE EXTENT

15   THAT THE DEFENDANTS CONTEND THAT THE GOVERNMENT HASN'T

16   COMPLIED WITH ITS OBLIGATIONS, THERE ARE CERTAIN

17   REMEDIES YOU HAVE.  I'M NOT TALKING ABOUT -- A CASE

18   THAT DOES NOT INVOLVE THE CONFIDENTIAL INFORMATION

19   PROCESS THAT'S AT ISSUE HERE.  ALL RIGHT?

20             YOU AGREE WITH THAT?

21             MR. HANUSZ:  SURE.

22             THE COURT:  DOES ANY -- CAN ANY OF THAT --

23   WOULD ANY OF THAT PROCESS BE USEFUL IN TERMS OF

24   EVALUATING THE ISSUES RAISED ON THE CONFIDENTIAL SIDE

25   OF THIS MATTER?

```
1            MR. HANUSZ:  I DON'T KNOW IF THE COURT IS
2    REFERRING TO A DISCOVERY MOTION.
3            THE COURT:  IT COULD BE.
4            MR. HANUSZ:  I THINK WE GET BACK TO THE SAME
5    PROBLEM WHERE -- WE'VE TRIED TO MEET AND CONFER WITH
6    THE GOVERNMENT.  AND THE ANSWER TO EVERY QUESTION IS,
7    "THAT'S CLASSIFIED" OR "WE CAN'T TELL YOU THAT."
8            SO I DON'T THINK THE COURT NEEDS THAT
9    MOTION.  WE CAN FILE IT, BUT I THINK WE'LL GET BACK TO
10   THE SAME PLACE.
11           THE COURT:  YOU AGREE WITH THAT, MR. LITTRELL?
12           MR. LITTRELL:  YEAH, I DO, YOUR HONOR.
13           THE COURT:  LET ME ASK YOU THIS QUESTION:
14   GOING BACK TO THE ISSUE OF -- AND, MS. HEINZ, SAME
15   QUALIFICATION TO YOU AS MY PRIOR QUESTIONS.  I'M NOT --
16   TO THE EXTENT THAT THERE'S A MATTER THAT YOU THINK
17   NEEDS TO BE HANDLED IN A NON-PUBLIC SETTING, THEN
18   YOU'LL TELL ME THAT.
19           DO YOU THINK THAT PART OF THE PROCESS
20   THAT I'M TO UNDERTAKE DURING THE CONFIDENTIAL IN CAMERA
21   PROCESS, DOES THAT INCLUDE AN ASSESSMENT OF WHAT
22   INFORMATION MIGHT BE SUBJECT TO DISCOVERY, ABSENT
23   CONFIDENTIALITY ON THE -- BY STATUTE?
24           DO YOU UNDERSTAND MY QUESTION?
25           MS. HEINZ:  I'M SORRY, I ASSUME THAT'S MY
```

```
1    QUESTION?
2              THE COURT:  IT IS.
3                   AND QUALIFIED BY SAYING, YOU'RE NOT
4    REQUIRED TO ANSWER IT IF THIS IS SOMETHING THAT NEEDS
5    TO BE DISCUSSED IN CAMERA.
6              MS. HEINZ:  I CAN ATTEMPT TO ANSWER IT BASED
7    ON, I THINK, THE BRIEFING THAT HAS ALREADY BEEN DONE,
8    IF I CAN TAKE THE LECTERN?
9              THE COURT:  THAT'S FINE.
10             MS. HEINZ:  YOUR HONOR, AS PART OF THE
11   EXCHANGE OF BRIEFING BETWEEN THE GOVERNMENT AND THE
12   DEFENSE ON THE ISSUE, THIS, OF COURSE, STARTED WITH THE
13   GOVERNMENT SENDING A LETTER TO THE DEFENSE SUMMARIZING
14   THE LEVEL FRAMEWORK FOR AN ANALYSIS OF A CIPA SECTION 4
15   MOTION.
16                  ALL OF THAT LEGAL FRAMEWORK HAS ALREADY
17   GONE OVER TO THE DEFENSE.  AND THE DEFENSE CAN RESEARCH
18   FOR THEMSELVES, AS I'M SURE THEY HAVE DONE, ABOUT THE
19   LEGAL FRAMEWORK FOR A CIPA SECTION 4 MOTION.
20                  THAT LEGAL FRAMEWORK INCLUDES AN INITIAL
21   ANALYSIS BY THE COURT AS TO WHETHER OR NOT THE
22   PARTICULAR MATERIALS IN QUESTION WOULD BE SUBJECT TO
23   DISCOVERY UNDER TRADITIONAL DISCOVERY RULES.
24             THE COURT:  OKAY.  THAT'S FINE.  I AGREE.  I
25   WANTED TO CONFIRM THAT.
```

```
 1                    AND THEN DO YOU HAVE ANY VIEW AS TO OTHER
 2    COURTS HAVE, UNDER THESE CONDITIONS, INVITED AN IN
 3    CAMERA PROCESS WITH THE DEFENDANTS PURSUANT TO WHICH
 4    THE DEFENDANTS CAN PROVIDE THE COURT WITH INFORMATION,
 5    SUCH AS WHAT MR. HANUSZ WAS REFERRING TO, THAT MIGHT
 6    FACILITATE MY REVIEW OF THE MATERIALS TO DETERMINE THAT
 7    STEP ONE?
 8                    ARE THESE IN FACT DISCOVERABLE MATERIALS?
 9                    AND, IF SO, THEN ARE THEY PROTECTED,
10    NONETHELESS, AND ARE NOT PRODUCIBLE?
11                    OR ARE THEY NOT DISCOVERABLE MATERIALS,
12    IN WHICH CASE THE SECRECY ISSUES DON'T HAVE TO BE
13    ADDRESSED?
14                    DO YOU AGREE WITH THAT?
15          MS. HEINZ:  YES, YOUR HONOR.  I HAVE NOT
16    PERSONALLY PARTICIPATED IN A CASE WHERE THE DEFENSE
17    MADE A PROFFER OF, ESSENTIALLY, WHAT DEFENSES THEY
18    INTENDED TO MOUNT AT TRIAL.
19                    BUT THE CASE LAW MAKES CLEAR THAT THAT
20    HAS BEEN DONE IN OTHER CASES, SOMETIMES IN WRITING,
21    SOMETIMES IN A HEARING.  SO THAT THEN THE COURT CAN, AT
22    LEAST, HAVE THE BENEFIT OF THE DEFENSE PROVIDING
23    INFORMATION.
24          THE COURT:  ALL RIGHT.  THANK YOU.
25                    MR. HANUSZ, I KNOW YOU JUST SAID -- I
```

```
1     UNDERSTAND WHAT -- I HEARD WHAT YOU JUST SAID.  AND
2     I'VE HEARD -- YOU'VE SAID IT BEFORE CONCERNING, FOR
3     EXAMPLE, I MIGHT INADVERTENTLY -- IF THAT WERE DONE AND
4     I KNEW THAT INFORMATION, I MIGHT INADVERTENTLY DISCLOSE
5     IT, WHETHER IN A WRITTEN ORDER OR IN SOME OTHER ORAL
6     STATEMENT, SO THAT THE GOVERNMENT MIGHT HAVE SOMETHING
7     TO WHICH IT WAS NOT ENTITLED.  I UNDERSTAND THAT RISK.
8                 BUT WHAT'S YOUR VIEW ON WHAT -- DO YOU
9     THINK THAT THAT RISK IS SUCH THAT IT OUTWEIGHS HAVING
10    YOU, IN CAMERA, TELL ME OR PROVIDE IN WRITING
11    INFORMATION THAT I COULD USE TO ASSESS THE EVIDENCE AT
12    ISSUE HERE TO DETERMINE IF IT'S -- IT'S DISCOVERABLE
13    ABSENT THE NATIONAL SECRECY ISSUES?
14                 MR. HANUSZ:  I DON'T THINK THAT'S THE ONLY
15    RISK, YOUR HONOR.  THAT IS ONE RISK, RIGHT.  THE RISK,
16    JUST BY THE COURT'S QUESTIONS OF THE GOVERNMENT BASED
17    ON INFORMATION PROVIDED BY THE DEFENSE, THAT'S ONE
18    ISSUE.
19                 THE OTHER ISSUE IS, YOU KNOW, DEFENSES
20    CAN, AND DO, KIND OF MORPH OVER TIME BASED ON
21    ADDITIONAL INFORMATION THAT THE COURT IS NOT GOING TO
22    HAVE THE BENEFIT OF.
23                 THIRD, AND KIND OF RELATED TO THE SECOND
24    POINT --
25                 THE COURT:  CAN YOU DO IT MORE THAN ONCE, IF
```

1    THAT HAPPENED?

2              MR. HANUSZ:  I THINK THERE ARE NUANCES.  YOUR

3    HONOR IS A JUDGE.  YOUR HONOR IS NOT DEFENSE COUNSEL.

4    YOUR HONOR IS NOT -- IS JUST -- THERE'S NO WAY -- I

5    DON'T THINK THE COURT CAN FULLY GET THE NUANCES.

6                   YOUR HONOR, CAN I MAKE --

7              THE COURT:  I'M NOT DISAGREEING WITH THAT.

8    I'M NOT SAYING, AS A PER SE MATTER, THAT CAN I LOOK AT

9    A DOCUMENT THE SAME WAY YOU MIGHT.

10              MY QUESTION IS, DO YOU THINK I COULD LOOK

11   AT THE DOCUMENT IN A MORE INFORMED WAY IF YOU PROVIDED

12   ME WITH SOME INFORMATION THAT MIGHT PERMIT ME TO SAY,

13   "OH, THIS WOULD OTHERWISE BE DISCOVERABLE"?

14              MR. HANUSZ:  I THINK THE COURT WOULD CERTAINLY

15   BE MORE INFORMED THAN IT WOULD OTHERWISE BE.  BUT I

16   DON'T THINK THAT THAT IS -- THAT THAT FULLY PROTECTS

17   DR. SHIH AND MR. MAI'S RIGHTS.

18              THE OTHER ISSUE -- I WOULD --

19             THE COURT:  BY THE WAY, I WOULDN'T -- IF I

20   WERE TO PROCEED IN THAT FASHION, IT WOULDN'T BE WITH

21   THE DEFENDANTS WAIVING THE RIGHT TO OBJECT.

22              IN OTHER WORDS, IT WOULDN'T BE A WAIVER

23   OF THE CLAIM THAT THIS SHOULDN'T HAVE BEEN NECESSARY.

24   IT'S JUST A --

25             MR. HANUSZ:  THE OTHER OPTION, YOUR HONOR,

```
 1    WOULD BE - AND WE HAVE PROPOSED THIS TO THE GOVERNMENT
 2    BEFORE - IS TO ALLOW THE DEFENSE COUNSEL TO GET THE
 3    SECURITY CLEARANCES THAT WE NEED IN ORDER TO REVIEW THE
 4    DOCUMENTS OURSELVES, BE SUBJECT TO THOSE PROCEDURES.
 5    AND I THINK THAT IS -- THAT CERTAINLY HAS HAPPENED IN
 6    PLENTY OF CASES WHERE FOLKS GO TO WASHINGTON AND REVIEW
 7    DOCUMENTS IN A SKIFF OR REVIEW DOCUMENTS HERE IN A
 8    SKIFF.  IT HAPPENS WITH SOME FREQUENCY.
 9                 THE GOVERNMENT'S RESPONSE WAS, WELL, YOU
10    CAN'T FORCE US TO GIVE YOU -- BASICALLY, TO GIVE YOU
11    THAT CLEARANCE.  BUT THERE'S NOTHING TO PREVENT THEM
12    FROM IT.  SO THEY CAN CERTAINLY DO IT.  WE CAN
13    CERTAINLY START THAT PROCESS.
14                 THE COURT:  DO YOU HAVE ANY INSIGHT AS TO HOW
15    LONG THAT TAKES?
16                 MR. HANUSZ:  I DON'T, YOUR HONOR.
17                 BUT WE CERTAINLY -- WE SUGGESTED IT TWO
18    MONTHS AGO, AND WE'D BE HAPPY TO DO IT.
19                 THE COURT:  I HAVE TO MOVE ON TO OTHER MATTERS
20    IN A MINUTE.
21                 MS. HEINZ, ANYTHING ON THAT ISSUE, THE
22    SECURITY CLEARANCE ISSUE?
23                 FIRST, DO YOU KNOW HOW LONG IT WOULD
24    TAKE?
25                 AND, SECOND, WHAT'S YOUR VIEW ON THE
```

```
 1    MERITS?
 2              MS. HEINZ:  YOUR HONOR, THERE ARE TWO THINGS
 3    THAT ARE REQUIRED TO REVEAL CLASSIFIED INFORMATION TO
 4    SOMEONE, THE PROPER SECURITY CLEARANCE AND THE NEED TO
 5    KNOW.
 6              AND WITH RESPECT TO THE SPECIFIC
 7    INFORMATION THAT IS UNDERLYING THE CURRENTLY PENDING
 8    CIPA SECTION 4 MOTION, THERE IS NO NEED FOR DEFENSE
 9    COUNSEL TO KNOW.  SO EVEN IF THEY HAD A SECURITY
10    CLEARANCE, THAT INFORMATION COULD NOT BE DISCLOSED TO
11    THEM.
12              THE COURT:  ARE YOU FAMILIAR WITH -- LET ME
13    ASK YOU THIS QUESTION:
14              IF IT WERE DETERMINED IN A CASE THAT A
15    DEFENSE COUNSEL -- DEFENSE COUNSEL HAD SECURITY
16    CLEARANCE.  AND IF IT WERE DETERMINED THAT THE
17    INFORMATION WAS SOMETHING THAT SHOULD BE DISCLOSED.
18              YOU WITH ME SO FAR?
19              MS. HEINZ:  YES.
20              THE COURT:  IS THE DEFENSE COUNSEL PERMITTED
21    TO REDISCLOSE THAT TO THE CLIENT?
22              MS. HEINZ:  TYPICALLY, NO, UNLESS THE CLIENT
23    HAS A SECURITY CLEARANCE, WHICH, IN THIS CASE, THEY DO
24    NOT.
25              AND IT WOULD BE UNLIKELY THAT THEY WOULD
```

1     EVER BE GRANTED ONE.

2                    SO THE ANSWER WOULD BE, NO.

3                    IF I MIGHT JUST, YOUR HONOR, BRIEFLY?

4                    TYPICALLY, THE WAY SOMETIMES THIS WORKS

5     IS, THAT AFTER THE COURT HAS REVIEWED A CIPA SECTION 4

6     MOTION, AND IF THE COURT HAS GONE THROUGH ALL THE LEGAL

7     ANALYSIS AND THEN HAS DETERMINED, AT THE END OF THAT

8     ANALYSIS, THAT PART OF THAT INFORMATION NEEDS TO BE

9     DISCLOSED TO THE DEFENSE, THEN THE BALL COMES BACK TO

10    THE GOVERNMENT TO DECIDE HOW TO DISCLOSE IT, IF TO

11    DISCLOSE IT OR WHETHER TO APPEAL.  AND THAT'S THE

12    PROCESS.

13            THE COURT:  I UNDERSTAND.

14                    HERE'S WHAT I'D LIKE YOU TO DO:

15                    I'D LIKE YOU TO CONFER ON THE ISSUE WE'VE

16    TALKED ABOUT.  AND LET ME KNOW IN A WEEK IF YOU HAVE

17    RESOLVED THE ISSUE WE'VE PREVIOUSLY DISCUSSED ON THE

18    BILL OF PARTICULARS.

19                    ALSO, I WOULD LIKE THE DEFENSE TO REFLECT

20    ON MY QUESTION ABOUT AN IN CAMERA OPPORTUNITY, WHETHER

21    IT IS BY IN WRITING OR ORALLY OR BOTH, AS TO PROVIDING

22    THE COURT WITH MORE INSIGHT AS TO THE DEFENSE CURRENT

23    VIEWS AS TO WHAT INFORMATION YOU WOULD VOLUNTARILY

24    PROVIDE TO ME ABOUT POTENTIAL DEFENSES THAT MIGHT --

25    THAT YOU THINK WOULD FACILITATE OR COULD FACILITATE MY

```
1    REVIEW OF THE DOCUMENTS UNDER THE RULE 4 MOTION.
2                 SO I'D LIKE TO HEAR FROM YOU WITHIN A
3    WEEK ON WHAT YOUR VIEW ON THAT IS.
4                 AND I THEN CAN MAKE -- WELL, UPON
5    RECEIVING THOSE TWO THINGS, ONE, I CAN THEN PROCEED ON
6    THE BILL OF PARTICULARS MOTION, ONCE I HEAR WHAT
7    DISPUTES, IF ANY, REMAIN.
8                 AND, SECOND, UPON RECEIVING THE DEFENSE
9    POSITION AS TO AN IN CAMERA PROCESS, I CAN DETERMINE
10   HOW NEXT -- HOW NEXT TO PROCEED ON THE RULE 4 MOTION,
11   THE CIPA MOTION.
12                AND I UNDERSTAND, MS. HEINZ, YOUR
13   POSITION THAT IF -- WHETHER OR NOT THE -- BUT, TO BE
14   CLEAR, MY POSITION IS NOT THAT BY AGREEING -- IF THE
15   DEFENDANTS ELECT TO PROVIDE IN CAMERA INFORMATION TO ME
16   ABOUT POTENTIAL DEFENSES OR OTHER MATTERS THAT THE
17   DEFENDANTS THINK WOULD BE USEFUL FOR ME TO HAVE AS I
18   REVIEW THE DOCUMENTS AT ISSUE, THAT IS NOT A WAIVER OF
19   THE DEFENDANT'S OBJECTIONS THAT THEY HAVE RAISED TO THE
20   PROCESS.  IT'S JUST A MEANS PURSUANT TO WHICH I COULD,
21   POTENTIALLY, CARRY OUT THE PROCESS.
22                AND I UNDERSTAND, MS. HEINZ, YOUR POINT
23   THAT, WHETHER OR NOT THERE'S AN IN CAMERA PROCESS WITH
24   DEFENSE, AFTER I HAVE CONCLUDED MY REVIEW OF THE
25   DOCUMENTS UNDER RULE 4, I MAY DETERMINE THAT ALL OF
```

```
1    THEM SHOULD BE PRODUCED.  I MAY DETERMINE NONE OF THEM

2    SHOULD BE PRODUCED.  I MAY DETERMINE SOME OF THEM

3    SHOULD BE PRODUCED.

4              AND THAT COULD BE ON DIFFERENT GROUNDS

5    ONE, IF IT IS NOT DISCOVERABLE, THEN I DON'T HAVE TO

6    GET TO THE NATIONAL SECURITY ISSUE.

7              IF IT IS DISCOVERABLE, THEN I DO HAVE TO

8    GET TO THE NATIONAL SECURITY ISSUE.

9              I UNDERSTAND, THEREFORE, THAT IF I HAVE

10   DONE THAT ANALYSIS AND HAVE IDENTIFIED ONE OR MORE

11   DOCUMENTS THAT I HAVE DETERMINED SHOULD BE DISCLOSED,

12   THEN THE BALL IS IN THE GOVERNMENT'S COURT AS TO WHAT

13   TO DO NEXT.

14             AND THE GOVERNMENT MAY CONCLUDE TO --

15   WELL, I DON'T WANT TO ANTICIPATE WHAT THE GOVERNMENT

16   MIGHT DO, BUT I UNDERSTAND THAT.

17        MS. HEINZ:  UNDERSTOOD.  THANK YOU, YOUR

18   HONOR.

19        THE COURT:  ANYTHING ELSE WE NEED TO DO TODAY?

20        MS. HEINZ:  NOTHING FROM THE GOVERNMENT.

21        MR. HANUSZ:  YOUR HONOR, THE COURT HAD ASKED A

22   QUESTION AS TO HOW LONG THE SECURITY CLEARANCE PROCESS

23   TAKES.  I DON'T KNOW IF THERE WAS A CLEAR ANSWER TO

24   THAT.

25        THE COURT:  DO YOU KNOW?
```

```
 1              MS. HEINZ:  I DON'T KNOW, YOUR HONOR.
 2                   IT'S NOT OVERNIGHT.  SO IT TAKES SOME
 3      TIME.
 4                   PROBABLY THE CISO WOULD HAVE AN IDEA
 5      ABOUT THAT.
 6              THE COURT:  ALL RIGHT.  I'LL SEE WHAT I CAN
 7      LEARN.
 8                   OBVIOUSLY, YOU CAN INDEPENDENTLY INQUIRE.
 9              MR. HANUSZ:  WE'LL DO THAT, YOUR HONOR.  THANK
10      YOU.
11              THE COURT:  IF YOU LEARN SOMETHING IN THE NEXT
12      WEEK, PUT THAT IN YOUR REPORT AS WELL.
13              MR. HANUSZ:  WILL DO.
14              THE COURT:  THANK YOU.
15              MR. LITTRELL:  JUST TO SAY ONE THING.  IT'S
16      BEEN MENTIONED A FEW TIMES THAT THE COURT MAY CONSULT
17      WITH THE CISO.  WE JUST OBJECT TO ANY EX PARTE
18      COMMUNICATION WITH THE CISO.
19                   AND TO THE EXTENT IT'S DONE, WE ASK THAT
20      IT BE ON THE RECORD, AT LEAST.
21              THE COURT:  ALL RIGHT.
22              MS. HEINZ:  THE CISO WORKS FOR THE COURT.  THE
23      CISO IS NOT CONNECTED TO EITHER PARTY.  THE CISO IS
24      HIRED BY THE JUDGES.
25              MR. LITTRELL:  TO THE EXTENT THE CISO IS
```

1    ADVISING THE COURT ABOUT WHAT IT'S LEGALLY REQUIRED TO

2    DO IN TERMS OF PUTTING THINGS ON THE RECORD, WE OBJECT.

3             THE COURT:  I UNDERSTAND.

4                  I DON'T BELIEVE THAT THE CISO PERSONNEL

5    ARE LAWYERS.  MAYBE SOME ARE.

6                  ANYWAY.  ALL RIGHT.  THANK YOU.

7                  YOUR OBJECTION IS MAINTAIN -- IS NOTED

8    AND MAINTAINED.  THANK YOU.

9             **(END OF PROCEEDINGS)**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES        )
                                   )
4    STATE OF CALIFORNIA          )

5               I, ALEXANDER T. JOKO, FEDERAL OFFICIAL

6    COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT

7    COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY

8    CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED

9    STATES CODE, THAT THE FOREGOING IS A TRUE AND CORRECT

10   TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS

11   HELD IN THE ABOVE-ENTITLED MATTER, AND THAT THE

12   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED

14   STATES.

15   DATE:  DECEMBER 20, 2018

16

17

18                      /S/ ALEXANDER T. JOKO
                        _____
19                      ALEXANDER T. JOKO, CSR NO. 12272
                        FEDERAL OFFICIAL COURT REPORTER
20

21

22

23

24

25

< DATES >
DECEMBER 20,
2018 72:28
OCTOBER 4, 2018
1:31, 3:1
/S/ 72:33

< 1 >
1 36:20, 36:22,
40:19, 44:7
1.5 34:16, 40:2
12272 1:39,
72:35
13 28:8, 30:6
1990 2:16

< 2 >
2 36:7, 36:8,
36:21, 36:25,
37:13, 45:19
2. 36:8, 40:19,
44:12, 45:15
20 34:19
2012 21:13
28 72:14
2:00 13:23,
18:17

< 3 >
312 2:6
350 1:41, 2:25,
2:31

< 4 >
4 61:14, 61:19,
66:8, 67:5,
68:1, 68:10,
68:25
43 5:9
4311 1:41

< 5 >
5 3:9
500 34:16

< 6 >
6 28:8

< 7 >
705 2:17
753 72:14

< 8 >
8:30 1:31, 3:4

< 9 >
9. 19:10
90012 1:42, 2:7
90025 2:18
903 2:24, 2:30
92673 2:26,
2:32

< A >
A. 1:3
ABETTING 25:4
ABILITY 42:8
ABLE 7:3,
34:20, 49:21
ABOVE-ENTITLED
72:20
ABSENT 9:12,
60:22, 63:13
ABSOLUTELY
11:18, 38:14,
57:19
ABUNDANCE 3:21
ABUSE 23:17,
25:20, 26:6
ACCEPT 12:5,
53:12
ACCESS 20:24,
21:25, 22:3,
22:9, 22:18,
22:21, 22:24,
23:1, 23:5,
23:21, 24:12,
24:22, 25:4,
25:9, 25:11,
25:17, 26:1,

26:18, 27:24,
28:2, 28:4,
28:20, 28:25,
29:4, 29:5,
29:7, 30:3,
30:25, 31:1,
31:19
ACCESSED 21:6,
28:24, 29:14
ACCESSORS 22:17
ACCORDING 14:5,
14:15
ACCURATE 7:5
ACCUSED 23:9
ACT 23:17,
25:20, 26:6,
33:10, 48:4
ACTIVE 13:21,
14:15
ACTS 33:10,
33:23
ACTUAL 24:8
ACTUALLY 4:6,
17:9, 24:19,
26:15, 29:13,
46:4
ADD 16:7,
26:24, 26:25,
38:18, 43:11
ADDITIONAL
48:17, 63:21
ADDRESS 13:12,
13:14, 19:17,
20:5, 39:21,
43:17
ADDRESSED
30:11, 30:12,
51:19, 62:13
ADDRESSES 19:16
ADDRESSING
32:18
ADHERE 30:4,
30:8, 30:24
ADO 7:12
ADOPT 58:7
ADOPTED 18:20,
18:21, 25:2,
52:10
ADVANCED 30:20
ADVICE 5:23,

8:2, 8:3
ADVISED 4:25,
7:14
ADVISING 71:1
AFTERWARD 22:18
AGENCY 51:9
AGENT 28:11
AGO 65:18
AGREE 6:3,
11:7, 12:3,
16:22, 16:25,
24:5, 24:7,
30:15, 47:11,
48:1, 58:8,
59:20, 60:11,
61:24, 62:14
AGREED 53:6
AGREEING 68:14
AGREEMENT
12:13, 25:10,
25:11, 44:5,
49:19
AGREES 27:10
AHEAD 15:25,
20:19
AIDING 25:4
AIR 48:4
AJ_CSR@YAHOO.CO
M 1:43
AL 1:13, 3:10
ALBEIT 4:13
ALEXANDER 1:39,
72:8, 72:33,
72:35
ALLEGATION
28:10, 30:1
ALLEGATIONS
27:13, 27:16,
28:8, 35:19
ALLEGE 33:9,
38:9
ALLEGED 24:19,
24:21, 25:19,
25:23, 36:7
ALLEGES 24:10,
25:17, 36:4,
36:17, 44:10
ALLEGING 25:7,
44:19
ALLOW 26:3,

65:2
ALLOWING 18:10
ALONE 33:10
ALREADY 61:7,
61:16
ALTHOUGH 32:11
AMANECER 2:24,
2:30
AMBUSHED 45:1
AMENDMENT 46:10
AMONG 10:3,
28:8, 46:21,
46:24
ANALYSIS 51:19,
61:14, 61:21,
67:7, 67:8,
69:10
AND/OR 11:12,
14:12
ANGELES 1:29,
1:42, 2:7,
2:18, 3:1, 72:3
ANKLE 13:22,
18:25
ANNOUNCED
54:22, 54:23,
56:4
ANNOUNCING
55:16, 58:5
ANSWER 38:16,
39:18, 47:5,
49:4, 52:23,
58:21, 60:6,
61:4, 61:6,
67:2, 69:23
ANSWERED 7:23
ANSWERING
15:19, 27:2
ANSWERS 34:6
ANTHONY 2:28
ANTICIPATE
31:10, 58:18,
69:15
ANYBODY 48:11
ANYWAY 71:6
APPARENTLY 59:6
APPEAL 67:11
APPEAR 3:21,
3:27, 12:7,
16:11, 34:3,

48:20
APPEARANCE 4:6
APPEARANCES
2:1, 3:11
APPEARS 12:20
APPELLATE 5:14
APPLICABLE
42:2, 47:2,
47:4
APPLICATION
5:20, 50:22
APPLIES 43:21,
44:15, 46:1
APPLY 25:23,
42:19, 43:1,
48:14
APPRECIATE
20:7, 57:21
APPROPRIATE
18:6
ARCANE 39:9
AREA 51:2
AREAS 48:3
ARGUE 45:13
ARGUED 14:13
ARGUMENT 5:9,
5:11, 21:11,
27:14, 29:12,
32:5
ARGUMENTS 32:5
ARIZONA 55:22,
56:4
AROUND 26:10,
26:14
ARTICLE 53:24,
57:9
ARTICULATE
33:16
ASPECTS 5:25
ASSESS 63:11
ASSESSMENT
31:12, 60:21
ASSOCIATED
28:11, 39:14
ASSUME 14:1,
28:2, 60:25
ATLANTA 7:7,
8:13, 13:4
ATTEMPT 61:6
ATTEND 8:13,

8:22
ATTORNEY 2:5,
4:24, 6:21,
6:25
ATTORNEY/CLIENT
7:25
AUSA 2:5
AUTHORITY 57:9
AUTHORIZATION
22:20, 22:25,
23:1, 23:11,
24:23, 26:18,
26:19, 28:4,
28:14, 29:20,
30:10, 51:9
AUTHORIZED
22:18, 22:21,
22:23, 25:17,
27:24, 28:2,
28:21, 29:4,
29:15, 30:25,
52:6
AWARE 57:14


< B >
BACK 28:16,
36:13, 37:8,
53:23, 60:4,
60:9, 60:14,
67:9
BALL 67:9,
69:12
BASED 24:18,
31:19, 33:22,
36:16, 42:20,
50:4, 61:6,
63:16, 63:20
BASIC 41:18
BASICALLY 22:5,
26:7, 26:9,
43:22, 51:16,
65:10
BASIS 5:12,
15:9, 15:11,
17:4, 18:4,
36:5, 40:18,
42:19, 46:19,
46:20
BATES 49:15,

49:23
BEARS 28:12
BEGIN 52:15,
57:6
BEGINNING 14:17
BEHALF 3:13,
3:19
BELABORING 3:23
BELIEVE 8:23,
17:17, 25:24,
36:3, 51:13,
56:23, 71:4
BELIEVED 37:25,
56:5
BELIEVES 14:21,
18:5, 32:7,
42:11, 44:22,
53:3
BENDING 6:11
BENEFIT 62:22,
63:22
BEST 27:4
BETTER 32:6
BEYOND 8:1
BIENERT 2:23,
2:29
BIGGER 42:7
BILL 19:5,
19:17, 31:25,
32:9, 33:1,
33:21, 33:23,
34:2, 34:23,
34:24, 35:17,
37:21, 38:21,
38:22, 41:6,
49:2, 67:18,
68:6
BIS 39:12,
39:15
BISCONTI 2:28,
3:19, 11:13
BIT 29:12
BLATANTLY 22:8
BLIND 57:23
BOIL 21:12
BOND 7:2,
12:15, 13:18,
13:20, 14:6,
15:2, 15:23,
19:1

BRACELET 13:22
BREKKA 21:16,
26:9, 26:20,
29:9
BRIEFED 51:10,
57:3
BRIEFING 51:7,
51:14, 56:23,
61:7, 61:11
BRIEFLY 15:25,
43:18, 67:3
BRING 42:20
BROAD 21:7
BROADER 9:7,
59:11
BROADLY 21:4
BROTHER 7:7
BUILT 14:18
BUNCH 33:6
BUNDY 2:16
BURDEN 15:9
BURDENSOME
15:16, 15:21,
16:12, 17:15
BUSY 18:12

< C >
CA 1:42, 2:7,
2:18, 2:26,
2:32
CALIFORNIA 1:2,
1:29, 3:1,
72:5, 72:12
CALL 12:21,
13:22, 13:24,
14:14, 15:7,
15:10, 15:16,
17:10, 17:12,
17:21, 17:22,
26:9
CALLE 2:24,
2:30
CALLED 17:10
CALLS 15:4,
16:2, 18:4,
18:6, 44:17
CAMERA 19:13,
43:14, 50:22,
51:3, 51:12,

51:20, 51:23,
52:2, 52:18,
53:1, 53:9,
54:1, 60:20,
61:5, 62:3,
63:10, 67:20,
68:9, 68:15,
68:23
CARRY 68:21
CARRYING 16:21
CASE 4:15,
5:25, 6:17,
6:18, 6:22,
21:12, 21:23,
23:8, 25:2,
25:3, 25:22,
26:1, 26:15,
27:8, 31:5,
37:2, 40:15,
42:9, 44:4,
44:24, 50:4,
55:21, 55:22,
56:3, 56:4,
59:8, 59:14,
59:17, 62:12,
62:16, 62:19,
66:14, 66:23
CASES 20:21,
21:9, 21:15,
21:19, 29:9,
29:11, 29:13,
29:16, 30:22,
55:20, 62:20,
65:6
CAUTION 3:22
CCL 39:12,
39:13
CEASE 23:19
CELL 16:3
CENTRAL 1:2,
72:12
CERTAIN 16:17,
17:15, 22:7,
50:22, 59:13,
59:16
CERTAINLY 7:2,
9:4, 23:11,
31:15, 37:5,
37:14, 44:9,
51:19, 57:6,

59:3, 64:14,
65:5, 65:12,
65:13, 65:17
CERTIFICATE
72:1
CERTIFY 72:14
CHANCE 19:21
CHANGE 13:18,
14:16, 44:23,
46:6
CHANGED 14:11,
14:22, 15:1,
15:13
CHARGE 24:6,
26:6, 36:5
CHARGED 25:3
CHARGES 37:11,
46:20, 47:8
CHART 43:18,
47:6
CHARTS 54:3
CHINA 36:11,
36:19, 37:1,
37:2, 37:7,
37:12, 37:18,
37:20, 37:23,
38:1, 38:11,
40:8, 41:4,
44:6
CHOICE 8:21,
8:24
CHOSE 11:5
CHRISTENSEN
25:1, 26:8,
26:20
CIPA 56:19,
61:14, 61:19,
66:8, 67:5,
68:11
CIRCUIT 6:18,
21:14, 22:16
CIRCUITS 39:8
CIRCUMSTANCES
6:22, 9:13,
15:13, 31:2
CISO 55:2,
55:9, 70:4,
70:17, 70:18,
70:22, 70:23,
70:25, 71:4

CITATION 28:5
CITATIONS 30:6
CITE 48:22
CITED 4:15,
6:16
CITES 6:19
CIVIL 49:3
CLAIM 24:15,
26:19, 64:23
CLAIMING 25:25
CLAIMS 41:4
CLARIFICATION
32:17
CLARIFY 10:23
CLARIFYING
23:20
CLASSIFICATION
40:6
CLASSIFIED
52:25, 54:11,
55:1, 55:2,
55:6, 55:7,
57:13, 57:17,
60:7, 66:3
CLEAN 48:4
CLEAR 18:15,
20:14, 22:4,
23:15, 27:7,
46:18, 50:3,
62:19, 68:14,
69:23
CLEARANCE
65:11, 65:22,
66:4, 66:10,
66:16, 66:23,
69:22
CLEARANCES 65:3
CLEARLY 13:8
CLEMENTE 2:26,
2:32
CLERK 19:15
CLIENT 12:24,
66:21, 66:22
CLOSER 33:14
CO-EXTENSIVE
57:1
CODE 72:16
COLLOQUY 3:23,
3:25, 6:21,
7:11

COMES 46:13,
67:9
COMING 39:11
COMMENCED 58:19
COMMERCE 43:19,
46:22, 48:23,
49:24
COMMITTED 47:25
COMMON 4:22,
48:3
COMMUNICATE
10:8
COMMUNICATION
8:2, 70:18
COMPANY 22:6,
22:12, 22:13,
22:14, 22:15,
23:4, 28:10,
28:23, 35:24,
35:25, 36:9
COMPARE 7:3
COMPELLING 32:5
COMPETING 58:1
COMPLETE 24:6,
48:16
COMPLETED 33:20
COMPLETELY 45:1
COMPLEX 20:16
COMPLIANCE
17:19
COMPLICATED
25:14, 43:2,
43:3
COMPLIED 16:10,
59:16
COMPUTER 20:24,
21:1, 22:6,
22:24, 23:17,
24:2, 24:12,
24:23, 25:10,
25:20, 26:5,
30:3, 34:13
COMPUTERS 28:4,
28:23, 29:18
CONCEPT 47:17
CONCERNED 12:9,
44:7, 59:1,
59:2
CONCERNING
12:14, 17:8,

27:13, 30:25,
63:2
CONCERNS 19:3,
50:20
CONCLUDE 30:9,
69:14
CONCLUDED 68:24
CONCLUSION
21:20
CONCLUSIONS
24:14, 24:18,
44:18
CONDITION
12:19, 15:1,
15:2, 16:24,
17:1, 17:3,
17:18
CONDITIONS
13:10, 13:18,
13:20, 14:4,
14:6, 15:2,
16:17, 19:1,
62:2
CONDUCT 21:7,
50:22
CONFER 7:15,
13:25, 49:18,
50:11, 60:5,
67:15
CONFERENCE
72:24
CONFERRED 7:17,
7:19
CONFERRING
11:12
CONFIDENTIAL
22:13, 59:18,
59:24, 60:20
CONFIDENTIALITY
55:13, 56:12,
60:23
CONFIRM 9:11,
61:25
CONFORMANCE
72:22
CONGRESS 20:22,
21:8
CONNECTED 70:23
CONSIDER 16:16,
18:10

CONSISTENT
27:17
CONSISTS 58:23
CONSPIRACY
24:10, 24:22,
25:8, 25:14,
25:15, 25:16,
33:8, 33:11,
33:13, 36:12,
36:14, 38:15,
41:14, 41:15,
44:5, 44:8,
44:10, 45:13,
45:17, 46:6,
47:14, 47:15
CONSPIRACY.
26:9
CONSPIRED 35:1
CONSTITUTIONAL
4:18, 6:19
CONSTRUCTIVE
46:10
CONSULT 55:1,
70:16
CONTACT 12:16,
17:7
CONTAINED 4:12,
38:14
CONTEND 15:3,
37:19, 38:23,
40:22, 47:1,
51:25, 52:22,
53:17, 54:7,
54:21, 59:15
CONTENDS 34:25,
37:11, 51:12
CONTEXT 16:18
CONTINUE 4:4
CONTROL 39:16,
40:5
CONTROLLED 43:8
CONTROLLING
6:16
COPIED 19:12
COPY 19:9,
34:14
CORRECT 9:9,
10:21, 12:15,
52:11, 72:16
CORRESPOND

49:23
CORRESPONDING
41:3
COUNSEL 2:1,
10:8, 10:9,
64:3, 65:2,
66:9, 66:15,
66:20
COUNT 19:10,
33:9, 36:7,
36:8, 36:20,
36:22, 36:25,
37:13, 41:14,
41:15, 44:7,
44:11, 45:15,
45:19, 47:15
COUNTRIES 37:6
COUNTRY 36:18,
37:3, 37:18,
38:1, 38:12,
40:9, 45:8
COUNTS 25:23,
25:24, 40:19
COUNTY 72:3
COUPLE 6:12,
7:10, 21:18,
43:17, 59:7
COURSE 10:6,
57:10, 61:12
COURTS 4:21,
21:10, 62:2
CR18-00050 3:9
CR18-00050-JAK
1:11
CREATE 29:22,
55:14
CREATED 22:15
CREDENTIALS
23:10, 23:14,
25:18, 28:21,
28:22, 29:1,
29:5, 29:7,
29:24, 30:2
CREE 24:1,
24:23, 26:1,
27:24, 28:4,
35:11
CRIME 47:23,
47:25
CRIMINAL 23:18,

25:10, 29:22,
44:5, 48:4,
59:14
CRIMINALIZE
21:5
CRIMINALIZED
48:5
CRITICAL 5:25,
23:3, 44:2
CSR 1:39, 72:35
CURRENT 38:6,
38:8, 67:22
CURRENTLY 66:7
CUTOFF 22:25

< D >
DAILY 12:16,
12:21, 15:10,
17:12
DATA 23:2, 23:5
DATABASE 34:15,
34:20
DATE 72:28
DAY 13:22,
13:23, 13:24,
17:15, 18:11,
18:20
DAYS 7:10, 16:2
DEAL 59:6
DEALING 4:15,
6:23, 39:16
DEALT 6:22,
29:19
DECIDE 33:12,
53:24, 56:16,
67:10
DECIDED 21:10,
33:13
DECISION 21:14,
44:17, 55:3,
55:18, 56:20,
58:5
DECISIONS 26:10
DECLARATION
51:17, 56:5
DEEMING 4:25
DEFAULT 57:12
DEFENDANT 2:12,
2:20, 4:7,

4:24, 9:20,
9:23, 10:1,
10:12, 10:15,
10:19, 10:22,
11:8, 11:18,
14:9, 14:12,
14:16, 14:20,
16:19, 17:8,
17:25, 27:19,
27:20, 27:22,
28:17, 52:9,
56:23, 57:10,
58:8, 68:19
DEFENDANTS
1:14, 12:7,
23:9, 25:3,
35:1, 37:24,
52:11, 52:22,
53:8, 53:17,
54:7, 54:21,
58:16, 59:15,
62:3, 62:4,
64:21, 68:15,
68:17
DEFENSE 24:6,
29:11, 34:13,
36:9, 39:1,
39:24, 42:8,
56:22, 57:18,
57:23, 58:25,
59:8, 61:12,
61:13, 61:17,
62:16, 62:22,
63:17, 64:3,
65:2, 66:8,
66:15, 66:20,
67:9, 67:19,
67:22, 68:8,
68:24
DEFENSES 62:17,
63:19, 67:24,
68:16
DEFER 55:8
DEFINITION
31:18
DEFRAUDED 25:25
DEPARTMENT
43:19, 46:22,
49:24, 55:19,
55:24, 56:25

DEPEND 54:24
DEPTH 38:13
DESCRIBED 36:1,
46:25
DESIST 23:19
DETENTION 14:5
DETERMINATION
12:8, 18:2,
58:20
DETERMINATIONS
46:23
DETERMINE
43:23, 52:11,
52:17, 52:19,
53:4, 53:10,
53:14, 53:15,
54:14, 54:17,
54:19, 55:15,
55:23, 62:6,
63:12, 68:9,
68:25, 69:1,
69:2
DETERMINED
11:13, 53:7,
53:11, 56:1,
56:10, 66:14,
66:16, 67:7,
69:11
DETERMINES 3:28
DETRIMENT 33:18
DEVELOP 38:10,
44:23
DEVELOPMENT
31:10
DEVICE 12:25,
37:12
DIED 7:7
DIFFERENCE 23:3
DIFFERENT 7:1,
14:11, 18:19,
18:20, 24:20,
24:25, 29:8,
29:25, 39:24,
45:8, 46:7,
47:18, 50:7,
54:8, 55:10,
55:11, 69:4
DIFFERENTIATES
22:22
DIFFERENTLY

24:9, 33:14
DIFFICULT
20:10, 35:17,
35:18
DIRECT 22:14
DIRECTION 23:20
DIRECTLY 27:3,
37:23
DISAGREE 15:12,
20:9, 20:13,
30:16
DISAGREEING
64:7
DISAGREEMENT
58:15
DISAGREES 57:2
DISCLOSE 42:11,
46:19, 52:21,
63:4, 67:10,
67:11
DISCLOSED
46:20, 46:21,
66:10, 66:17,
67:9, 69:11
DISCLOSURES
59:3
DISCOVERABLE
62:8, 62:11,
63:12, 64:13,
69:5, 69:7
DISCOVERY
32:14, 33:15,
33:21, 34:5,
34:13, 39:23,
39:25, 40:2,
40:13, 42:15,
45:25, 46:20,
46:21, 47:7,
48:12, 48:15,
48:23, 49:4,
57:11, 57:24,
59:13, 60:2,
60:22, 61:23
DISCRETION
16:16, 18:3,
18:5, 18:18
DISCUSSED 29:9,
34:21, 51:3,
58:24, 61:5,
67:17

DISCUSSING
28:9, 42:17
DISCUSSION
50:21
DISCUSSIONS
9:22, 51:12
DISMISS 19:4,
19:10, 19:17,
42:20
DISPUTE 16:22,
27:18, 49:12,
52:5, 53:18,
53:20, 58:20
DISPUTED 53:25,
56:8
DISPUTES 68:7
DISSENT 28:18,
30:21
DISTINCTION
21:10, 23:7
DISTRICT 1:1,
1:2, 1:4,
55:22, 72:10,
72:12
DIVISION 1:2
DOCKET 50:24,
51:6, 55:4,
55:25
DOCUMENT 4:12,
43:14, 52:1,
52:6, 52:12,
52:14, 53:8,
53:10, 53:12,
53:14, 53:16,
54:6, 54:14,
54:15, 54:18,
54:20, 64:9,
64:11
DOCUMENTS 7:3,
34:16, 34:20,
40:25, 46:22,
46:24, 47:1,
48:23, 49:24,
65:4, 65:7,
68:1, 68:18,
68:25, 69:11
DOING 40:24,
57:20, 58:4
DONE 3:26,
4:21, 28:21,

40:1, 40:12,
46:1, 61:7,
61:18, 62:20,
63:3, 69:10,
70:19
DOUBT 8:18,
23:10, 48:19,
48:21
DOWN 21:12,
42:9
DRAW 44:18
DRESS 26:7
DRIVE 2:16
DRUG 12:19,
14:24, 16:23,
16:25
DRUGS 14:25
DUE 14:19,
57:10
DURING 4:23,
10:6, 60:20


< E >
E-MAILING 22:12
EARLIER 9:10,
37:9
EASIER 6:11
EASILY 34:6
EASY 39:5,
45:24
ECCN 34:10,
34:17, 34:21,
39:2, 39:14,
40:5, 41:3,
44:2, 44:15,
46:1, 46:13,
47:3, 49:16,
50:4
ECCN. 34:15
EDUCATED 44:14,
45:22, 46:4
EECN 40:21,
40:25, 42:17
EFFECT 52:20,
58:7
EIGHT 25:23
EITHER 12:7,
12:11, 27:21,
70:23

ELECT 68:15
ELECTRONIC
12:25, 17:20,
19:2
ELEMENT 34:23,
41:24
ELEMENTS 38:22
ELIMINATING
15:2
EMPLOYEE 28:11
EMPLOYEES
22:11, 22:12
END 19:14,
21:16, 21:17,
26:21, 31:17,
67:7, 71:9
ENOUGH 21:4
ENSURE 17:18
ENTER 51:2
ENTITLED 63:7
ENTRY 39:13
ESSENTIALLY
21:11, 25:7,
25:8, 49:17,
62:17
ET 1:13, 3:10
EVALUATE 16:18,
54:16, 56:12,
58:3
EVALUATED 48:12
EVALUATING
46:22, 59:24
EVALUATION
42:18, 48:24
EVERYDAY 15:7,
15:16
EVERYONE 18:15
EVERYTHING
57:13, 58:10
EVIDENCE 17:7,
31:11, 36:18,
36:23, 37:4,
37:6, 37:16,
44:23, 63:11
EX 28:9, 28:12,
70:17
EXACT 49:15
EXACTLY 25:2,
53:25, 55:9
EXAMINE 54:14

EXAMINED 42:15
EXAMINING 53:2
EXAMPLE 25:22,
34:8, 63:3
EXCEEDS 29:20
EXCHANGE 61:11
EXPAND 46:5
EXPERTS 45:21
EXPLANATION
34:3
EXPLICITLY
22:25, 23:6,
28:18
EXPORT 34:11,
35:1, 36:14,
36:18, 36:24,
37:1, 37:11,
38:9, 38:11,
39:16, 40:5,
44:5, 44:8,
44:11, 44:13,
45:14, 48:25
EXPORTED 36:10,
45:7, 46:23
EXPORTER 43:22,
44:18
EXPORTS 37:6,
38:12
EXTENT 14:12,
18:2, 33:19,
37:4, 51:1,
59:14, 60:16,
70:19, 70:25
EXTRA 14:19
EXTREME 14:8,
14:20


< F >
FACEBOOK 23:8,
23:11, 23:12,
23:13, 23:20,
29:1
FACILITATE
62:6, 67:25
FACILITATED
35:7
FACT 14:16,
27:14, 30:9,
30:11, 30:12,

30:24, 31:3,
31:5, 31:13,
40:21, 42:3,
42:21, 54:11,
62:8
FACTORS 14:10
FACTS 24:18,
24:19, 24:21,
24:25, 26:7,
26:13, 36:8
FACTUAL 17:4,
23:24, 24:3,
26:12, 27:17,
28:13
FAILED 28:6
FALL 39:14,
42:13
FAMILIAR 66:12
FAMILY 8:11
FAR 13:4, 66:18
FASHION 19:12,
30:12, 33:22,
64:20
FEDERAL 1:40,
72:8, 72:36
FEEL 8:20, 39:4
FELONY 21:5
FELT 8:21
FEW 27:11,
70:16
FEWER 34:16
FIGURE 45:25
FIGURES 39:1
FILE 3:17,
3:20, 50:12,
60:9
FILED 4:9,
6:13, 7:13,
53:1
FILING 59:5
FIND 32:4,
34:20, 39:5,
46:25, 50:5
FINE 6:10,
9:16, 18:15,
36:2, 61:9,
61:24
FINISH 35:4
FIRST 1:41,
12:19, 21:9,

27:6, 32:21,
33:4, 34:23,
39:12, 39:22,
52:23, 53:14,
65:23
FIT 38:5
FLIGHT 14:8,
14:10, 14:20
FLOW 47:6, 54:3
FLYING 57:23
FOLKS 65:6
FOLLOW 53:21,
53:22
FOLLOWED 25:2
FOLLOWING 9:21,
16:15, 54:10
FORBID 23:13
FORBIDS 22:7
FORCE 65:10
FORCED 33:6
FORCING 33:16
FOREGOING 72:16
FORM 4:14,
4:19, 6:13,
7:13, 10:14,
10:16, 11:17,
11:21, 34:13
FORMAT 72:22
FORMER 22:12
FORTH 4:9,
11:23, 12:2,
49:16
FOUNDATIONAL
42:25
FOUNDRY 38:11
FOUR 32:11
FRAMEWORK
61:14, 61:16,
61:19, 61:20
FRANKLY 8:1
FRAUD 23:17,
25:20, 25:24,
26:5
FRAUDULENT
27:25
FREQUENCY 65:8
FREQUENT 18:4
FULFILL 15:23
FULLY 10:4,
64:5, 64:16

FUNERAL 7:8,
8:22
FUTURE 3:27,
5:20, 9:12,
11:11, 12:12


< G >
GAIN 25:17,
29:5
GAINED 27:25
GAVE 9:2,
29:14, 29:18,
30:2, 46:12,
49:5
GENERAL 47:13,
47:17
GENERALLY 59:14
GENUINE 31:12
GETS 20:11
GETTING 37:3
GIVE 20:14,
25:18, 46:11,
65:10
GIVEN 8:3,
27:24, 28:4,
29:1, 39:5,
54:1
GIVES 36:8,
57:9
GIVING 10:17,
10:23, 11:2,
11:6, 23:13,
59:8
GOODS 46:23,
48:24
GOOGLE 34:7,
39:12
GPS 13:21, 16:4
GRAND 44:4,
46:8, 46:12,
50:8
GRANTED 32:25,
67:1
GREATER 32:9
GROUNDS 69:4
GUESS 8:18,
44:14, 44:15,
46:4, 48:7,
56:15

< H >
HACKING 20:23
HAND 19:13
HANDED 29:23
HANDLED 60:17
HAPPEN 20:12,
38:2
HAPPENED 10:4,
22:18, 26:15,
64:1, 65:5
HAPPENS 44:25,
65:8
HAPPY 7:13,
49:22, 65:18
HARM 22:15
HEAD 51:9,
55:19, 55:23,
56:25
HEAR 8:10,
32:1, 32:21,
68:2, 68:6
HEARD 18:7,
63:1, 63:2
HEARING 4:23,
5:6, 5:12,
6:23, 8:14,
8:15, 8:22,
9:15, 11:11,
11:14, 11:15,
11:17, 11:22,
12:8, 12:12,
19:14, 62:21
HEINZ 3:13,
13:14, 13:15,
13:16, 15:5,
16:8, 18:7,
18:10, 18:24,
19:25, 20:1,
51:1, 51:13,
52:3, 52:23,
53:22, 54:10,
54:24, 55:18,
56:14, 60:14,
60:25, 61:6,
61:10, 62:15,
65:21, 66:2,
66:19, 66:22,
68:12, 68:22,

69:17, 69:20,
70:1, 70:22
HEIZ 2:4
HELD 22:16,
25:8, 72:20
HELP 49:11
HELPFUL 39:15
HEREBY 72:12
HIRED 70:24
HONESTLY 38:13
HONORABLE 1:3
HOPPED 34:14
HOPPING 34:20
HORNBOOK 34:4
HOUR 17:15,
17:23, 18:17
HYPOTHETICALLY
37:9, 52:12,
53:6, 53:9


< I >
I. 21:22,
21:24, 24:20,
24:25
IBANEZ 13:7,
16:3
IDEA 70:4
IDENTIFICATION
35:12
IDENTIFIED
32:11, 32:15,
35:8, 35:10,
42:17, 45:15,
45:19, 47:16,
53:7, 56:6,
69:10
IDENTIFIES
47:10, 48:15
IDENTIFY 44:12,
45:18, 47:2,
47:3
IDENTITY 51:16,
51:25, 57:16
II 21:17,
21:22, 22:22,
22:23, 23:1,
28:18, 28:20,
28:22, 30:3
III 53:24, 57:9

ILLEGAL 36:24,
40:8
ILLUSTRATES
57:17
IMPLEMENTED
58:9
IMPORTANT 28:7,
40:4, 40:6
IMPOSED 14:19,
38:23
IN. 57:22
INABILITY 42:10
INADVERTENT
59:3
INADVERTENTLY
63:3, 63:4
INAPPROPRIATE
38:24
INCLINED 26:12
INCLUDE 28:6,
33:24, 34:17,
48:24, 60:21
INCLUDED 55:9
INCLUDES 61:20
INCLUDING 19:1,
30:20, 46:21,
46:23
INCORPORATE
31:4, 45:8,
48:4
INCREDIBLY 43:6
INDEPENDENTLY
70:8
INDICATES 6:19,
6:20
INDICATION 4:19
INDICTMENT
24:8, 24:10,
24:14, 24:20,
24:21, 25:25,
27:14, 27:17,
27:23, 28:6,
30:7, 31:19,
35:10, 36:3,
36:7, 36:16,
37:11, 37:13,
38:6, 38:8,
40:13, 41:11,
45:9, 46:10,
47:8, 47:9,

48:22, 49:8
INDIRECTLY
37:23
INDISTINGUISHAB
LE 21:13, 26:8
INFERRED 54:5
INFORMED 64:11,
64:15
INITIAL 13:20,
26:18, 61:20
INQUIRE 70:8
INSIDERS 29:16,
29:23
INSIGHT 41:8,
41:18, 57:19,
58:22, 59:8,
65:14, 67:22
INSIGHTS 48:18
INSTANCE 33:4
INSTINCT 38:15
INSTRUCTED 3:21
INSTRUCTIONS
41:23
INTEGRATED 39:7
INTELLIGENTLY
9:2
INTEND 11:21,
11:23, 46:5,
59:4
INTENDED 21:8,
62:18
INTENDS 45:17
INTERESTED 59:8
INTERIM 37:18
INTERNET 39:18
INTERPRET 42:19
INTERPRETED
21:4
INTERROGATORIES
49:5, 49:7
INTRO 41:11
INTRODUCE 36:18
INTRODUCTORY
28:8
INTRUDE 7:25
INVITED 62:2
INVOLVE 59:18
INVOLVED 18:15
ISHIANG 38:10
ISSUED 14:8

ISSUES 5:10,
8:14, 12:18,
20:16, 33:12,
39:16, 50:13,
50:14, 53:25,
54:17, 55:12,
55:13, 59:24,
62:12, 63:13
IT. 15:18
ITEM 3:9,
32:11, 36:4,
43:24, 44:6,
45:7
ITEMS 32:10,
34:25, 35:7,
35:9, 37:12,
37:17, 41:3,
42:2, 42:13,
43:8, 44:9
ITSELF 25:15,
47:22, 52:25,
53:2, 55:14


< J >
JAMES 2:13
JOHN 1:3, 2:14,
2:22, 3:16,
3:18
JOINT 50:12
JOKO 1:39,
72:8, 72:33,
72:35
JUDGE 1:4,
30:21, 64:3
JUDGES 70:24
JUDGMENT 7:4,
44:17
JUDICIAL 72:24
JUDITH 2:4,
3:13
JURISDICTION
53:24
JURY 41:23,
42:4, 44:4,
46:8, 46:12,
50:8
JUSTICIABLE
52:14, 52:17,
52:20, 52:24,

53:4, 53:13,
53:15, 55:14

< K >
KATZMAN 2:23,
2:29
KEY 34:9, 36:8
KHAL 3:12
KHALDOUN 2:3
KIET 3:19,
24:11, 24:22,
25:8, 25:17,
25:25
KIND 7:12,
40:18, 42:25,
63:20, 63:23
KNOWING 4:18,
4:20, 4:25,
5:4, 5:15
KNOWINGLY 9:1
KNOWS 14:15,
16:10, 50:4
KORN/FERRY
29:17, 29:22
KRONSTADT 1:3


< L >
LANDES 2:15
LANGUAGE 26:10,
38:5, 56:18
LAST 7:10
LATER 17:2,
37:24
LAW 4:15, 5:10,
6:17, 25:20,
33:7, 34:4,
39:9, 48:4,
51:14, 53:7,
62:19
LAWYERS 71:5
LEARN 20:17,
70:7, 70:11
LEARNED 37:25,
45:7
LEAST 5:8,
16:11, 22:21,
26:19, 54:4,
57:6, 62:22,

70:20
LEAVE 50:7
LEAVES 16:2,
16:3, 45:12
LEAVING 16:9,
17:14
LECTERN 6:8,
61:8
LEGAL 8:2,
24:13, 24:18,
25:15, 31:18,
41:22, 42:4,
51:14, 51:18,
52:7, 53:11,
54:4, 54:16,
56:9, 61:16,
61:19, 61:20,
67:6
LEGALLY 71:1
LETTER 6:24,
6:25, 50:23,
50:24, 51:6,
61:13
LEVEL 61:14
LEWIS 2:22
LIABILITY 29:22
LIABLE 25:9
LICENSE 34:11,
34:18, 40:16,
40:17, 43:24,
46:7, 46:8,
46:23, 48:25
LICENSES 41:12
LIE 21:15
LIFTING 12:20
LIGHT 8:10,
8:11, 17:20,
32:14, 55:12,
58:9
LIMIT 34:17
LIMITED 33:24,
38:4
LITTLE 9:7,
29:12, 52:8
LITTRELL 2:22,
3:18, 3:19,
6:4, 10:23,
11:1, 11:7,
11:12, 11:20,
19:20, 19:22,

20:7, 20:20,
24:3, 26:23,
27:7, 30:17,
31:2, 31:15,
31:21, 43:12,
45:5, 46:16,
49:14, 50:2,
60:11, 60:12,
70:15, 70:25
LIVE 26:13
LIVING 13:9
LLP 2:15
LOCATED 41:1
LOG 23:11
LOG-IN 23:10,
23:14, 25:18
LONG 65:15,
65:23, 69:22
LOOK 44:13,
64:8, 64:10
LOOKING 34:9
LOOKS 44:9
LOS 1:29, 1:42,
2:7, 2:18, 3:1,
72:3
LOSS 8:11
LOT 35:14
LOTS 40:1
LOWER 34:18


< M >
MAI 2:20, 3:19,
3:27, 5:19,
5:24, 9:19,
9:20, 9:23,
10:1, 10:12,
10:15, 10:19,
10:22, 11:8,
11:10, 11:18,
24:11, 24:22,
25:8, 25:17,
25:25, 27:20,
27:22, 27:23,
28:2, 28:9,
28:14, 30:1,
57:24, 64:17
MAIL 17:14
MAINTAIN 21:23,
71:7

MAINTAINED 71:8
MAJORITY 16:2,
28:19
MANUEL 13:7
MATCH 27:14
MATERIAL 31:13
MATERIALS
38:11, 61:22,
62:6, 62:8,
62:11
MATTER 5:7,
22:19, 25:19,
26:21, 28:13,
34:1, 47:13,
48:13, 50:20,
53:11, 59:25,
60:16, 64:8,
72:20
MATTERS 12:8,
34:4, 50:22,
65:19, 68:16
MEAN 11:1,
30:21, 47:13
MEANING 55:15,
58:5
MEANS 19:14,
68:20
MEASURE 14:19
MEET 60:5
MEMORIAL 8:13
MENTIONED
40:24, 70:16
MERITS 66:1
MESSAGE 16:2,
16:3, 16:9,
16:10
MICRO 28:9,
28:12
MICROWAVE 39:7
MILLER 2:23,
2:29
MILLION 34:16,
40:2
MIND 8:4, 8:7,
8:10
MINDFUL 17:16
MINUTE 18:8,
41:19, 42:14,
65:20
MINUTES 34:19

MISUSED 21:6
MISUSING 23:9
MMIC 35:21,
35:23, 39:8,
39:12, 39:13,
39:14, 40:8,
44:11, 44:13
MODIFIED 16:24
MODIFY 16:17,
17:21
MOMENT 19:7,
48:19
MONDAY 17:23,
18:17
MONDAYS 18:12
MONITORING
12:25, 13:21,
14:15, 17:21,
19:2
MONOLITHIC 39:7
MONTHS 65:18
MORNING 3:12,
3:15, 3:16,
3:18, 39:11,
59:6
MORPH 63:20
MOTION 6:13,
6:23, 19:4,
19:5, 19:10,
19:17, 28:1,
32:1, 32:25,
41:6, 42:20,
52:25, 53:2,
56:17, 59:6,
60:2, 60:9,
61:15, 61:19,
66:8, 67:6,
68:1, 68:6,
68:10, 68:11
MOTIONS 19:4
MOUNT 62:18
MOVE 65:19
MOVING 20:6,
32:13
MS 13:14,
13:15, 13:16,
15:5, 16:8,
18:7, 18:10,
18:24, 19:25,
20:1, 51:1,

51:13, 52:3,
52:23, 53:22,
54:10, 54:24,
55:18, 56:14,
60:14, 60:25,
61:6, 61:10,
62:15, 65:21,
66:2, 66:19,
66:22, 68:12,
68:22, 69:17,
69:20, 70:1,
70:22
MUDDIED 29:11
MUDDY 11:1
MYSTERY 48:9


< N >
NAMED 44:11
NARROW 42:8,
51:15
NATIONAL 63:13,
69:6, 69:8
NECESSARILY
8:3, 47:15
NECESSARY
17:18, 32:16,
35:18, 36:8,
64:23
NEED 11:14,
12:13, 32:6,
32:7, 45:21,
51:22, 56:16,
56:20, 56:24,
65:3, 66:4,
66:8, 69:19
NEEDED 7:11,
55:23, 56:5
NEEDS 4:18,
41:25, 60:8,
60:17, 61:4,
67:8
NEW 13:17,
49:13
NEXT 5:6, 19:3,
68:10, 69:13,
70:11
NICE 41:10
NINTH 21:14,
22:16

NO. 1:39, 3:9,
7:17, 15:5,
15:14, 31:6,
38:16, 45:10,
67:2, 72:35
NON-PUBLIC
60:17
NONE 69:1
NONETHELESS
10:20, 22:16,
62:10
NOR 59:9
NORTH 2:6
NOSAL 21:13,
21:17, 21:22,
21:24, 22:11,
22:22, 22:23,
23:1, 24:20,
24:25, 25:2,
26:8, 26:20,
28:18, 28:20,
28:22, 29:9,
29:18, 30:3
NOTE 14:23,
25:1, 39:6,
45:23
NOTED 71:7
NOTES 6:13
NOTHING 7:12,
14:11, 14:21,
26:25, 65:11,
69:20
NOTICE 22:2
NOTWITHSTANDING
12:12
NUANCES 64:2,
64:5
NUMBER 40:5,
40:6
NUMBERS 40:21,
40:25, 41:3,
42:17, 43:1,
49:23


< O >
O'CLOCK 13:23
OBJECT 4:5,
12:20, 25:13,
25:15, 25:16,

40:11, 44:7,
44:10, 45:18,
64:21, 70:17,
71:2
OBJECTED 7:16
OBJECTION 4:9,
7:21, 18:13,
59:11, 71:7
OBJECTIONS
68:19
OBJECTS 3:24,
11:25
OBLIGATION
15:22
OBLIGATIONS
59:13, 59:16
OBTAINED 21:1,
21:2
OBTAINING 22:5,
24:22
OBVIOUSLY 20:9,
27:10, 54:3,
70:8
OFFERED 51:14
OFFICE 2:5
OFFICER 13:25,
14:2, 14:13,
16:9, 16:19,
17:3, 17:9,
17:17, 17:24,
18:3, 18:5,
18:11, 18:19,
55:2, 56:12
OFFICIAL 1:40,
72:1, 72:8,
72:36
OKAY 4:1, 6:5,
10:13, 13:3,
19:25, 30:15,
31:21, 35:15,
38:17, 39:19,
43:10, 43:15,
54:15, 61:24
ONCE 13:22,
17:14, 63:25,
68:6
ONE 4:7, 8:15,
15:21, 15:22,
17:18, 18:7,
19:4, 21:16,

21:24, 22:3,
22:21, 23:4,
26:17, 28:5,
30:21, 43:4,
45:2, 54:5,
58:18, 62:7,
63:15, 63:17,
68:5, 69:5,
69:10, 70:15
ONE. 51:15,
67:1
ONES 9:13,
42:16, 48:14
ONGOING 33:15
OPEN 31:15,
45:12, 50:7,
50:13
OPPORTUNITY
50:9, 67:20
OPPOSE 15:1
OPPOSING 26:4
OPTION 8:15,
11:2, 64:25
OPTIONS 50:7
ORAL 63:5
ORALLY 67:21
ORDER 11:23,
12:2, 13:2,
14:6, 14:7,
14:17, 23:19,
23:20, 45:22,
55:6, 55:7,
55:9, 55:25,
63:5, 65:3
ORDERED 13:19,
13:20
ORIGINAL 22:17,
22:21, 22:23
OTHERWISE 7:9,
28:11, 31:5,
45:4, 64:13,
64:15
OURSELVES 65:4
OUTCOMES 54:4
OUTSIDER 29:23,
30:2
OUTWEIGHS 63:9
OVERNIGHT 70:2
OVERSEEING
16:19

OVERSIGHT 16:21
OVERT 33:10
OWN 42:18,
44:18


< P >
P.M. 18:17
PAGE 28:8,
72:22
PAGES 40:2
PAPER 6:14
PAPERS 28:7,
34:10
PARAGRAPH 28:7,
30:6
PARSE 35:18
PART 15:23,
28:12, 36:14,
41:23, 43:19,
51:14, 51:18,
60:19, 61:10,
67:8
PARTE 70:17
PARTICIPATED
62:16
PARTICULAR
29:10, 37:12,
42:12, 42:13,
51:8, 61:22
PARTICULARLY
16:12, 17:12,
17:15
PARTICULARS
19:6, 19:18,
32:1, 32:10,
33:1, 33:21,
33:23, 34:2,
34:24, 34:25,
35:17, 37:21,
38:22, 38:23,
41:7, 49:2,
67:18, 68:6
PARTIES 16:23,
18:17, 20:6,
31:13, 32:14,
51:13, 52:5
PARTY 23:14,
29:6, 70:23
PASSED 20:22

PASSING 24:24
PAST 50:21
PAUSE 19:19
PENALIZE 20:23
PENDING 66:7
PEOPLE 20:13,
23:21, 36:10
PER 64:8
PERHAPS 35:25,
49:18, 56:14
PERMISSION 7:8,
24:1, 27:18,
27:19
PERMIT 31:11,
64:12
PERMITTED 66:20
PERSON 16:20,
16:21, 51:17,
52:1, 52:2,
52:13, 52:21,
53:7, 53:10,
53:11, 53:16,
53:19, 54:6,
54:8, 54:19,
54:20, 54:21,
56:6, 56:10,
57:16
PERSONALLY
13:24, 62:16
PERSONNEL 71:4
PERSONS 52:1
PERSPECTIVE
26:2, 26:16
PHONE 12:16,
12:21, 14:14,
15:7, 15:10,
15:16, 16:3,
17:6
PHRASE 55:20
PHRASED 55:4
PIECE 6:14
PIECEMEAL 11:24
PLACE 19:1,
36:10, 60:10
PLACED 13:21,
17:22
PLAIN 26:10
PLAINTIFF 1:9,
2:3
PLAN 11:19

PLAY 38:7
PLC 2:23, 2:29
PLEA 4:23
PLEADING 26:14
PLEASE 3:11,
4:2, 20:19
PLED 24:8,
24:14, 26:14,
26:17, 31:20
PLEDGING 49:16
PLENTY 7:2,
65:6
POINT 20:20,
28:5, 38:18,
41:6, 44:16,
52:25, 63:24,
68:22
POINT. 11:9
POINTS 27:11,
44:1
POLICIES 29:22
POLICY 22:6,
22:9, 22:14,
23:4, 23:12,
23:15, 23:16
POPPED 39:13
POSES 14:9,
14:20
POSITION 4:11,
4:14, 5:3,
5:18, 5:23,
7:12, 13:9,
15:13, 16:19,
28:17, 28:18,
30:20, 32:17,
33:12, 36:13,
45:11, 51:16,
52:10, 53:13,
56:6, 57:22,
58:9, 68:9,
68:13, 68:14
POSITIONS
33:17, 33:18,
58:1
POSITIVE 14:25
POSSIBILITY
31:16, 45:12
POSSIBLE 44:12
POSSIBLY 5:11
POTENTIAL

47:14, 47:16,
54:3, 67:24,
68:16
POTENTIALLY
23:25, 33:17,
68:21
POWER 28:20,
28:25, 29:2,
30:3
PRECLUDED 36:17
PREJUDICE 17:2,
18:2, 33:2,
33:5, 49:1
PREJUDICIAL
32:8
PREMISE 30:16
PREPARATION
48:17
PREPARE 42:8,
45:20
PRESENCE 3:25,
5:11
PRESENT 3:20,
8:6, 9:25,
11:22, 12:1,
12:10, 37:22,
45:17
PRESENTED 5:10,
9:13, 23:25,
30:9, 30:25,
44:3
PRESENTLY 33:22
PRESENTS 52:7
PRESIDING 1:4
PRESUMABLY
48:13
PRETRIAL 7:7,
12:22, 13:7,
13:24, 13:25,
14:2, 14:6,
14:13, 14:14,
16:9, 17:3,
17:9, 17:17,
17:24, 18:3,
18:5, 18:11,
18:12, 18:19
PRETTY 39:5,
51:15
PREVENT 41:7,
65:11

PREVIOUSLY
17:24, 18:18,
67:17
PRIOR 7:24,
10:14, 30:11,
30:12, 36:13,
60:15
PRIVILEGE 8:1
PROBABLY 38:16,
39:2, 70:4
PROBLEM 24:17,
25:13, 44:20,
50:1, 57:17,
60:5
PROBLEMS 39:3
PROCEDURAL 32:5
PROCEDURALLY
58:17
PROCEDURES 65:4
PROCEED 12:11,
54:1, 56:13,
64:20, 68:5,
68:10
PROCEEDING 5:2,
5:14, 9:25,
10:6
PROCEEDINGS
1:27, 5:20,
6:1, 9:3, 9:5,
9:6, 9:9,
19:19, 71:9,
72:18
PROCEEDS 5:5
PROCESS 45:22,
57:10, 58:18,
59:19, 59:23,
60:19, 60:21,
62:3, 65:13,
67:12, 68:9,
68:20, 68:21,
68:23, 69:22
PRODUCED 32:15,
42:16, 48:14,
69:1, 69:2,
69:3
PRODUCIBLE
62:10
PROFFER 58:25,
59:2, 62:17
PROPER 34:2,

66:4
PROPOSED 34:24,
65:1
PROTECT 5:16,
57:9
PROTECTED 62:9
PROTECTING
57:23
PROTECTS 64:16
PROVE 26:3,
41:14, 41:15,
41:21, 41:22,
50:7
PROVED 50:8
PROVIDE 10:9,
19:8, 24:11,
32:8, 32:9,
41:3, 48:23,
49:23, 59:9,
59:10, 62:4,
63:10, 67:24,
68:15
PROVIDED 12:6,
17:1, 18:1,
34:6, 34:12,
63:17, 64:11
PROVIDES 34:6
PROVIDING
62:22, 67:21
PUBLIC 51:6,
55:3, 55:4,
55:25, 56:2
PUBLICLY 55:15,
55:17, 56:8
PUNISH 20:24,
20:25
PURPOSES 28:1
PURSUANT 13:1,
54:5, 58:19,
62:3, 68:20,
72:14
PUT 20:8, 37:5,
43:18, 70:12
PUTTING 55:11,
71:2

< Q >
QUALIFICATION
37:15, 60:15

QUALIFIED 61:3
QUALIFY 33:21
QUESTIONS 34:1,
34:2, 34:7,
35:13, 38:20,
45:3, 60:15,
63:16
QUITE 34:19
QUOTE 55:19

< R >
R. 2:28
RAISED 27:13,
39:8, 58:13,
59:24, 68:19
RANGE 49:15
REACH 21:7,
49:19
READ 20:17,
20:21, 21:19,
34:9
READILY 34:19
READS 24:9
REAL 22:15,
26:6, 41:18,
42:9
REALLY 21:12,
21:24, 24:24,
26:1, 26:14,
26:20, 27:9,
28:12, 28:17,
31:9, 31:17,
34:1, 40:18,
43:18, 46:13,
48:8, 48:9,
50:6, 52:16
REASON 10:2,
10:5, 22:24,
25:21, 48:18
REASONING 21:3
REASONS 4:9
REBRIEFING
50:14
RECEIVED 24:1
RECEIVES 16:10
RECEIVING 68:5,
68:8
RECOGNIZE
20:15, 21:10

RECOGNIZED
28:13
RECOGNIZING
30:5
RECORD 5:16,
5:19, 11:2,
50:3, 70:20,
71:2
REDISCLOSE
66:21
REDUNDANCY
14:18
REDUNDANT 14:14
REFER 35:20
REFERENCE 40:3
REFERRED 35:6,
40:22
REFERRING
35:20, 60:2,
62:5
REFERS 37:1,
43:4, 43:5
REFLECT 49:8,
57:25, 58:10,
67:19
REFRAME 15:18
REFUSAL 42:11
REFUSED 46:19
REGARDING 57:15
REGARDLESS 21:2
REGULATION
39:10, 43:4,
47:22, 47:25
REGULATIONS
40:7, 40:14,
40:20, 41:9,
41:20, 42:1,
42:12, 42:13,
42:18, 42:21,
43:3, 43:6,
43:20, 44:14,
47:2, 47:4,
47:18, 48:5,
48:10, 48:13,
48:15, 48:20,
48:22, 72:24
REINDICT 38:4
REINHARDT 30:21
REINSTATE 17:3
REJECTED 28:19

RELATED 28:13,
34:4, 63:23
RELATES 34:11
RELATION 33:13
RELEVANT 48:20
REMAIN 19:1,
68:7
REMAINS 17:18,
58:14, 58:15
REMEDIES 59:17
REMOVED 17:1
REPORT 49:16,
50:12, 70:12
REPORTED 72:18
REPORTER 1:40,
72:1, 72:10,
72:36
REPORTER'S 1:27
REPRESENTATION
17:13
REPUBLIC 36:11
REQUEST 8:15,
15:10, 15:12,
16:17, 16:18,
17:2, 17:4,
19:5
REQUESTED 34:24
REQUIRE 17:22,
18:4, 48:25,
55:6
REQUIRED 3:28,
5:11, 15:4,
17:6, 33:7,
33:9, 37:21,
40:17, 41:12,
41:13, 43:25,
45:24, 46:7,
46:9, 49:4,
55:16, 59:10,
61:4, 66:3,
71:1
REQUIREMENT
15:22, 17:21
REQUIRES 53:7
RESCHEDULED
8:16
RESCINDED 23:2,
23:6
RESEARCH 61:17
RESENTENCING

6:23
RESERVE 12:10
RESOLVE 58:3,
58:20
RESOLVED 31:1,
50:15, 56:8,
67:17
RESPECT 5:2,
5:6, 5:18, 6:6,
9:3, 9:4, 9:6,
9:8, 10:13,
11:17, 12:23,
16:23, 17:6,
19:9, 27:22,
28:3, 30:10,
31:25, 32:10,
33:8, 33:10,
34:8, 35:5,
36:6, 36:12,
36:20, 36:22,
36:25, 38:19,
38:25, 39:7,
40:21, 41:20,
51:7, 66:6
RESPECTS 34:7
RESPONSE 45:2,
50:24, 51:7,
65:9
RESTATING 49:7
RETAIN 45:21
RETURNED 19:15
REVEAL 66:3
REVIEW 19:21,
30:5, 53:9,
62:6, 65:3,
65:6, 65:7,
68:1, 68:18,
68:24
REVIEWED 20:3,
67:5
REVIEWING 40:25
RIGHTS 4:18,
7:14, 57:10,
57:24, 64:17
RISK 14:8,
14:20, 63:7,
63:9, 63:15
RISKS 14:10
ROADMAP 39:5
ROOM 1:41

RULE 5:9, 68:1,
68:10, 68:25
RULES 42:1,
61:23
RULING 19:9,
20:8, 25:3,
31:4, 31:22,
54:22, 56:2


< S >
SAN 2:26, 2:32
SATISFY 4:22
SAYING 33:22,
41:21, 47:15,
49:2, 55:25,
61:3, 64:8
SAYS 43:20,
47:24
SCHEDULED 8:14
SCHEME 27:25,
38:9
SCOPE 38:15,
46:6, 58:15
SE 64:8
SEAL 53:1
SEARCH 35:5,
35:6, 40:24,
41:1, 42:16,
46:25
SEARCHABLE
34:13
SEARCHED 34:15
SEARCHES 40:2
SEATED 4:2
SECOND 6:18,
63:23, 65:25,
68:8
SECONDARY 56:15
SECRECY 62:12,
63:13
SECTION 61:14,
61:19, 66:8,
67:5, 72:14
SECURITY 55:2,
65:3, 65:22,
66:4, 66:9,
66:15, 66:23,
69:6, 69:8,
69:22

SEEK 38:3
SEEKING 34:3,
36:17
SEEN 40:3, 59:5
SENDING 61:13
SENSE 26:4,
35:14
SENT 50:23
SENTENCING 6:1
SERVER 22:13
SERVERS 24:23
SERVICE 8:13,
29:7
SERVICES 7:8,
12:22, 13:8,
13:25, 14:2,
14:6, 14:13,
14:14, 16:9,
17:3, 17:9,
17:17, 17:24,
18:3, 18:11,
18:19
SESSION 51:3
SET 4:9, 11:22,
12:2, 13:23,
14:4, 14:5,
14:8, 17:24,
18:16, 18:17
SETS 33:11,
49:16
SETTING 60:17
SHARE 10:7
SHIH 1:13,
2:12, 3:10,
3:17, 5:6, 6:7,
7:2, 7:6, 7:14,
7:16, 8:5,
12:15, 13:21,
14:9, 14:12,
14:16, 14:20,
14:23, 15:4,
17:10, 17:25,
23:25, 24:11,
24:24, 25:11,
25:18, 27:19,
28:3, 28:10,
28:15, 38:10,
57:24, 64:17
SHIN 38:10
SHIPMENT 37:19,

40:8, 40:9
SHIPMENTS
37:23, 38:1
SHIPPED 40:11,
41:4
SHOULDN'T
25:22, 50:9,
64:23
SHOW 5:15,
37:16, 42:1
SHOWING 42:21,
56:18, 56:24,
57:15
SHOWS 39:25
SIDE 19:9,
59:24
SIDES 48:19,
49:18
SIGN 6:15,
11:16, 51:8,
51:17, 52:6,
52:12, 52:22,
54:17, 55:16,
56:9, 58:2
SIGNATURES 7:4,
7:5
SIGNED 6:24,
6:25, 7:2,
7:18, 7:20,
10:14, 52:1,
52:13, 52:22,
53:8, 53:10,
53:12, 53:14,
53:16, 53:17,
54:6, 54:7,
54:15, 54:19,
54:22, 55:17,
56:5, 56:10,
56:25
SIGNING 7:24,
9:1, 10:16
SIGNS 5:20
SIMILAR 56:2
SIMPLY 22:5,
55:25
SINGLE 33:10
SITS 50:3
SITTING 47:6
SITUATION
29:19, 29:25

SITUATIONS
29:3, 29:8
SIX. 32:11
SKIFF 65:7,
65:8
SLOT 6:14
SOLE 36:4
SOLELY 36:4
SOLVE 39:2,
49:25
SOMEBODY 21:5,
22:8, 25:5,
28:22, 29:4,
47:8, 52:21
SOMEHOW 28:14
SOMEONE 66:4
SOMETIMES
18:12, 62:20,
62:21, 67:4
SOMEWHAT 20:16
SORRY 8:10,
14:7, 35:22,
55:1, 60:25
SORT 23:9,
26:4, 34:3,
56:2, 58:25
SOUGHT 33:2
SOUNDS 21:20,
46:1
SOUTH 2:16
SPEAKING 4:23,
59:14
SPECIFIC 23:20,
32:22, 34:21,
35:9, 36:13,
40:9, 41:9,
43:6, 43:7,
44:9, 45:6,
45:18, 66:6
SPECIFICALLY
32:24, 37:1
SPECIFICATION
40:10
SPECIFICATIONS
44:13
SPECIFICITY
32:9
SPECIFICS 33:1
SPECIFIED 40:13
SPECIFY 41:12,

49:15
SPECTRUM 21:15,
21:16, 21:17
SPELLED 41:10
SPERTUS 2:13,
2:15
SPOKE 13:7,
17:9
SPRING 2:6
STANDING 39:4
START 4:3,
65:13
STARTED 61:12
STARTING 20:20,
51:5
STATE 3:11,
7:13, 24:15,
72:5
STATED 12:24,
13:8, 24:17,
35:20
STATEMENT 63:6
STATEMENTS
17:8, 44:22
STATES 1:1,
1:4, 3:14,
4:10, 4:11,
4:14, 5:3, 5:5,
5:13, 16:20,
19:11, 33:9,
37:17, 46:19,
49:22, 72:10,
72:16, 72:26
STATUTE 20:23,
21:4, 23:18,
47:9, 47:10,
47:16, 47:24,
55:13, 60:23
STATUTES 22:4,
47:19
STENOGRAPHICALL
Y 72:18
STEP 62:7
STEPPING 28:16
STEPS 43:23
STICKING 33:17
STIPULATE 31:14
STRAY 51:22
STREET 1:41,
2:6

STRETCH 26:6
STUCK 24:8,
54:11
STUDIED 38:13
SUBJECT 43:24,
60:22, 61:22,
65:4
SUBMISSION
12:23
SUBMITTED 6:24,
56:16
SUBPARTS 32:12
SUBSEQUENT
44:23
SUBSTITUTED
35:25
SUFFICIENT
4:13, 4:15,
5:24, 6:2,
24:15, 46:2,
54:20, 56:17,
56:18, 56:24
SUFFICIENTLY
12:9
SUGGEST 44:22
SUGGESTED 65:17
SUITE 2:17,
2:25, 2:31
SUMMARIZING
61:13
SUPPORT 13:18,
56:17, 57:15
SUPPORTING
51:17
SUPPORTS 13:9
SUPPOSE 36:16,
37:9, 53:5,
53:6, 53:8
SURPRISE 41:7
SWATH 21:7
SYSTEM 14:18,
29:24


< T >
T. 1:39, 72:8,
72:33, 72:35
TALKED 57:18,
67:16
TELEPHONE 19:13

TELLS 43:22
TENTATIVE 19:9,
19:12, 20:8,
20:15, 27:11,
30:5, 32:4
TERM 39:8,
56:24
TERMINATED
16:25
TERMS 11:23,
12:15, 18:25,
22:3, 34:17,
39:23, 40:9,
40:10, 42:7,
43:8, 57:23,
59:23, 71:2
TERRITORY 51:22
TESTED 14:24
TESTING 12:19,
16:24, 16:25
TESTS 14:24
THAT. 60:7
THEMSELVES
35:7, 61:18
THEORY 44:24,
46:7
THINKING 52:9
THIRD 23:14,
29:6, 63:23
THOUGH 11:15
THREE 21:9
THRESHOLD 33:25
THURSDAY 1:31,
3:1
TITLE 52:2,
52:13, 54:8,
57:16, 72:14
TODAY 3:26,
5:2, 5:19,
5:24, 7:6,
8:14, 9:2, 9:3,
9:5, 9:6, 9:8,
9:13, 10:14,
10:18, 19:14,
44:23, 45:12,
46:14, 50:3,
69:19
TOGETHER 56:12
TONY 3:19
TOOK 29:14

TOP 19:11
TOUGH 58:21
TRADITIONAL
61:23
TRANSCRIPT
1:27, 72:18,
72:22
TRANSFER 28:14
TRANSSHIPMENT
37:5
TRAVEL 8:12
TREE 44:17
TRIAL 5:25,
24:4, 30:13,
31:1, 31:11,
33:14, 41:7,
41:14, 41:22,
42:8, 45:1,
45:13, 45:20,
46:8, 48:17,
50:8, 62:18
TRIED 60:5
TRUE 31:5,
72:16
TRULY 31:3
TRYING 26:7,
35:16, 50:6
TURI 55:21,
56:3
TURN 10:9
TURNS 21:24,
31:18
TWO 12:18,
14:4, 19:4,
21:24, 22:2,
26:4, 32:6,
36:8, 49:18,
65:17, 66:2,
68:5
TYPE 35:5
TYPED 39:12
TYPICALLY
20:14, 66:22,
67:4


< U >
ULTIMATELY
5:14, 21:20,
30:17, 42:5

UMHOFER 2:15
UNAUTHORIZED
20:24, 20:25,
21:25, 22:1,
22:3, 22:9,
22:10, 24:11,
25:4, 25:9,
29:6, 31:18
UNAVAILABLE
58:16
UNAWARE 57:15
UNCLEAR 52:8
UNDERGONE 14:24
UNDERLYING
40:14, 66:7
UNDERSTAND
3:24, 9:24,
10:4, 10:11,
10:17, 11:11,
11:16, 13:11,
26:11, 30:20,
31:7, 32:3,
32:6, 32:7,
32:25, 34:22,
35:19, 48:6,
48:11, 48:16,
49:12, 50:10,
52:5, 52:6,
58:2, 58:14,
60:24, 63:1,
63:7, 67:13,
68:12, 68:22,
69:9, 69:16,
71:3
UNDERSTANDING
4:13, 15:6,
16:1, 20:22,
56:22
UNDERSTANDS
21:19
UNDERSTOOD 8:5,
11:8, 30:18,
69:17
UNDERTAKE 60:20
UNDISPUTED 31:3
UNITED 1:1,
1:4, 3:14,
4:10, 4:11,
4:14, 5:3, 5:5,
5:13, 33:9,

37:17, 46:19,
49:22, 72:10,
72:14, 72:24
UNLAWFULLY 21:6
UNLESS 66:22
UNLIKELY 66:25
UNQUOTE 55:19
UNUSUAL 9:12
USA 1:7, 3:9
USEFUL 59:23,
68:17
USERS 23:13,
29:1, 29:13,
29:15
USING 18:18,
28:21, 28:25,
29:24


< V >
V. 3:9, 56:3
VARIETY 4:21
VARIOUS 54:2
VAST 16:1
VENTURES 29:2
VIEW 6:6, 8:25,
9:11, 16:15,
16:20, 17:7,
17:11, 17:12,
30:8, 30:10,
30:24, 32:4,
39:24, 62:1,
63:8, 65:25,
68:3
VIEWS 20:15,
20:17, 27:8,
67:23
VIOLATE 23:4,
25:20
VIOLATED 23:14,
40:15, 42:22
VIOLATES 22:8
VIOLATING
23:16, 47:21,
47:24
VIOLATION
22:14, 23:16,
47:9, 47:22
VIOLATIONS 48:5
VOICE 17:14

VOLUME 32:14
VOLUMINOUS
47:19
VOLUNTARILY
9:1, 67:23
VOLUNTARY 4:19,
4:20, 5:1, 5:4,
5:15
VS 1:11


< W >
WAFER 45:18
WAFERS 35:11,
36:9, 44:11,
44:15, 45:14,
45:18, 45:19
WAIVE 11:21
WAIVER 3:17,
3:20, 3:25,
4:5, 4:12,
4:17, 4:25,
5:3, 5:4, 5:7,
5:15, 5:19,
5:21, 5:23,
6:2, 7:18,
7:20, 7:24,
9:1, 9:7, 12:6,
64:22, 68:18
WAIVERS 5:17
WAIVING 12:1,
64:21
WANTED 16:6,
20:16, 20:23,
38:18, 55:3,
55:5, 61:25
WASHINGTON 65:6
WATER 29:12
WEARING 12:24,
13:3
WEBSITE 22:6,
39:15
WEEK 17:23,
18:11, 18:20,
49:20, 50:12,
67:16, 68:3,
70:12
WEEKLY 17:22
WEEKS 59:7
WEIGHTY 12:9

WEST 1:41
WESTERN 1:2
WHETHER 7:4,
8:21, 12:10,
12:16, 16:23,
17:8, 19:13,
23:25, 27:13,
27:16, 27:18,
28:14, 29:20,
31:9, 31:12,
31:13, 38:12,
38:14, 43:23,
45:6, 46:5,
46:6, 48:24,
50:12, 50:14,
51:8, 51:9,
52:17, 53:4,
56:16, 61:21,
63:5, 67:11,
67:20, 68:13,
68:23
WHOM 55:16
WILL 3:27,
9:12, 12:11,
13:14, 17:1,
20:5, 32:18,
37:16, 39:2,
45:1, 58:4,
70:13
WIN 31:19
WINS 24:16
WISH 10:7,
10:8, 14:2
WISHED 8:12
WITHHELD 58:23
WITHIN 16:16,
18:3, 34:19,
38:5, 38:14,
49:20, 68:2
WITHOUT 3:23,
12:11, 17:2,
18:2, 22:20,
26:19, 48:15,
55:16, 58:22
WONDERING 31:9,
34:10
WORD 40:24,
42:16
WORDING 54:25
WORDS 27:16,

52:2, 64:22
WORK 33:6
WORKED 28:23
WORKS 34:4,
67:4, 70:22
WRITING 62:20,
63:10, 67:21
WRITTEN 4:5,
5:21, 20:15,
27:23, 31:22,
63:5


< Y >
YI-CHI 3:10,
3:17, 38:10