UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE JOHN A. KRONSTADT

UNITED STATES DISTRICT JUDGE PRESIDING

- - -

| | | |
|---|---|---|
| USA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | CR18-00050-JAK |
| | ) | |
| SHIH, ET AL., | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, MAY 20, 2019, 1:30 PM

_____

ALEXANDER T. JOKO, CSR NO. 12272
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CA 90012
AJ_CSR@YAHOO.COM

1    **APPEARANCES OF COUNSEL:**

2    FOR PLAINTIFF:      MELANIE ANN HANSON SARTORIS
                         AUSA - OFFICE OF US ATTORNEY
3                        UNITED STATES DISTRICT COURTHOUSE
                         312 NORTH SPRING STREET
4                        12TH FLOOR
                         LOS ANGELES, CA 90012
5

6                        JUDITH A. HEINZ
                         AUSA - OFFICE OF US ATTORNEY
7                        CRIMINAL DIVISION - US COURTHOUSE
                         312 NORTH SPRING STREET
8                        15TH FLOOR
                         LOS ANGELES, CA 90012-4700
9

10                       KHALDOUN SHOBAKI
                         AUSA - OFFICE OF US ATTORNEY
11                       CYBER AND INTELLECTUAL
                         PROPERTY CRIMES SECTION
12                       312 NORTH SPRING STREET
                         SUITE 1500
13                       LOS ANGELES, CA 90012

14
                         JAMES C. HUGHES
15                       AUSA - OFFICE OF US ATTORNEY
                         TAX DIVISION
16                       300 NORTH LOS ANGELES STREET
                         ROOM 7211
17                       LOS ANGELES, CA 90012

18
                         WILLIAM ROLLINS
19                       AUSA - OFFICE OF US ATTORNEY
                         GENERAL CRIMES SECTION
20                       312 NORTH SPRING STREET
                         SUITE 1200
21                       LOS ANGELES, CA 90012

22

23

24

25

1    **APPEARANCES (CONTINUED)**

2

3    FOR DEFENDANT SHIH:

4                        JAMES W. SPERTUS
                         SPERTUS LANDES AND UMHOFER LLP
                         1990 SOUTH BUNDY DRIVE
5                        SUITE 705
                         LOS ANGELES, CA 90025
6

7                        JOHN HANUSZ
                         SPERTUS LANDES AND UMHOFER LLP
8                        1990 SOUTH BUNDY DRIVE
                         SUITE 705
9                        LOS ANGELES, CA 90025

10

                         CHRISTA L. WASSERMAN
11                       SPERTUS LANDES AND UMHOFER LLP
                         1990 SOUTH BUNDY DRIVE
12                       SUITE 705
                         LOS ANGELES, CA 90025
13

14

15

16

17

18

19

20

21

22

23

24

25

1           LOS ANGELES, CALIFORNIA; MONDAY, MAY 20, 2019

2                               1:30 PM

3                            - - - - -

4

5

6           THE COURT:  CR18-00050, USA VERSUS YI-CHI

7    SHIH.

8           MS. HEINZ:  GOOD AFTERNOON, YOUR HONOR.

9    JUDITH HEINZ ON BEHALF OF THE UNITED STATES.

10          MR. ROLLINS:  GOOD AFTERNOON, YOUR HONOR.

11   WILL ROLLINS ON BEHALF OF THE UNITED STATES.

12          MR. SHOBAKI:  GOOD AFTERNOON, YOUR HONOR.

13   KHAL SHOBAKI ON BEHALF OF THE UNITED STATES.

14          MR. HUGHES:  GOOD AFTERNOON, YOUR HONOR.

15   JAMES HUGHES ON BEHALF OF THE UNITED STATES.

16          MS. SARTORIS:  GOOD AFTERNOON, YOUR HONOR.

17   MELANIE SARTORIS ON BEHALF OF THE UNITED STATES.

18          MR. SPERTUS:  GOOD AFTERNOON, YOUR HONOR.

19   JAMES SPERTUS FOR DR. SHIH.

20             THERE'S A WAIVER ON FILE, AND HE'S NOT

21   PRESENT.

22          MS. WASSERMAN:  GOOD AFTERNOON, YOUR HONOR.

23   CHRISTA WASSERMAN ALSO ON BEHALF OF DR. SHIH.

24          MR. HANUSZ:  GOOD AFTERNOON, YOUR HONOR.  JOHN

25   HANUSZ FOR DR. SHIH.

```
1              THE COURT:  GOOD AFTERNOON.

2              JUST A MINUTE.

3              FROM WHAT I'VE SEEN OF YOUR FILINGS, ONE

4    ISSUE IS THE EXHIBITS CONCERNING -- THAT WOULD BE

5    ADMISSIBLE -- ADMITTED BASED ON THE TESTIMONY OF

6    MR. MONROY.

7              THE DISPUTE BEING WHETHER EXCERPTS OF THE

8    EXPORT ADMINISTRATION REGULATIONS CAN BE ADMITTED.  MY

9    VIEW ON THIS IS THE FOLLOWING:

10             EXCERPTS FROM THE E.A.R. MAY BE ADMITTED,

11   PROVIDED, HOWEVER, FIRST, THAT THEY ARE -- THEY PROVIDE

12   SUFFICIENT CONTEXT.  THAT IS TO SAY, THAT THERE'S NOT A

13   REGULATION THAT'S STARTING IN THE MIDDLE OF THE

14   REGULATION AS OPPOSED TO THE BEGINNING OF THAT -- AT

15   LEAST THAT SECTION OF THE REGULATION WHERE, IF THERE'S

16   SOMETHING TO WHICH THERE'S BEEN A REFERENCE, THE

17   COMPLETE LIST IS APPROPRIATE.

18             SECOND, THESE WOULD BE ADMITTED FOR A

19   LIMITED PURPOSE, AND THE JURY WOULD BE SO INSTRUCTED.

20   THAT LIMITED PURPOSE IS, THAT THEY'RE BEING ADMITTED TO

21   FACILITATE THE JURY'S CONSIDERATION AS TO THE NATURE OF

22   THE E.A.R. PROCESS, NOT FOR WHAT THE LAW IS AS STATED

23   IN ANY OF THESE EXHIBITS.

24             THE COURT WILL INSTRUCT YOU ON THE LAW

25   WITH RESPECT TO ANY ISSUES YOU ARE TO ADDRESS,
```

1   INCLUDING AS TO ANY OF THESE EXHIBITS.

2                  THIRD, I WILL REVISIT -- I MAY REVISIT

3   THE ADMISSION BASED UPON A FINAL DETERMINATION OF THE

4   SCOPE OF THE POTENTIAL -- OF THE -- THE CONTENT OF THE

5   JURY INSTRUCTIONS ON THESE -- SOME OF THE EXCEPTIONS.

6                  TO BE CLEAR, I UNDERSTAND THE DEFENDANT'S

7   POSITION IS NOT -- MAY NOT NECESSARILY DEPEND ON

8   WHETHER I AGREE THAT A PARTICULAR EXCEPTION MAY APPLY.

9   BUT I'LL REVIEW THIS IN THE CONTEXT -- I'LL REVIEW THIS

10  AGAIN IN THE CONTEXT TO SEE WHETHER I ADHERE TO THE

11  VIEW THAT THESE CAN BE ADMITTED FOR THAT LIMITED

12  PURPOSE.

13                  IS THERE ANYTHING YOU WANT TO ADD ON THIS

14  ONE?

15          MR. SHOBAKI:  YOUR HONOR, OBVIOUSLY, THE

16  GOVERNMENT DISAGREES WITH THEM BECOMING EXHIBITS FOR

17  THE JURY.

18                  HOWEVER, I ALSO DO RECOGNIZE THAT IT'S

19  WITHIN THE COURT'S DISCRETION TO DO SO AND WOULD ASK

20  THAT THE COURT DO REVISIT THE EXHIBITS WHEN IT MAKES A

21  DETERMINATION ON THE JURY INSTRUCTIONS.

22                  AND, OBVIOUSLY, THE GOVERNMENT HAS

23  ALREADY TOLD THE DEFENSE IT DOESN'T HAVE A PROBLEM WITH

24  THE DEFENSE SHOWING THEM TO MR. MONROY DURING

25  QUESTIONING.

1          MR. SPERTUS:  JUST A MECHANICAL POINT.  THE

2     COURT ACKNOWLEDGED THE COMPLETENESS ISSUE.  AND JUST SO

3     THE RECORD IS CLEAR, RATHER THAN REPLACE THE EXHIBITS

4     THAT HAVE ALREADY BEEN IDENTIFIED, WE'VE CREATED TWO

5     NEW EXHIBITS THAT ARE THE COMPLETE SECTIONS.  WE WILL

6     E-MAIL THEM TO THE GOVERNMENT AND ASSIGN A DIFFERENT

7     EXHIBIT NUMBER.

8          THE COURT:  THANK YOU.

9          THE SECOND ISSUE CONCERNS -- WHICH IS

10    RAISED IN DOCKET 457, TO WHICH THERE WAS JUST A

11    RESPONSE IN DOCKET 462, CONCERNS PROFFERED TESTIMONY BY

12    MR. MATTIS.  I THINK THIS ISSUE DISTILLS TO THE

13    FOLLOWING:

14          TO WHAT EXTENT CAN THE GOVERNMENT SHOW

15    THAT THE -- THOSE ENTITIES ABOUT WHICH MR. MATTIS MIGHT

16    TESTIFY ARE LINKED TO THE DEFENDANT IN SOME MANNER?

17          FOR EXAMPLE, IN THE GOVERNMENT'S

18    OPPOSITION BRIEF ON THIS ONE, DOCKET 462, A RESPONSE,

19    THE GOVERNMENT REFERS TO A PAYMENT OF ABOUT A MILLION

20    DOLLARS, I BELIEVE, TO AN ACCOUNT THAT THE GOVERNMENT

21    SAYS WAS OF AN ACCOUNT OF DEFENDANT.  AND THE

22    GOVERNMENT SAYS THAT -- I BELIEVE IT'S A REFERENCE TO

23    QING'AN INTERNATIONAL TRADING COMPANY, ALSO KNOWN AS

24    "QTC."

25          THEREFORE, THE ISSUE IS, WHETHER THERE'S

1    EVIDENCE THAT LINKS THE DEFENDANT -- THE DEFENDANT'S

2    KNOWLEDGE OF QTC AND THE TRANSFER OF THESE FUNDS TO

3    THIS ACCOUNT.

4              HYPOTHETICALLY, THERE COULD BE MORE THAN

5    ONE PERSON IN CONTROL OF THE ACCOUNT.  MORE THAN ONE

6    PERSON COULD HAVE COMMUNICATED WITH QTC OR THE PERSON

7    THAT CAUSED QTC TO MAKE THIS.  I DON'T HAVE ALL THAT

8    EVIDENCE YET.

9              MY VIEW IS, TO THE EXTENT THAT MR. MATTIS

10   TESTIFIES ABOUT ENTITIES, THEY MUST BE LINKED TO THE

11   DEFENDANT BECAUSE, OTHERWISE, THERE ARE 403 ISSUES

12   HERE.

13             THE ISSUE IN THE CASE IS, AMONG THEM,

14   WHETHER THE DEFENDANT KNOWINGLY, WILLFULLY EXPORTED OR

15   PARTICIPATED IN THE EXPORT OF CERTAIN ITEMS KNOWN --

16   THAT WERE -- FOR WHICH LICENSES WERE REQUIRED AND THERE

17   WAS NO LICENSE.  THAT'S THE ISSUE.

18             I'VE DETERMINED, AND IT WAS IN A RESPONSE

19   TO AN EARLIER MOTION BY THE GOVERNMENT, AND THE

20   DEFENDANT DIDN'T OPPOSE IT, I DON'T THINK, THAT THE

21   DEFENDANT CANNOT USE THESE CRIMINAL PROCEEDINGS TO

22   CHALLENGE A LISTING OF AN ITEM OR AN ENTITY ON THE

23   LISTS.  SO THIS IS NOT ABOUT -- THIS EVIDENCE ISN'T,

24   THEREFORE, I DON'T THINK NECESSARY IN TERMS OF THE

25   REASONS WHY AN ENTITY WAS PLACED ON THE LIST OR A

1    PRODUCT WAS PLACED ON THE LIST.

2              THE ISSUE IS, WHETHER THESE ENTITIES ARE

3    SOMEHOW -- THE EVIDENCE SHOWS OR COULD BE INTERPRETED

4    TO SHOW THAT ONE OR MORE OF THESE ENTITIES IS LINKED TO

5    THE DEFENDANT.

6              SO, MR. ROLLINS?

7         MR. ROLLINS:  YES, YOUR HONOR.

8              TOTALLY UNDERSTAND AND AGREE WITH THE

9    COURT'S CONCERNS.

10             AND IF IT WOULD BE HELPFUL FOR THE COURT,

11   THE GOVERNMENT CAN ACTUALLY FILE A LIST OF THE TRIAL

12   EXHIBITS IN WHICH THE DEFENDANT -- THERE'S E-MAILS

13   INDICATING THAT THE DEFENDANT IS AWARE OF QTC AND AN

14   INDIVIDUAL WHO IS AFFILIATED WITH QTC.

15             AND SO I THINK THAT MIGHT BE HELPFUL FOR

16   THE COURT IN -- BECAUSE I CERTAINLY UNDERSTAND THE

17   COURT'S 403 CONCERNS.

18             INTRODUCING EVIDENCE OF A FRONT COMPANY

19   STATUS IN A VACUUM, IF IT WERE UNTETHERED TO THE

20   EVIDENCE IN THIS CASE, COULD POSE, INDEED, A

21   SIGNIFICANT 403 CONCERN.

22             I THINK THAT WHEN THE COURT SEES THE

23   EVIDENCE THAT WE'RE TALKING ABOUT, THE COURT WILL AGREE

24   THAT THIS IS HIGHLY PROBATIVE TO IDENTIFY THE ACTUAL

25   FRONT COMPANY IN THIS CASE.

7

```
1           THE COURT:  WELL, I DON'T KNOW -- OTHER THAN

2    QTC, WHAT OTHER ENTITIES DO YOU PROPOSE TO HAVE

3    MR. MATTIS IDENTIFY?

4           MR. ROLLINS:  ONE WOULD BE THE 607 INSTITUTE,

5    YOUR HONOR.  AND THAT WAS ALSO MENTIONED IN OUR

6    RESPONSE BRIEF.

7                AND WE CAN ALSO IDENTIFY FOR THE COURT A

8    FEW EXHIBITS -- A FEW TRIAL EXHIBITS IN WHICH THE

9    DEFENDANT ACTUALLY, AGAIN, IS LINKED DIRECTLY TO

10   DOCUMENTS THAT REFERENCE "607."

11          THE COURT:  HAVE YOU DISCUSSED THAT -- THOSE

12   EXHIBITS WITH DEFENSE COUNSEL?

13          MR. ROLLINS:  WE HAVE NOT GIVEN THEM A LIST OF

14   SPECIFIC EXHIBITS YET, BUT WE'RE CERTAINLY HAPPY TO

15   CONFER ON THAT.  AND WE MAY EVEN BE ABLE TO RESOLVE IT.

16          THE COURT:  DO THAT.

17               ALSO, KEEP IN MIND, BECAUSE I THINK I'VE

18   ADDRESSED THIS BEFORE IN THE CONTEXT OF OUR VARIOUS

19   DISCUSSIONS ABOUT NATIONAL SECURITY, NATIONAL

20   INTERESTS, CHINESE MILITARY, A FRONT FOR THE CHINESE

21   MILITARY AND SO ON, THOSE, TO ME, CONTINUE TO RAISE 403

22   ISSUES.

23               AND AS PRESENTED IN THE DEFENDANT'S

24   OBJECTION TODAY, THERE'S REFERENCES TO THOSE TYPES OF

25   ENTITIES BEING IDENTIFIED.
```

```
1              SO, AGAIN, EVEN ASSUMING THAT -- WELL,

2    THAT CONCERN REMAINS A 403 CONCERN, EVEN ASSUMING THAT

3    THERE WERE AN E-MAIL, HYPOTHETICALLY, THAT LINKS THE

4    DEFENDANT TO A PARTICULAR ENTITY.  I DON'T KNOW WHETHER

5    IT'S GOING -- WHETHER, ON THE 403 GROUNDS, THE

6    TESTIMONY THAT THAT ENTITY IS -- DOES WORK WITH THE

7    CHINESE MILITARY IN ORDER TO ADVANCE ITS AGENDA WOULD

8    BE APPROPRIATE.

9              MR. ROLLINS:  AND I DO VERY MUCH APPRECIATE

10   THE COURT'S 403 CONCERNS ON THAT FRONT, YOUR HONOR.

11             MY ONLY, SORT OF, WRINKLE OR CHANGE IN

12   THE COURT'S ORIGINAL VIEW ON THIS POINT THAT MIGHT BE

13   WORTH RECONSIDERING ARE THE ARGUMENTS AND THE LINE OF

14   CROSS-EXAMINATION THAT DEFENDANT HAS MADE SINCE THIS

15   CASE BEGAN, AS WELL AS THE NEW INSTRUCTION THAT THE

16   COURT FINALIZED WITH RESPECT TO WILLFULNESS.

17             SO THOSE TWO THINGS -- WHEN THE COURT

18   PREVIOUSLY INDICATED 403 CONCERNS ON THOSE

19   AFFILIATIONS, THOSE TWO THINGS HAVE CHANGED SINCE THE

20   COURT'S ORIGINAL THINKING.

21             AND FROM THE GOVERNMENT'S PERSPECTIVE,

22   THE FACT THAT THE DEFENDANT HAS NOW ARGUED, IN OPEN

23   COURT IN OPENING, THROUGH CROSS-EXAMINATION OF

24   GOVERNMENT WITNESSES, THAT HE WAS ENGAGED PURELY IN

25   SCIENTIFIC AND ACADEMIC RESEARCH, THE IDENTITY OR THE
```

```
1    AFFILIATION OF THOSE ENTITIES WITH THE PRC'S MILITARY

2    GROUPS HAS BEEN BECOME PLACED DIRECTLY IN ISSUE BY THE

3    DEFENSE.

4               AND SO, AT A BARE MINIMUM, IT'S NOW

5    NECESSARY, IN THE GOVERNMENT'S VIEW, TO REBUT THOSE

6    ARGUMENTS WITH EVIDENCE OF THE SOURCE OF A

7    MILLION-DOLLAR PAYMENT, FOR EXAMPLE, INTO DEFENDANT'S

8    ACCOUNT.

9          THE COURT:  OKAY.  WELL, I UNDERSTAND.

10              MR. SPERTUS?

11         MR. SPERTUS:  YOUR HONOR, I HAVE THREE

12   DISTINCT POINTS TO MAKE.

13              FIRST OF ALL, WHEN THE COURT SAID THAT

14   THERE SHOULD BE A LINK BETWEEN THESE ENTITIES AND

15   DR. SHIH, I JUST WANT TO CLARIFY WHAT THE GOVERNMENT'S

16   CHALLENGE NOW WILL BE.  IT'S EVIDENCE THAT DR. SHIH IS

17   AWARE OF WHAT'S GOING ON BEHIND THE SCENES, AS ARGUED

18   BY THE GOVERNMENT, NOT THAT HE'S AWARE OF THE ENTITIES.

19              FOR EXAMPLE, THE BANK RECORDS ESTABLISH A

20   LINK BETWEEN DR. SHIH AND QTC; BUT THIS EXPERT

21   TESTIMONY IS GOING TO BE TRYING TO SHOW THAT QTC IS BAD

22   FOR REASONS UNKNOWN TO DR. SHIH.

23              AND WHEN THE COURT IDENTIFIED A LINKING

24   REQUIREMENT, I JUST WANT TO CRYSTALLIZE WHAT THE LINK

25   NEEDS TO BE.
```

1          THE COURT:  GO AHEAD.

2          MR. SPERTUS:  THE SECOND THING WHICH IS, I

3    THINK, MORE OF A THRESHOLD ISSUE IS THAT, WE LEARNED,

4    FOR THE VERY FIRST TIME, WHAT THE OPINIONS OF MATTIS

5    WOULD BE, AS LISTED ON PAGE 2 OF THE BRIEF WE FILED

6    TODAY, FRIDAY EVENING.

7               AND SO THE GOVERNMENT HAS REPEATEDLY SAID

8    THAT THEIR EXPERT DISCLOSURE ON MATTIS HAPPENED ON

9    MARCH 14TH.  WE HAVE ATTACHED THE TWO DISCLOSURES AS

10   EXHIBITS A AND B.

11              IN EXHIBIT A, WE HAD NO IDEA WHAT THE

12   OPINIONS WOULD BE.  AND WE FILED THREE BRIEFS

13   ADDRESSING THAT UNCERTAINTY.

14              THEN FRIDAY NIGHT, WE'RE TOLD WHAT THE

15   OPINIONS WILL BE, BUT WITHOUT THE BASIS FOR THOSE

16   OPINIONS.  SO WE COULDN'T TEST THEM OVER THE WEEKEND.

17              AND THEN TODAY IN THE BRIEF FOR THE VERY

18   FIRST TIME, THE GOVERNMENT SAYS THAT THIS -- THESE

19   OPINIONS COME FROM OPEN SOURCE MATERIAL THAT IS NOT

20   CLASSIFIED MATERIAL, BECAUSE WE WERE CONCERNED IN OUR

21   BRIEF, WE SAID THERE'S A FOURTH BASIS FOR EXCLUSION

22   THAT MATTIS IS A CIA AGENT.  AND WE DIDN'T WANT ANY

23   SECTION 8 OBJECTIONS TO BE MADE TO CROSS.

24              BUT IF IT'S ALL OPEN SOURCE MATERIAL,

25   THAT'S THE BASES FOR THE OPINIONS THAT WE'RE ENTITLED

1    TO RECEIVE AS A RULE 16 DISCLOSURE.

2              SO I SUBMIT IT'S A VERY SINCERE THRESHOLD

3    REQUIREMENT UNDER RULE 16 THAT WE GET THE OPINIONS AND

4    THE BASES FOR THE OPINIONS FAR ENOUGH IN ADVANCE OF

5    TRIAL SO THAT WE CAN TEST IT.

6              WE DIDN'T GET THE OPINIONS UNTIL FRIDAY,

7    AND STILL DON'T HAVE THE BASES.  AND I WOULD ASK THAT

8    THE COURT JUST EXCLUDE THE WITNESS ON THAT BASIS.

9    WE'RE IN THE MIDDLE OF TRIAL NOW.  IT'S NOT TIMELY.

10             SO THE LINK -- THE RULE 16 VIOLATIONS ARE

11   THE PARAMOUNT ONES.

12             AND THEN SEPARATELY, THE RELEVANCE.  TO

13   THIS DAY, SINCERELY, AS I STAND AT THE LECTERN, I HAVE

14   NO IDEA WHAT THE RELEVANCE WOULD BE IF THERE'S AN

15   INVESTOR IN A COMPANY LIKE QTC, FOR EXAMPLE, THAT IS

16   FUNDING RESEARCH FOR DR. SHIH, AND THE GOVERNMENT WANTS

17   TO SAY, THERE'S SOMEONE CONNECTED TO THE MILITARY

18   WORKING AT THAT COMPANY, HOW IS THAT RELEVANT TO WHAT

19   DR. SHIH DID?

20        THE COURT:  THANK YOU, MR. SPERTUS.

21             MR. ROLLINS?

22        MR. ROLLINS:  JUST A BRIEF RESPONSE, YOUR

23   HONOR.

24             WE CERTAINLY THINK THE DEFENSE IS

25   ENTITLED TO ARGUE THAT THE DEFENDANT NEVER KNEW WHAT

12

1    THESE COMPANIES DID.  THAT'S CERTAINLY WITHIN THE REALM

2    OF THEIR DEFENSE.

3                    JUST OFF THE CUFF, SOME OF THE ITEMS THAT

4    I THINK CAN LINK THE DEFENDANT AND PROVE THAT THE

5    DEFENDANT DID KNOW WHAT THESE ENTITIES WERE UP TO,

6    TESTIMONY FROM WITNESSES THAT DENG JIERU WAS AFFILIATED

7    WITH THE CHINESE MILITARY OR HER FATHER WAS AFFILIATED

8    WITH THE CHINESE MILITARY.  AND THEN IN CONJUNCTION

9    WITH E-MAILS FROM DENG JIERU TO THE DEFENDANT

10   INDICATING THAT SHE WAS AFFILIATED WITH QTC.

11                   AND SO I THINK THAT -- AND, IN FACT, IN

12   HER SIGNATURE BLOCK IN HER E-MAIL.

13                   SO THOSE TWO FACTS ALONE WOULD BE ENOUGH

14   FOR THE JURY TO BE ENTITLED TO WEIGH AND EVALUATE THAT

15   EVIDENCE.

16                   AND THEN MR. MATTIS' TESTIMONY, OF

17   COURSE, IS ALSO HIGHLY, HIGHLY RELEVANT TO DEFENDANT'S

18   MOTIVE AND STATE OF MIND WHEN HE'S GETTING THESE

19   E-MAILS BACK AND FORTH AND ARGUING THAT HE DIDN'T KNOW

20   HE NEEDED TO DECLARE THE INCOME ON HIS TAXES, FOR

21   EXAMPLE, BECAUSE HE BELIEVED THAT THE MILLION DOLLARS

22   FROM QTC WAS PURELY FOR RESEARCH PURPOSES.

23                   THE COURT:  WHAT ABOUT THE DISCLOSURE ISSUE

24   CONCERNING THE OPEN SOURCE MATERIALS THAT COULD FORM

25   THE BASIS FOR THESE OPINIONS?

1          MR. ROLLINS:  I'M GOING TO LET MY COLLEAGUE,

2     MR. SHOBAKI, ADDRESS THAT, WITH THE COURT'S PERMISSION.

3          MR. SHOBAKI:  SURE, YOUR HONOR.

4          WITH RESPECT TO OPEN SOURCE MATERIALS,

5     THAT'S THE ENTIRE WORLD OF KNOWLEDGE.  MR. MATTIS IS A

6     RESEARCHER WHO RESEARCHES CHINA.  IT'S HIS AREA OF

7     SPECIALIZATION.  SO HE COULD READ CHINESE LANGUAGE

8     NEWSPAPERS.  HE COULD READ WEBSITES.

9          THE ENTIRE BODY OF WHAT THE EXPERT RELIES

10    ON IN -- ESPECIALLY AN EXPERT LIKE THIS IN FORMULATING

11    THEIR VIEWS ABOUT THE IDENTITIES OF SPECIFIC ENTITIES

12    AND THEIR ROLES IN CHINA, THAT'S -- THAT ALL DOESN'T

13    HAVE TO BE DISCLOSED IN SOME KIND OF GIANT DUMP OF

14    DOCUMENTS.

15         TO THE EXTENT THAT THERE'S A QUESTION

16    ABOUT WHAT BASIS HE HAS FOR BELIEVING X, Y AND Z,

17    THAT'S SOMETHING THAT CAN BE ADDRESSED IN QUESTIONING.

18         THE COURT:  IF THE DOCUMENTS ARE OPEN --

19    PUBLICLY-AVAILABLE DOCUMENTS, AND THEY FORM THE BASIS

20    FOR HIS OPINION, WHY ISN'T THEIR DISCLOSURE -- WHY

21    WASN'T THEIR DISCLOSURE REQUIRED PRIOR TO NOW SO THAT

22    THE DEFENDANT'S COUNSEL COULD EXAMINE THOSE DOCUMENTS

23    TO SEE WHETHER THERE WAS A BASIS TO CROSS-EXAMINE, FOR

24    EXAMPLE, AS TO THE OPINION THAT'S PREMISED ON THE

25    DOCUMENTS?

14

```
 1          MR. SHOBAKI:  YOUR HONOR, I DON'T BELIEVE RULE

 2   16 REQUIRES THAT EVERY DOCUMENT THAT AN EXPERT

 3   CONSIDERS IN FORMING THEIR OPINION NEEDS TO BE

 4   PRODUCED, IF THEY'RE PUBLICLY-AVAILABLE DOCUMENTS.

 5          THE COURT:  WELL, DID HIS OPINION STATE --

 6   WHEN YOU DISCLOSED HIM, DID YOU STATE THAT HIS OPINION

 7   WOULD BE BASED ON PUBLICLY-AVAILABLE DOCUMENTS?

 8          MR. SHOBAKI:  EXACTLY WHAT IT SAYS IN OUR

 9   INITIAL DISCLOSURE ON MARCH 14TH, AMONGST OTHER THINGS,

10   HIS EXPERIENCE, ET CETERA, PLUS ACADEMIC LITERATURE AND

11   OPEN SOURCE MATERIALS.

12          AGAIN, IN THE APRIL 11, 2019

13   SUPPLEMENTAL, THERE'S A -- THE COURT HAD REQUIRED A

14   FILING AT SOME POINT.  WE SPECIFICALLY DISCLOSED THAT

15   HIS -- BASED ON HIS KNOWLEDGE OF THE VARIOUS PRC

16   ENTITIES NAMED IN THE INDICTMENT AND HIS REVIEW OF OPEN

17   SOURCE CHINESE AND ENGLISH LANGUAGE DOCUMENTS.

18          THE COURT:  HAVE YOU DISCLOSED, YET, THE OPEN

19   SOURCE DOCUMENTS ON WHICH HIS OPINION IS BASED?

20          MR. SHOBAKI:  NO.

21          I DON'T ACTUALLY POSSESS THOSE

22   DOCUMENTS -- OR THE GOVERNMENT DOESN'T POSSESS THOSE

23   DOCUMENTS, YOUR HONOR.

24          THE COURT:  WELL, HOW IS HE -- HOW CAN HE

25   EFFECTIVELY BE CROSS-EXAMINED FOR THE OPINIONS THAT ARE
```

15

```
1    BASED ON DOCUMENTS WHEN THE DOCUMENTS AREN'T AVAILABLE?

2              MR. SHOBAKI:  WELL, I'LL GIVE YOU AN EXAMPLE,

3    YOUR HONOR.  THERE'S -- WELL, FIRST OF ALL, JUST WITH

4    RESPECT TO SOME OF THE CASES WE CITED, THERE ARE MANY

5    INSTANCES WHERE PEOPLE ARE RESEARCHERS, FOR EXAMPLE,

6    YOU SEE IN SOME OF THE TERRORISM CASES WHO HAVE

7    RESEARCHED AL QAEDA THROUGH READING ON THE WEB,

8    EXTENSIVELY FROM READING THEIR PROPAGANDA MATERIALS.

9    THOSE PROPAGANDA MATERIALS AND ALL OF THE THINGS THAT

10   INFORM THE KNOWLEDGE OF AN EXPERT OF THAT SORT ARE NOT

11   SOMETHING THAT'S PRODUCED IN DISCOVERY.  IT'S JUST --

12   IT'S WHAT INFORMS THEM AS A PERSON IN TERMS OF BEING A

13   SCHOLAR.

14              SO IT'S A LITTLE BIT DIFFERENT, FOR

15   EXAMPLE, FROM A TEST REPORT THAT A SCIENTIFIC EXPERT IS

16   WORKING ON WHERE YOU HAVE RESULTS AND NUMBERS AND

17   THINGS THAT IT'S BASED ON.

18              SO FROM THAT STANDPOINT, I BELIEVE

19   THERE'S JUST A FUNDAMENTAL DIFFERENCE IN THE MATERIALS

20   RELIED UPON SUCH THAT IT'S NOT A BODY OF MATERIALS THAT

21   EASILY DISTILL TO, YOU KNOW, A SET OF DOCUMENTS.

22              THE COURT:  BRIEFLY, MR. SPERTUS.

23              MR. SPERTUS:  YOUR HONOR, THE EXPERT THAT

24   COUNSEL WAS JUST REFERRING TO IN SOME TERRORISM CASE

25   WAS SUBJECT TO A SIGNIFICANT DAUBERT HEARING.  AND MOST
```

1    OF HIS EXPERT TESTIMONY WAS EXCLUDED.

2              WE DIDN'T GET THE OPINIONS UNTIL FRIDAY

3    NIGHT.  SO WE COULDN'T EVEN MOVE FOR A DAUBERT HEARING

4    ON THIS EXPERT.

5              IT'S THE LATENESS OF THE DISCLOSURES THAT

6    IS CAUSING SO MUCH DIFFICULTY.  WE'VE NEVER FOUND A

7    CASE WHERE THE OPINION DISCLOSURE IS DONE IN THE MIDDLE

8    OF TRIAL.

9              THE COURT:  MY VIEW ON THIS AT THE MOMENT IS

10   THE FOLLOWING:

11             FIRST, WITH RESPECT TO THE LINKS, I'M NOT

12   PERSUADED -- I THINK THAT IT'S NOT NECESSARY THAT THE

13   EVIDENCE SHOW THAT DR. SHIH -- THE DEFENDANT,

14   DR. SHIH, KNOW EVERYTHING ABOUT THE OTHER ENTITY.

15   THERE JUST HAS TO BE SUFFICIENT EVIDENCE FROM WHICH A

16   FACTFINDER CAN REACH THAT CONCLUSION, THAT HE KNOWS A

17   SUFFICIENT AMOUNT ABOUT THE ENTITIES.  SO I DON'T --

18   JUST ANY MENTION OF THE ENTITY WOULDN'T NECESSARILY BE

19   ENOUGH.  IT DEPENDS ON WHAT THE STATEMENT IS.

20             WITH RESPECT TO DISCLOSURE OF THE

21   OPINIONS, I'M NOT -- THAT IS NOT OF GREAT CONCERN TO ME

22   INASMUCH AS THE ENTITY -- THE RELATIVELY SMALL NUMBER

23   OF ENTITIES AT ISSUE HERE HAVE BEEN LONG WELL KNOWN TO

24   BOTH SIDES.

25             BUT I AM CONCERNED ABOUT THE ISSUE OF THE

1  BASIS FOR THE OPINION.  AND I'M NOT -- MY POINT ISN'T

2  THAT ALL MATERIALS WITH WHICH HE'S FAMILIAR WOULD HAVE

3  TO BE PRODUCED.  BUT I DON'T FIND IT VERY COMPELLING

4  THAT NONE WAS PRODUCED, BECAUSE THEN I DON'T -- OTHER

5  THAN ASKING GENERIC QUESTIONS ABOUT, "WHAT DID YOU

6  REVIEW," I DON'T QUITE SEE HOW HE CAN BE CROSS-EXAMINED

7  AS TO WHETHER HIS OPINIONS ARE RELIABLY SUPPORTED BY

8  THE DOCUMENTS HE REVIEWED.

9            SO WHAT I MIGHT HAVE TO DO -- IS THERE

10  ANYTHING NEW ON THIS, MR. SPERTUS -- MR. SHOBAKI?

11            MR. SHOBAKI:  NO.

12            THE ONLY THING THAT I WOULD JUST NOTE

13  FROM A SCHEDULING STANDPOINT, THE REASON WE PUT HIM

14  INTO NEXT WEEK, THAT'S THE ONLY TIME HE'S AVAILABLE.

15  I'M SORRY, NEXT WEEK.  THE WEEKS ARE BLENDING TOGETHER,

16  YOUR HONOR.  TOMORROW, THAT'S WHEN HE'S AVAILABLE.  SO

17  WE JUST ASK THAT WHATEVER IT IS THAT THE COURT DECIDES,

18  THAT WE DO IT EXPEDITIOUSLY.

19            THE COURT:  WELL --

20            MR. ROLLINS:  MAY WE HAVE A MOMENT TO CONFER

21  AMONGST OURSELVES, YOUR HONOR?

22            THE COURT:  YES.

23            **(PAUSE IN THE PROCEEDINGS)**

24            MR. SHOBAKI:  YOUR HONOR, WE WOULD BE FINE

25  WITH HAVING A FOUNDATIONAL HEARING TO MAKE A

18

1    DETERMINATION ABOUT WHETHER THERE'S -- WHAT THE BASIS

2    FOR HIS OPINIONS ARE.

3            MR. SPERTUS:  MR. HANUSZ WILL ADDRESS THE

4    POINTS.

5            THE COURT:  BRIEFLY.  I DON'T HAVE ALL

6    AFTERNOON TO DO THIS.

7            MR. HANUSZ:  I UNDERSTAND, YOUR HONOR.

8               THIS ISSUE HAS COME UP NUMEROUS TIMES IN

9    TERRORISM CASES.  COURTS HAVE REPEATEDLY FOUND THIS

10   SORT OF TESTIMONY, WHICH IS UNTESTABLE, PROBLEMATIC.

11   AND I WOULD DIRECT THE COURT TO THE KAMIR (PHONETIC)

12   CASE.  I CAN CITE SOME BRIEFING IN THERE.

13              BUT I GUESS WHAT I'M SAYING IS, THEIR

14   EXPERT CAN READ A NEWSPAPER AND THEN REGURGITATE WHAT

15   THE NEWSPAPER SAYS.  IT BECOMES A HEARSAY FUNNEL.  AND

16   IT'S COMPLETELY UNTESTED.

17           THE COURT:  IF I KNEW WHAT THE -- IF I HAD

18   THE -- IF THE DEFENSE HAD BEEN PROVIDED WITH THE

19   FIVE -- HYPOTHETICALLY, FIVE DOCUMENTS -- THE FIVE

20   NEWSPAPER ARTICLES, HYPOTHETICALLY, ON WHICH AN OPINION

21   IS BASED, I WOULD FIND THAT LESS PROBLEMATIC.  IT'S NOT

22   ABOUT HEARSAY.  IT'S ABOUT BEING ABLE TO CROSS-EXAMINE

23   THE WITNESS ON HIS OPINION BASED ON WHAT'S BEEN

24   PRODUCED.

25              NOW, AS I'VE ALREADY STATED, THE CONCERN

19

1    THAT I HAVE IS THAT NOTHING HAS BEEN PRODUCED THAT

2    WOULD -- IS THE BASIS FOR HIS OPINION THAT WOULD PERMIT

3    A CROSS-EXAMINATION.

4                    CORRECT?

5          MR. SHOBAKI:  YOUR HONOR, OTHER THAN AN

6    18-PAGE C.V. WITH AN EXTENSIVE LIST OF PUBLICATIONS ON

7    CHINA AND CHINA'S MILITARY, THE VARIOUS EFFORTS OF

8    CHINA TO ACQUIRE TECHNOLOGY, ET CETERA.

9          THE COURT:  WELL --

10          MR. HANUSZ:  YOUR HONOR, WE'VE BEEN ASKING FOR

11   THOSE MATERIALS SINCE MARCH.  THE GOVERNMENT HAS

12   REPEATEDLY COME BACK WITH, OUR DISCLOSURES ARE

13   SUFFICIENT.  AND HERE WE ARE IN THE MIDDLE OF TRIAL.

14          THE COURT:  WHEN WILL HE BE CALLED TOMORROW?

15          MR. SHOBAKI:  WHENEVER MR. MONROY IS DONE, WAS

16   THE PLAN.

17          THE COURT:  WELL, THE CROSS OF MR. MONROY IS

18   FINISHED?

19          MR. SPERTUS:  BASICALLY, YES, WITH THE

20   ADMISSION OF A LIST OF EXHIBITS, IT'S DONE.

21          MR. SHOBAKI:  YEAH, YOUR HONOR, WE CAN BE

22   FLEXIBLE IN TERMS OF SCHEDULING.  BUT WE DON'T -- IF

23   HE'S GOING TO TESTIFY, IT WOULD NEED TO BE TOMORROW AT

24   SOME POINT.

25                    UNLESS THE TRIAL GOES VERY, VERY LONG,

```
 1    WHICH HOPEFULLY IT DOESN'T.
 2              THE COURT:  HE'S AVAILABLE ALL DAY TOMORROW;
 3    IS THAT RIGHT?
 4              MR. SHOBAKI:  YES, YOUR HONOR.
 5              THE COURT:  OKAY.  WELL, I'LL SEE -- I HAVE TO
 6    SEE HOW THIS PLAYS OUT WITH WHAT ELSE WE'RE DOING.
 7              I MAY HAVE A BRIEF HEARING OUTSIDE THE
 8    PRESENCE OF THE JURY WHERE HE COULD -- WHERE I COULD --
 9    I GET A MORE COMPLETE UNDERSTANDING OF THE BASIS UPON
10    WHICH HE HAS HIS -- ON WHICH -- THE BASIS FOR HIS
11    OPINIONS.  AND THEN I CAN BETTER EVALUATE WHETHER THE
12    ABSENCE OF THE PRODUCTION OF THE BASIS -- THE ACTUAL
13    DOCUMENTS ON WHICH HE'S RELYING TO THE DEFENDANT IS
14    SUFFICIENT -- IS A SUFFICIENT BASIS TO EXCLUDE HIS
15    OPINIONS.
16              SO I'LL DO WHAT I CAN TO GET THAT FIT
17    IN WITHOUT -- I DON'T WANT THE JURY TO BE KEPT WAITING
18    LONG, SO IT'LL BE A SHORT PROCESS.  SO I'LL DEFER ON
19    THAT, BUT IF THERE'S -- IF THERE'S SUFFICIENT TIME,
20    THEN I WILL DO THAT, SUBJECT, AGAIN, TO THE -- ASSUMING
21    THAT I DON'T -- ASSUMING THAT THERE'S SUFFICIENT
22    DISCLOSURE OR THAT WHAT HAS BEEN DISCLOSED ISN'T --
23    DOESN'T UNDULY PREJUDICE THE DEFENDANT'S ABILITY TO
24    CROSS-EXAMINE, THEN I WOULD STILL REQUIRE THOSE
25    LINKS -- THE EVIDENTIARY LINKS.
```

```
 1              I THINK THE NEXT ISSUES ARE ABOUT

 2     EXHIBITS; IS THAT RIGHT?

 3              MR. HANUSZ:  YES, YOUR HONOR.

 4              THE COURT:  AND THE DEFENSE HAS OBJECTIONS TO

 5     VARIOUS EXHIBITS FOR CERTAIN WITNESSES.

 6                   AND THE GOVERNMENT HAS EXHIBIT DISPUTES

 7     AS WELL?

 8              MR. HANUSZ:  YES, YOUR HONOR.

 9              IF I CAN ORIENT THE COURT.  WE DID -- THE

10     DEFENSE DID ITS BEST TO TRY TO DETERMINE WHICH EXHIBITS

11     CORRESPOND TO WHICH GOVERNMENT'S WITNESSES.  THE

12     GOVERNMENT HAS NOT GIVEN US ANY INFORMATION REGARDING

13     THAT.  SO WE FOCUSED OUR FILING ON THE EXHIBITS -- OR

14     THE WITNESSES THAT THE GOVERNMENT IDENTIFIED WOULD

15     TESTIFY TOMORROW.  WE THEN DID OUR BEST TO FIGURE OUT

16     WHICH DOCUMENTS WENT -- WHICH EXHIBITS WENT WITH THOSE

17     WITNESSES.

18              WE HAVE -- WE HAD A SIGNIFICANT AMOUNT OF

19     OBJECTIONS INITIALLY.  WE HAVE WITHDRAWN MOST OF THEM.

20              SO WHAT THE COURT SAW IN DOCUMENT 458 IS

21     A PARED DOWN -- A LOT OF OBJECTIONS HAD BEEN -- WE HAVE

22     REMOVED A LOT OF OBJECTIONS AND WERE LIMITED TO THESE

23     DOCUMENTS, ASSUMING THAT THEY'RE ACTUALLY THE ONES THAT

24     CORRESPOND WITH THE WITNESSES.

25              NOW, CERTAINLY, WITH MR. MATTIS, THE
```

1    GOVERNMENT HAS NOT PROVIDED ANY DISCLOSURE.  SO WE HAVE

2    NOT BEEN ABLE TO PROVIDE ANY EXHIBITS THAT WOULD

3    CORRESPOND WITH MR. MATTIS.

4              THE COURT:  OKAY.

5              MR. SHOBAKI:  I JUST REPRESENT TO THE COURT

6    THAT THERE ARE NO EXHIBITS THAT WOULD BE USED WITH

7    MR. MATTIS.

8              THE COURT:  ALL RIGHT.  ARE THE EXHIBITS --

9    WELL, THEN THERE ARE FOUR WITNESSES HERE, MS. ROBINSON,

10   MR. WESTBY, MR. PASCO (PHONETIC) AND MS. MILLER?

11             MR. HANUSZ:  YES, YOUR HONOR.

12             THE COURT:  DOES THE GOVERNMENT PLAN TO CALL

13   ANY OF THOSE FOUR TOMORROW?

14             MS. SARTORIS:  YES, ALL FOUR DEPENDING ON

15   TIME.

16              I WOULD LIKE TO JUST ADD THAT, THE

17   GOVERNMENT DID EXACTLY IDENTIFY TO DEFENSE WHICH

18   EXHIBITS SPECIAL AGENT MILLER WOULD BE TESTIFYING TO.

19   AND WE'VE MET AND CONFERRED ON THEM.  SO IT'S NOT A

20   VACUUM.

21              WITH RESPECT TO MS. ROBINSON, THE

22   GOVERNMENT PROVIDED EXPERT DISCLOSURES WHICH IDENTIFY,

23   BY BATES NUMBERS, EXACTLY WHICH DOCUMENTS SHE WOULD BE

24   TALKING ABOUT.  AND SO THOSE WERE CORRECTLY IDENTIFIED

25   BY DEFENSE COUNSEL.

23

1          AND THEN WITH RESPECT TO MR. PASCO, HE

2     WAS THE CUSTODIAN OF RECORD ON CERTAIN HONEYWELL

3     DOCUMENTS.  AND THAT WAS -- A LETTER WAS SENT TO

4     DEFENSE COUNSEL ABOUT THAT LAST WEEK AS WELL.

5          SO I DON'T THINK IT'S REALLY THE DEFENSE

6     COUNSEL HAD TO DO THIS IN A VACUUM.

7          THE COURT:  THAT'S FINE.

8          SO DID THE PARTIES AGREE THAT THE

9     EXHIBITS IDENTIFIED IN THE DEFENDANT'S FILING, DOCKET

10    461, ARE STILL THE ONES AT ISSUE?

11         MR. HANUSZ:  I BELIEVE IT'S 458, YOUR HONOR.

12         THE COURT:  EXCUSE ME.  THANK YOU.

13         MR. HANUSZ:  THE GOVERNMENT IDENTIFIED --

14         THE COURT:  YOU'RE RIGHT.  JUST A MINUTE.

15         DO YOU AGREE WITH THAT, THESE ARE THE

16    ONES AT ISSUE?

17         MS. SARTORIS:  YES, YOUR HONOR.  THE ONES ON

18    458.

19         THE COURT:  THANK YOU.

20         MS. SARTORIS:  THE GOVERNMENT ALSO FILED A

21    SUPPLEMENT WHICH IDENTIFIED ADDITIONAL EXHIBITS.

22         THE COURT:  DOCKET 461?

23         MS. SARTORIS:  YES, YOUR HONOR.

24         THE COURT:  OKAY.  JUST A MINUTE.

25         WITH RESPECT TO EXHIBIT 1653, 1654 AND

24

```
1    1655, THESE ALL APPEAR TO BE OFFICIAL UNITED STATES

2    RECORDS ABOUT EITHER VISA APPLICATIONS OR OTHER SIMILAR

3    INFORMATION AS TO SEVERAL PERSONS.

4                 DO YOU AGREE WITH THAT, MR. HANUSZ?

5             MR. HANUSZ:  AGREE.

6                 I WOULD ALSO INCLUDE 1202 AND 1203 IN

7    THAT -- RIGHT, IT'S BASICALLY THE SAME OBJECTION.

8    THERE ARE NO FOUNDATIONAL QUESTIONS TO ANY OF THESE

9    EXHIBITS.

10            THE COURT:  WHAT'S THE RELEVANCE?  WHAT IS THE

11   GOVERNMENT'S POSITION AS TO THE RELEVANCE OF THESE

12   DOCUMENTS?

13            MS. HEINZ:  YOUR HONOR, THIS INVOLVES THE

14   FRONT PART OF THE CONSPIRACY WHERE THE DEFENDANT IS

15   PROVIDING TRIQUINT PARTS TO THE -- TO HIS

16   CO-CONSPIRATORS IN CHINA.  AND HE DID IT TWO DIFFERENT

17   WAYS.

18                 AT THE BEGINNING OF THE CONSPIRACY, HE

19   PROVIDED THEM BY SHIPPING THEM TO A COMPANY IN

20   SINGAPORE.

21                 AND A COUPLE YEARS LATER, HE DID IT BY

22   HANDING THEM OFF TO AIR CHINA PILOTS AT A HOTEL IN

23   LOS ANGELES.  AND FROM THERE, THE AIR CHINA PILOTS FLEW

24   TO BEIJING.  AND THEY ENDED UP IN THE HANDS OF HIS

25   CHINA-BASED CO-CONSPIRATORS.  AND THIS IS EVIDENCED IN
```

1    E-MAILS.

2                      SO THERE'S SORT OF TWO DIFFERENT BUCKETS

3    OF DEFENSE OBJECTIONS HERE.

4                      ONE BUCKET IS THE SIMPLE OBJECTION THAT

5    THESE MATERIALS WERE PRODUCED AFTER THE TWO-WEEK CUTOFF

6    DATE IN THE COURT'S STANDING ORDER.

7                      AND, OF COURSE, THE GOVERNMENT'S POINT OF

8    VIEW IS THAT THEY WERE PRODUCED NO LATER THAN MAY THE

9    1ST.  SO THAT WAS TWO WEEKS BEFORE TRIAL.  AND SO,

10   THEREFORE, THAT CUTOFF DATE WAS MET.

11                     THE SECOND OBJECTION FROM THE DEFENSE IS

12   ONE OF RELEVANCE, BUT ALSO ONE OF 404(B) NOTICE.  AND,

13   OF COURSE, IT'S THE GOVERNMENT'S POINT OF VIEW THAT

14   THESE ACTS ARE INEXTRICABLY INTERTWINED WITH THE

15   CONSPIRACY.  IN FACT, THEY ARE ABSOLUTELY PART OF THE

16   CONSPIRACY.  IT WAS A CONSPIRACY THAT BEGAN WITH TWO

17   CO-CONSPIRATORS, THE DEFENDANT AND YAPING CHEN.  AND

18   THOSE TWO CO-CONSPIRATORS CONTINUED TO CONSPIRE FOR

19   OVER 10 YEARS.  AND THE GOAL WAS TO GET THESE PARTS

20   INTO CHINA.

21                     AND SO IT'S THE GOVERNMENT'S POINT OF

22   VIEW THAT NO 404(B) NOTICE WAS REQUIRED HERE BECAUSE

23   IT'S INEXTRICABLY INTERTWINED WITH THE CONSPIRACY AND

24   THE CONSPIRATORIAL CONDUCT.

25                     THESE THREE EXHIBITS RIGHT HERE, 1653,

1    1654 AND 1655 ESTABLISH THAT THE THREE PEOPLE WHOSE

2    NAMES ARE ACTUALLY NAMED IN THE E-MAILS BETWEEN

3    DEFENDANT AND HIS CO-CONSPIRATOR, MICHAEL YE, THOSE

4    NAMES APPEAR IN THESE E-MAILS.  AND THESE EXHIBITS

5    ESTABLISH, OR HELP TO ESTABLISH, THAT THOSE PARTICULAR

6    INDIVIDUALS WERE AIR CHINA PILOTS.  AND THE TEXT

7    RECORDS, THE TRAVEL RECORDS ESTABLISH THAT THOSE

8    INDIVIDUALS, WHO ARE NAMED IN THE E-MAIL WHO ARE AIR

9    CHINA PILOTS, WERE ACTUALLY IN LOS ANGELES AT THAT TIME

10   AND THEN FLEW TO BEIJING.

11              SO THIS EVIDENCE IS HIGHLY RELEVANT, YOUR

12   HONOR, BECAUSE IT ESTABLISHES WHO THE INDIVIDUALS WERE

13   THAT ARE NAMED IN THE E-MAILS AND WHAT THEY DID AND

14   WHERE THEY WENT.

15              AND THE E-MAILS ARE SUCH THAT THE

16   CHINA-BASED CO-CONSPIRATORS ACTUALLY SAY, "THANK YOU

17   FOR WHAT YOU HAVE DONE."  AND IN SOME OF THEM, STATE,

18   YOU KNOW, "YOU ALREADY MET THIS PERSON" AND THE NAMED

19   PERSON BEFORE, "WHEN YOU WERE TRYING TO GET" -- "WHEN

20   YOU GAVE US THAT PART."  SO THE E-MAILS REALLY DO TIE

21   THIS TOGETHER AND ESTABLISH THAT THIS IS GOING ON.

22              THE COURT:  THANK YOU.

23              MR. HANUSZ?

24              MR. HANUSZ:  TWO ISSUES.  I'LL DEAL WITH THE

25   DISCLOSURE ISSUE INITIALLY.

1           AT THE TIME THESE DOCUMENTS WERE

2   DISCLOSED, WE HAD A MAY 7TH TRIAL DATE WITH AN APRIL

3   23RD DISCLOSURE DATE.  THESE WERE ALL DISCLOSED -- MANY

4   OF THESE WERE DISCLOSED AFTER APRIL 23RD.

5           THE GOVERNMENT IS TAKING THE POSITION

6   THAT THE TRIAL DATE MOVED.  BUT AT THAT TIME, UNTIL MAY

7   1ST, WE HAD A MAY 7TH TRIAL DATE.

8           SEPARATELY, AND I THINK THE BIGGER ISSUE,

9   YOUR HONOR, IS THE 404(B) ISSUE.  NONE OF THESE ACTS

10  THAT THE GOVERNMENT SPEAKS OF ARE CHARGED.  THEY'RE NOT

11  OVERT ACTS.

12          IF THEY ARE OVERT ACTS, I WOULD WELCOME

13  THE GOVERNMENT POINTING THAT OUT TO US.

14          BUT THERE'S -- IT'S SIMPLY -- THE

15  GOVERNMENT CAN'T RELY ON THIS INEXTRICABLY INTERTWINED

16  ARGUMENT.  NONE OF THESE PILOTS ARE TESTIFYING, TO OUR

17  KNOWLEDGE.

18          THERE'S ACTUALLY KIND OF A SEPARATE

19  CORPUS DELICTI ISSUE WHERE THE ONLY EVIDENCE THAT THE

20  GOVERNMENT CAN PROFFER OF THIS -- OF WHATEVER THE

21  GOVERNMENT BELIEVES HAPPENED, AND THE DEFENSE DISPUTES

22  THE GOVERNMENT'S CHARACTERIZATION, BUT IS E-MAILS.

23  NONE OF THESE INDIVIDUALS WILL TESTIFY.  NONE OF THE

24  INDIVIDUALS ON THE OTHER END OF THE E-MAILS WILL

25  TESTIFY.  SO THERE'S A SEPARATE CORPUS DELICTI ISSUE.

1          BUT, REGARDLESS, IT'S JUST CLEAR 404(B)

2     EVIDENCE.

3          THE COURT:  I UNDERSTAND.

4          MY VIEW IS THIS:  I'M NOT PERSUADED BY

5     THE TIMING ARGUMENT FOR TWO REASONS:  ONE, THE DATE WAS

6     EXTENDED.

7          AND, SECOND, IT WAS THE DEFENDANT WHO

8     VIGOROUSLY ADVOCATED FOR A SOONER TRIAL DATE, NOT A

9     LATER ONE WHICH THE GOVERNMENT WANTED.  SO I DON'T --

10    I'M NOT PERSUADED THAT THE TIMING IS MATERIAL.

11         WITH RESPECT TO THE 404(B) ISSUE, I DON'T

12    THINK THE -- THAT THERE'S PRESENTLY A SHOWING THAT THIS

13    IS NOT -- THAT THERE ISN'T A BASIS TO CONTEND THAT THIS

14    IS INEXTRICABLY INTERTWINED.

15         TO THE EXTENT THAT YOU'RE RIGHT, THAT

16    NONE OF THESE PERSONS WILL TESTIFY, THEN I WILL HAVE

17    TO -- I'LL REFLECT ON IT, BUT I DON'T -- I'M NOT

18    PERSUADED THAT THESE DOCUMENTS COULD NOT BE INTRODUCED

19    FOR THE -- ON THE BASES STATED.

20         IF, UPON HEARING ALL THE EVIDENCE IN THE

21    TRIAL, I REACH A DIFFERENT VIEW, THEN I WOULD WITHDRAW

22    THEM -- HAVE THEM WITHDRAWN IN THE SAME MANNER THAT I

23    SPOKE EARLIER ABOUT THE REGULATIONS.

24         BUT I THINK, AT THIS POINT, I'M GOING TO

25    OVERRULE THESE OBJECTIONS.

```
1          MR. HANUSZ:  THE CONCERN ON THE DEFENSE SIDE

2    IS, IT'LL BE VERY DIFFICULT, IF NOT IMPOSSIBLE, TO

3    UNRING THE BELL.

4          THE COURT:  I UNDERSTAND.

5               WHAT'S THE -- TURNING THEN TO -- THE NEXT

6    CATEGORY IS 1202, 1203?

7          MR. ROLLINS:  THAT MAY HAVE BEEN THE SAME

8    CATEGORY OF EVIDENCE WE WERE JUST DISCUSSING, YOUR

9    HONOR.

10         MR. SPERTUS:  THAT'S CORRECT, YOUR HONOR.

11         THE COURT:  OKAY.  AND THEN 1670 THROUGH 1676?

12              BY THE WAY, THIS IS THE FIRST TIME THAT

13   I'VE LOOKED AT THESE DISPUTED EXHIBITS.  SOME ARE

14   SEVERAL PAGES.  SOME HAVE A LOT OF TEXT.

15              THE QUESTION ON A VISA APPLICATION, WHICH

16   IS A LOT OF TEXT WITH A QUESTION, I DIDN'T THINK THAT

17   WAS JUST THE TEXT OF AN ANSWER.  BUT TO THE EXTENT THAT

18   THERE ARE UNIQUE -- THERE'S UNIQUE TEXT IN SOME OF

19   THESE DOCUMENTS, I HAVE TO -- THAT WHERE YOU CONTEND

20   THAT SOME OF THE TEXT SHOULD BE REDACTED, LET ME KNOW.

21         MR. HANUSZ:  WILL DO.

22         THE COURT:  AGAIN, WE AGREE TO DISAGREE

23   SOMETIMES.  IT HAPPENS.

24         MR. HANUSZ:  UNDERSTOOD, YOUR HONOR.  I

25   APPRECIATE THAT.
```

1    THE COURT:  1670 TO 1676, IS THAT THE NEXT

2    GROUP?

3         MR. HANUSZ:  YES, YOUR HONOR.

4         THE COURT:  JUST A MINUTE.

5         WHAT ARE THESE -- ARE YOU GOING TO

6    ADDRESS THESE DOCUMENTS, MS. SARTORIS?

7         MS. SARTORIS:  YES, YOUR HONOR.

8         YOUR HONOR, THE DEFENDANT, YOU MAY RECALL

9    FROM THE PRESENTATION THUS FAR, SPENT A PERIOD OF TIME

10   RELEVANT TO THE CONSPIRACY WHERE HE WAS WORKING FOR

11   HONEYWELL.  HE SOLD HIS COMPANY, MMCOMM, WAS BOUGHT OUT

12   BY HONEYWELL.  AND HE BECAME A HONEYWELL EMPLOYEE FROM

13   2007, I BELIEVE, UNTIL 2011.  HE RESIGNED FROM

14   HONEYWELL.  AND THEN DAYS LATER, BECAME PRESIDENT OF

15   CHENGDU GASTONE.

16        AND THESE RECORDS REPRESENT THE

17   TRAINING -- SO IF YOU LOOK AT EXHIBIT 1676, THAT RECORD

18   IS A RECORD OF THE TRAINING HE RECEIVED WHILE AT

19   HONEYWELL.

20        THE COURT:  WHAT'S THE SOURCE OF THE DOCUMENT?

21        MS. SARTORIS:  IT'S FROM THE HONEYWELL'S

22   SYSTEM.

23        SO THE DEFENSE IS NOT OBJECTING ON

24   FOUNDATION.  BUT THE SOURCE OF THIS IS FROM THE

25   HONEYWELL DATABASE.  SO ALL THESE DOCUMENTS CAME FROM

```
1    HONEYWELL.  ALL OF THESE DOCUMENTS THAT ARE IN THIS

2    GROUP THAT THE COURT IDENTIFIED, THEY'RE HONEYWELL

3    DOCUMENTS THAT CAME FROM HONEYWELL.  AND THEY REFLECT

4    TRAINING THAT THE DEFENDANT DID HAVE.

5                    AND WITH RESPECT TO FOCUSING JUST ON

6    TRAINING REGARDING EXPORT COMPLIANCE ISSUES, THAT'S THE

7    REMAINING OF EXHIBITS IN THIS SET.  THEY REFLECT

8    HONEYWELL'S RECORDS REGARDING THE TRAINING THAT

9    DEFENDANT HAD WHILE AT HONEYWELL ON EXPORT COMPLIANCE

10   ISSUES.

11             THE COURT:  IS THERE GOING TO BE A WITNESS WHO

12   WILL TESTIFY AS TO WHAT THE EXPORT COMPLIANCE TRAINING

13   WAS?

14             MS. SARTORIS:  YES, YOUR HONOR.  THAT'S

15   MR. PASCO.  HE IS THE -- WAS THE CUSTODIAN OF RECORD

16   FOR THESE DOCUMENTS AND IS KNOWLEDGEABLE ABOUT HOW

17   HONEYWELL TRACKS THE TRAINING REQUIREMENTS AND HOW

18   THESE DOCUMENTS WERE GATHERED AND THE LIST PUT

19   TOGETHER.  SO HE WILL NOT BE TALKING ABOUT THE SUBJECT

20   OF THE RECORDS, BUT JUST TALKING ABOUT THE FACT THAT

21   THESE ARE THE RECORDS THAT HONEYWELL HAS AS TO

22   DEFENDANT'S TRAINING ON EXPORT ISSUES.

23             THE COURT:  WELL, JUST SO -- IF WE TURN TO

24   EXHIBIT 1676, THE FIRST PAGE OF IT, BATES NUMBER 22765,

25   AND ALSO HON -- A SEPARATE BATES NUMBER, HON, ENDING IN
```

32

1      1217.  ABOUT TWO-THIRDS OF THE WAY DOWN THAT PAGE,

2      THERE'S AN ENTRY WHICH HAS FIRST NAME AND LAST NAME OF

3      THE DEFENDANT.  AND THEN IT SAYS, "EXPORT COMPLIANCE

4      AWARENESS."

5                 DO YOU SEE THAT?

6                 MS. SARTORIS:  YES, YOUR HONOR.

7                 THE COURT:  SO YOU WOULD BE SEEKING TO

8      INTRODUCE THIS DOCUMENT AS EVIDENCE THAT THE DEFENDANT

9      HAD TRAINING ON THAT TOPIC?

10                MS. SARTORIS:  YES, YOUR HONOR.

11                THE COURT:  DO WE KNOW WHEN?

12                MS. SARTORIS:  THE WAY THAT THE INFORMATION

13     WAS PROVIDED BY HONEYWELL, YOU CAN SEE FROM THE HON

14     BATES NUMBERS THAT HONEYWELL BATES STAMPED THIS BEFORE

15     GIVING IT TO THE GOVERNMENT.  SO WHAT ONE WOULD HAVE TO

16     DO IS, TAKE THE -- AND MR. PASCO WILL EXPLAIN THIS.

17                     BUT WE'LL HAVE TO TAKE THE BEGINNING AND

18     JUST LINE IT UP AS IF IT'S AN EXCEL SPREADSHEET.

19                     SO IF YOU GO TO THE PAGE THAT STARTS

20     "HON," THEN IT SAYS, "1221," THAT IS THE REST OF THE

21     EXCEL SPREADSHEET.  I'M ASSUMING IT'S EXCEL.  BUT THE

22     REST OF THE SPREADSHEET.

23                     SO THE FIRST LINE, "YI-CHI SHIH HONEYWELL

24     CODE OF BUSINESS CONDUCT" WOULD RELATE TO THE FIRST

25     LINE "5/10/2007."

1       THE COURT:  SO THERE'S A CORRELATION SOME TIME

2   IN 2007 OR 2008?

3           MS. SARTORIS:  YES.

4               SO YOU CAN LINE IT UP AND DETERMINE, FROM

5   THIS DOCUMENT, WHEN THE TRAINING -- DIFFERENT TRAININGS

6   TOOK PLACE.

7           THE COURT:  WHAT EVIDENCE WILL THE GOVERNMENT

8   OFFER AS TO WHAT THE TRAINING WAS?

9           MS. SARTORIS:  FOR SOME OF THE TRAINING, WE

10  HAVE THE ACTUAL POWER POINT SLIDES THAT WERE PROVIDED

11  AT THE TIME.  AND THESE ARE HONEYWELL'S BUSINESS

12  RECORDS.  SOME OF THEM WERE COMPUTERIZED TRAINING.

13          THE COURT:  IS THERE A POWER POINT FOR

14  TRAINING ON EXPORT COMPLIANCE AWARENESS?

15          MS. SARTORIS:  YES, YOUR HONOR.  IT IS EXHIBIT

16  1670.

17          THE COURT:  OKAY.  JUST A MINUTE.

18              WHAT'S 1671?

19              1670 YOU SAID IS A POWER POINT ON EXPORT

20  COMPLIANCE TRAINING.

21              IS IT DATED?

22          MS. SARTORIS:  I DON'T SEE A DATE ON THIS

23  PARTICULAR POWER POINT SLIDE.

24          THE COURT:  HOW WILL -- HOW DOES THE

25  GOVERNMENT CONTEND THAT THIS POWER POINT 1670 WAS SHOWN

1     TO THE DEFENDANT AT THE TIME THE DEFENDANT WAS TRAINED?

2           MS. SARTORIS:  WHAT MR. PASCO WILL EXPLAIN IS

3     THAT -- AND HE'S ACTUALLY FLYING -- FLEW IN TODAY.  AND

4     I WILL BE MEETING WITH HIM AFTER THIS COURT APPEARANCE.

5           BUT HE WILL EXPLAIN THAT -- HOW SOME

6     OF -- SO THE WAY THAT HONEYWELL -- IT'S MY

7     UNDERSTANDING THAT THE WAY HONEYWELL POPULATES THIS

8     LIST IS A COMBINATION OF, PEOPLE HAVE -- SOMETIMES HAVE

9     AN ONLINE COMPUTER-BASED TRAINING THAT WOULD THEN BE

10     LOGGED BY THE HONEYWELL COMPUTER DATABASE.

11           THERE ARE CERTAIN TRAININGS THAT ARE

12     TRAININGS THAT PEOPLE GO TO IN PERSON.  AND THOSE WOULD

13     BE PRESENTATIONS WHERE THEY WOULD SIGN IN.  AND THEN

14     THE HONEYWELL PERSONNEL THAT WAS RESPONSIBLE FOR

15     PUTTING ON THE TRAINING WOULD THEN SUBMIT THE LIST OF

16     THE PEOPLE WHO ATTENDED THE TRAINING TO THE HONEYWELL

17     SYSTEM.

18           SO THIS IS THE RESULT OF THAT, IS THAT

19     HONEYWELL LOGS THE TRAINING THAT PEOPLE HAVE THROUGH --

20     SOMETIMES IT'S IN-PERSON TRAINING AND SOMETIMES IT'S

21     COMPUTER-BASED TRAINING.

22          THE COURT:  BUT THE LIST -- THE SCHEDULE WE

23     WERE LOOKING AT EARLIER, 1676, DOESN'T -- DOES THAT

24     IDENTIFY THE TYPE OF TRAINING?

25           MS. SARTORIS:  NOT ENTIRELY.  THE SYSTEM

1    DOESN'T CLARIFY IT THAT WAY.

2              BUT WHAT MR. PASCO -- WHAT I EXPECT HE

3    WILL EXPLAIN IS, THAT THERE ARE TIMES WHERE YOU CAN SEE

4    THAT -- THAT THE TIME STAMP ON THE TRAINING IS SORT OF

5    A GENERIC TIME, LIKE 12:00 A.M.  AND THAT WHAT WOULD

6    HAPPEN IS, THE PERSON -- SO IMAGINE THAT YOU HAVE A

7    LIVE TRAINING AND PEOPLE SIGN IN.  AND THEN YOU HAVE

8    THE PRESENTER SUBMIT IT TO THE HUMAN RESOURCES

9    DEPARTMENT IN CHARGE OF TRAINING.  AND THEN AT SOME

10   POINT, THE EMPLOYEE LOGS ALL THE PEOPLE WHO WERE AT THE

11   TRAINING.  SO THE TIME STAMPS, WHEN THEY'RE UNIFORM

12   LIKE THAT, WHEN THEY SHOW AT A STRANGE TIME PROBABLY

13   REPRESENTS A LIVE TRAINING AS OPPOSED TO A

14   COMPUTER-BASED TRAINING.

15             THE COURT:  YOU'RE SAYING MR. PASCO HAS

16   PERCIPIENT KNOWLEDGE OF THAT?

17             MS. SARTORIS:  ABOUT HOW THE TRAINING --

18             THE COURT:  HOW THIS DOCUMENT IS CREATED AND

19   HOW THE -- WHY IT REFLECTS WHAT YOU JUST STATED?

20             MS. SARTORIS:  YES, YOUR HONOR.

21             HE ISN'T A PERCIPIENT WITNESS TO

22   DEFENDANT'S TRAINING PERSONALLY, BUT HE IS

23   KNOWLEDGEABLE ABOUT THE SYSTEMS AND HOW THE --

24             THE COURT:  WHAT EVIDENCE WOULD BE OFFERED

25   THAT EXHIBIT 1670 WAS EITHER SHOWN TO THE DEFENDANT

```
1    WHEN HE ATTENDED A LIVE TRAINING OR WAS PART OF THE

2    ONLINE TRAINING THAT THE DEFENDANT -- IN WHICH THE

3    DEFENDANT PARTICIPATED?

4              MS. SARTORIS:  IS YOUR HONOR ASKING, WAS THIS

5    AN EXAMPLE OF AN ONLINE TRAINING OR A LIVE TRAINING?

6              THE COURT:  NO.

7                   WHAT I'M ASKING IS, WHAT IS THE EVIDENCE

8    THAT WOULD SHOW -- THAT YOU CONTEND WOULD SHOW THAT THE

9    DEFENDANT WAS SHOWN EXHIBIT 1670 EITHER IN

10   IN-PERSON-LIVE TRAINING OR IN ONLINE TRAINING?

11             MS. SARTORIS:  SO IT'S MY UNDERSTANDING THAT

12   HONEYWELL, THROUGH THEIR BUSINESS RECORDS, THEY

13   MAINTAIN THE TRAINING THAT CORRELATES TO THE PROGRAMS.

14   AND SO THESE EXHIBITS CORRELATE TO PARTICULAR TRAINING

15   THAT DEFENDANT IS LOGGED TO HAVE PARTICIPATED IN.

16             THE COURT:  AND YOU'RE SAYING THAT'S ALSO TRUE

17   OF 1671?

18             MS. SARTORIS:  YES, YOUR HONOR.

19                  IT'S TRUE WITH RESPECT TO ALL OF THEM, IS

20   MY UNDERSTANDING.  ALL OF THESE ARE TRAININGS THAT THE

21   DEFENDANT WAS EXPOSED TO, AS WILL BE REFLECTED IN THE

22   LOG.

23             THE COURT:  I DIDN'T GET DOWN TO THE LEVEL

24   OF -- DO YOU CONTEND THAT THERE'S A SLIDE OR SLIDES IN

25   EACH OF THE EXHIBITS THAT CONSTITUTE -- THAT ARE POWER
```

1    POINTS FOR TRAINING THAT CORRESPOND TO THE ISSUES HERE

2    IN TERMS OF KNOWLEDGE AND WILLFULNESS?

3              MS. SARTORIS:  YES, YOUR HONOR.  PRECISELY.

4              IT'S THE GOVERNMENT'S BURDEN TO PROVE

5    THAT THE DEFENDANT WAS KNOWLEDGEABLE ABOUT EXPORT

6    RESTRICTIONS AND KNOWLEDGEABLE ABOUT THAT HE WAS

7    VIOLATING THEM.  HE WILLFULLY VIOLATED THE EXPORT LAWS

8    WHEN HE OPTED NOT TO SEEK A LICENSE FROM THE DEPARTMENT

9    OF COMMERCE.

10             AND HIS TRAINING AND EXPERIENCE AND

11   KNOWLEDGE ON EXPORT COMPLIANCE ISSUES GENERALLY ARE

12   HIGHLY RELEVANT TO HIS -- THE GOVERNMENT'S POSITION

13   THAT HE DID VERY WELL KNOW WHAT HE WAS DOING.

14             AND I THINK THIS IS, AGAIN, REFLECTED IN

15   A LOT OF THE EXAMINATION THAT WE SEE FROM DEFENSE OF

16   MR. MONROY WHERE HE'S -- A LOT OF -- THE QUESTIONING

17   ALONG THE LINES OF HE WAS A RESEARCHER AND HE DIDN'T

18   KNOW OR ONE MIGHT NOT KNOW ALONG THOSE LINES.  SO HERE

19   IS AN EXAMPLE OF, HE WORKED FOR HONEYWELL AND WAS AWARE

20   OF THESE CONCERNS.

21             THE COURT:  ALL RIGHT.  THANK YOU,

22   MS. SARTORIS.

23             MR. HANUSZ?

24             MR. HANUSZ:  SO AS A -- JUST A FOUNDATIONAL

25   MATTER, THERE ARE NO FOUNDATIONAL OBJECTIONS TO THESE

1    EXHIBITS.  YOUR HONOR IS CORRECT IN THAT THERE AREN'T

2    DATES ON SOME OF THEM.  A NUMBER OF THEM - AND I CAN

3    DIRECT YOUR HONOR TO SPECIFIC EXAMPLES - HAVE LIKE

4    QUIZZES WITH -- SO I WILL DIRECT YOUR HONOR TO PAGES 18

5    TO 27 OF EXHIBIT 1672.  AND I'M GOING OFF THE NUMBER AT

6    THE BOTTOM RIGHT-HAND CORNER.

7            THE COURT:  BATES NUMBER 22066?

8            MR. HANUSZ:  CORRECT, YOUR HONOR.

9                SO THIS IS AN EXAMPLE.  SO WE HAVE KIND

10   QUIZ SLIDES, WHICH ARE PRETTY COMMON IN THESE SORTS

11   OF -- NO IDEA WHO FILLED THE QUIZ OUT OR WHEN.  MY

12   GUESS IS PROBABLY HONEYWELL.  I DON'T KNOW IF HONEYWELL

13   HAS RECORDS OR NOT OF THE ANSWERS THAT WERE SUBMITTED.

14   WE JUST DON'T KNOW.  I THINK THAT'S THE ISSUE.

15            THE COURT:  OKAY.

16            MR. HANUSZ:  SO THIS IS ALSO PRESENT IN THE

17   LAST FIVE PAGES OF 1674.

18                SOME OF THESE POWER POINTS HAVE DATES.

19   SOME OF THEM DO NOT.

20            THE COURT:  ALL RIGHT.  I UNDERSTAND.

21            MR. HANUSZ:  I HAVE NO REASON TO THINK THAT,

22   YOU KNOW -- IN ANY EVENT, THE BIGGER ISSUE, YOUR HONOR,

23   IS, THESE DOCUMENTS ARE REPLETE WITH TERMS LIKE ITAR

24   WITH MISSILES.

25                CERTAINLY, MR. MONROY WANTED TO TALK A

1    LOT ABOUT ITAR LAST WEEK EVEN THOUGH IT'S NOT AN ISSUE

2    IN THIS CASE.  THIS -- MR. MONROY'S TESTIMONY CONFIRMS

3    THE PROBLEM IN CONTINUING TO TALK ABOUT ITAR, WHICH HAS

4    NEVER BEEN CHARGED.  IT HAS NEVER BEEN ALLEGED.  BUT

5    THERE ARE ALL SORTS OF REDACTIONS, YOUR HONOR, THAT THE

6    DEFENSE SUBMITS WOULD NEED TO OCCUR.

7           THE COURT:  I UNDERSTAND.

8               MY VIEW IS THIS, I DON'T HAVE FULL

9    INFORMATION.

10              BUT, FIRST, TO THE EXTENT THAT THESE

11   EXHIBITS CONTAIN INFORMATION -- SOME INFORMATION THAT

12   IS NOT RELEVANT OR WHOSE RELEVANCE IS OUTWEIGHED BY ITS

13   PREJUDICIAL EFFECT, THEY SHOULD BE REDACTED.

14              SECOND, TO THE EXTENT THAT THESE

15   DOCUMENTS HAVE -- SOME OF THE DOCUMENTS HAVE QUIZ

16   ANSWERS.  ABSENT EVIDENCE THAT THESE ANSWERS WERE ONES

17   MADE BY THE DEFENDANT, THEY SHOULD BE REDACTED.  IN

18   OTHER WORDS, THERE SHOULD BE NO ANSWERS.

19              THIRD, THESE -- IT'LL BE -- IT'LL BE

20   NECESSARY TO SHOW A FOUNDATIONAL BASIS THAT IT'S

21   REASONABLE TO FIND THAT THE -- THESE PARTICULAR POWER

22   POINT MATERIALS AS -- PUTTING ASIDE REDACTIONS -- WERE

23   ONES THAT WERE DISPLAYED TO OR PROVIDED OR MADE

24   AVAILABLE TO THE DEFENDANT.  NOT JUST THAT THESE ARE

25   THE GENERAL MATERIALS THAT THE COMPANY HAD -- THAT

1   HONEYWELL HAD.

2                   SO I THINK WITH THAT IN MIND, I WOULD

3   OVERRULE THE OBJECTION AS A WHOLE AND SAY THAT I

4   KNOW -- I DON'T THINK THERE'S A BASIS TO EXCLUDE THESE

5   DOCUMENTS IN THEIR ENTIRETY.  BUT IF THEY'RE ADMITTED,

6   THEY WOULD BE SUBJECT TO REDACTION AND SUBJECT TO A

7   SHOWING THAT THEY -- THERE'S A REASONABLE BASIS TO

8   CONCLUDE, OR FOR A JURY TO FIND, THAT THEY WERE SEEN BY

9   THE DEFENDANT.

10                  AND JUST TO MAKE CLEAR, REDACTING

11  PORTIONS OF IT THAT ARE 403.  IF HE'S SHOWN -- IF

12  THERE'S SOMETHING THAT IS IN THEM THAT ISN'T -- THAT'S

13  403, IT SHOULD BE REDACTED.

14              MR. HANUSZ:  YOUR HONOR, IF I MAY FLAG MORE

15  ISSUES?  A NUMBER OF THESE DOCUMENTS ARE STAMPED WITH

16  "SUBJECT TO PROTECTIVE ORDER."  WE WOULD ASK FOR THAT

17  TO BE REDACTED.

18                  THE DEFENSE AND THE GOVERNMENT MAY NOT BE

19  ABLE TO AGREE ON APPROPRIATE REDACTIONS.  I'M FLAGGING

20  THAT AS AN ISSUE FOR THE COURT.  THE GOVERNMENT HAS

21  ALREADY INDICATED THAT IT SEES NO PROBLEMS WITH SOME OF

22  THE TERMS IDENTIFIED BY THE DEFENSE.

23                  WE MAY BE BACK WITH THE SAME ISSUE WITH

24  MR. PASCO, BUT I'M JUST -- I WANTED TO FLAG IT FOR YOUR

25  HONOR.

```
1              THE COURT:  THAT'S FINE.

2                   FIRST, AS YOU KNOW, THE JURY IS NOT GOING

3    TO GET COPIES OF EXHIBITS UNTIL THEY'RE ADMITTED AND

4    PRESENTED TO THE JURY IN THE JURY ROOM.

5                   AND EVEN IF I ALLOWED THE PUBLICATION OF

6    AN EXHIBIT, THAT DOESN'T MEAN THAT IT COULDN'T THEN BE

7    MODIFIED PRIOR TO THE END OF THE CASE WHEN SUBMITTED TO

8    THE JURY TO REFLECT A REDACTION.

9                   TO THE EXTENT THAT THERE IS A DISPUTE

10   ABOUT AN EXHIBIT AND WHETHER SOMETHING SHOULD BE

11   REDACTED, AND THAT I CAN'T RESOLVE PROMPTLY AT THE TIME

12   OF THE TESTIMONY, IT SHOULD BE REDACTED.  AND THEN I

13   CAN -- I MEAN, LET ME BE CLEAR:

14                  TO THE EXTENT IT'S SOMETHING THAT --

15   BEFORE IT'S PUBLISHED, I WOULD HAVE THAT REDACTED.

16   THAT DOESN'T MEAN THE WITNESS CAN'T EXAMINE IT AND

17   TESTIFY ABOUT IT.  BUT BEFORE IT'S PUBLISHED, THAT

18   PORTION SHOULD BE REDACTED BECAUSE, OTHERWISE, I'M NOT

19   IN A POSITION TO MAKE A RULING.

20                  IN TERMS OF OBJECTIONS AND MOVING THIS

21   PROCESS FORWARD, THERE MAY BE A DISPUTE ABOUT ONE

22   REDACTION THAT THE DEFENSE THINKS WOULD BE HIGHLY

23   PREJUDICIAL IF EVER PUBLISHED TO THE JURY.  EVEN IF

24   IT'S LATER REDACTED, THERE MAY BE A DIFFERENT VIEW BY

25   THE DEFENSE AS TO ANOTHER REDACTION.  SO IN TERMS OF
```

```
1     EFFICIENCY HERE, IF THERE ARE DISPUTES ABOUT

2     REDACTIONS, KEEP THAT IN MIND.

3               MR. HANUSZ:  I CAN IDENTIFY A NUMBER OF TERMS

4     NOW, YOUR HONOR, IF THE COURT WOULD LIKE.

5               THE COURT:  I DON'T HAVE ALL AFTERNOON TO DO

6     THIS.

7               MR. HANUSZ:  UNDERSTOOD.

8               THE COURT:  WHAT I'M SAYING IS, JUST AS I DID

9     DURING THE CROSS-EXAMINATION, SOME THINGS CAN BE

10    REVIEWED BY A WITNESS AND NOT PUBLISHED AND SO ON.  I

11    CAN DEAL WITH IT IN THAT RESPECT.

12                   BUT I THINK I'VE GIVEN YOU THE

13    GUIDELINES.

14              MR. HANUSZ:  FOR THOSE TERMS THAT THE DEFENSE

15    BELIEVES ARE SUBJECT TO 403 EXCEPTIONS, WE WILL MAKE

16    ANY OBJECTIONS TO THE WITNESS READING THE DOCUMENT.

17              THE COURT:  THAT'S FINE.  I DON'T HAVE A

18    PROBLEM WITH THAT AT THE MOMENT.

19                   HOW LONG IS THE LIST OF -- HOW MANY WORDS

20    ARE THERE OR TERMS ARE THERE THAT ARE DISPUTED?

21              MR. HANUSZ:  THERE AREN'T MANY, YOUR HONOR.

22    BUT THEY'RE TERMS THAT APPEAR REPEATEDLY.  SO ITAR,

23    ANTI-TERRORISM.  THERE'S A SLIDE, "SPACE MISSILES AND

24    MUNITIONS."

25                   THE UNIVERSE OF TERMS IS LIMITED, BUT
```

43

1   THERE'S JUST A LOT OF PAGES.  AND THEY APPEAR NUMEROUS

2   TIMES.

3           THE COURT:  WHY DO TERMS ABOUT MISSILES OR

4   OTHER THINGS HAVE TO BE -- WHY CAN'T THEY BE REDACTED?

5           MS. SARTORIS:  YOUR HONOR, THAT'S ACTUALLY AN

6   EXAMPLE OF -- SO TWO ISSUES.

7               FIRST OF ALL, THE GOVERNMENT UNDERSTANDS

8   THE COURT'S CONCERNS AND WILL ENDEAVOR TO LOOK THROUGH

9   THE EXHIBITS AND DEFINITELY LAY THE FOUNDATION THAT THE

10  COURT REQUESTED AND CONSIDER DEFENSE OBJECTIONS AND THE

11  COURT'S CONCERNS.

12              THESE ARE BUSINESS DOCUMENTS AND, AS A

13  WHOLE, WERE SHOWN TO DEFENDANT.  SO REDACT -- IT'S --

14  REDACTING THINGS DEFENDANT WAS EXPOSED TO WHEN IT'S

15  PART OF THE OVERALL LIKE EXPORT CONTROL REGIME,

16  ESPECIALLY WHEN YOU'RE DISCUSSING THINGS THAT COULD

17  HAVE MILITARY APPLICATIONS, THEY'RE HIGHLY RELEVANT TO

18  THE CASE.

19              FOR EXAMPLE, WITH RESPECT TO MISSILES AND

20  SPACE --

21           THE COURT:  WHAT EXHIBIT?

22           MS. SARTORIS:  WELL, YOUR HONOR, THE ONE

23  THAT -- I DON'T KNOW OFFHAND, THE ONE THAT DEFENSE

24  COUNSEL RAISED --

25           MR. HANUSZ:  1675, YOUR HONOR.

```
 1           MS. SARTORIS:  WITH RESPECT TO THE U.S.
 2    COMPANY B WAFERS, HE -- AND HIS POWER POINTS SLIDES --
 3    THE POWER POINT SLIDES THAT DEFENDANT HAS PREPARED IN
 4    THIS CASE AND HIS OTHER BUSINESS PLANS DISCUSS SPACE
 5    USE OF THE -- SPACE GOALS FOR CHENGDU GASTONE, MISSILE
 6    USE OF THESE WAFERS.  I MEAN, THESE ARE ITEMS THAT ARE
 7    NOT BROUGHT IN GRATUITOUSLY BY THE GOVERNMENT IN POWER
 8    POINT SLIDES.  THESE ARE NOT ONLY THINGS THAT HONEYWELL
 9    SHOWED HIM, BUT ALSO THEY'RE IN LINE WITH THE EVIDENCE
10    IN THIS CASE AND THE TYPES -- SOME OF THE TYPES OF
11    BUSINESSES THAT CHENGDU GASTONE WAS INVOLVED IN OR
12    LOOKING TO BE INVOLVED IN.
13               AND I CAN DIRECT COURT JUST OFF-HAND TO
14    GOVERNMENT'S EXHIBIT 2017.  I BELIEVE IT'S A POWER
15    POINT SLIDE THAT SHOWS MISSILES AND SATELLITES IN SPACE
16    AS HE'S TALKING ABOUT CHENGDU GASTONE'S BUSINESS.
17           MR. HANUSZ:  THIS POWER POINT HAS NOTHING TO
18    DO WITH MISSILES.  THE ONLY TIME MISSILES APPEARS IN
19    THIS DOCUMENT IS ON THE COVER PAGE.
20               THE ONLY PAGE THAT THE GOVERNMENT IS
21    REALLY INTERESTED IN THE JURY SEEING IS THE COVER PAGE.
22    THE OTHER -- THE REST OF IT DOESN'T RELATE AT ALL TO
23    ANYTHING SPECIFIC TO MISSILES.
24               OUR POSITION IS, IT'S ENTIRELY 403, YOUR
25    HONOR.  IT'S NOT RELEVANT TO ANYTHING.
```

1              AND IT'S JUST ABOUT GETTING THESE TWO

2     WORDS, "MISSILES AND MUNITIONS," IN FRONT OF THE JURY.

3              THE COURT:  OKAY.

4              MR. HANUSZ:  AND I WOULD NOTE THAT THIS HAS NO

5     DATE ON IT EITHER.

6              THE COURT:  WELL, WITH RESPECT TO, AS AN

7     EXAMPLE, 1675, THE FIRST PAGE OF THE EXHIBIT WHICH HAS

8     BATES NUMBER 22777, AS WELL AS BATES NUMBER FROM

9     HONEYWELL, HON, ENDING IN 1456, I DON'T KNOW WHY MORE

10    THAN THE FIRST LINE WOULD BE NEEDED.

11             OR MAYBE THE FIRST LINE OF THE FIRST TWO

12    WORDS OF THE NEXT LINE.

13             IN OTHER WORDS, "PROPRIETARY AND

14    SENSITIVE INFORMATION SECURITY PRESENTATION."

15             WHY DO WE NEED MORE?

16             AGAIN, THIS CASE IS NOT ABOUT WHETHER

17    SOMETHING SHOULD BE PROPERLY LISTED.  IT'S ABOUT

18    WHETHER THERE WAS A WILLFUL KNOWING EXPORT OF AN ITEM

19    THAT WAS ON THE LIST.

20             MS. SARTORIS:  YOUR HONOR, I JUST DIDN'T TRACK

21    WHERE YOU WERE LOOKING.  I KNOW YOU WERE READING, AND I

22    JUST DIDN'T TRACK.

23             THE COURT:  EXHIBIT 1675, THE FIRST PAGE,

24    WHICH IS THE TITLE PAGE.

25             MS. SARTORIS:  RIGHT.

1          THE COURT:  AFTER THE WORD "PRESENTATION," WHY

2     IS THE REMAINING LANGUAGE NEEDED?

3          MS. SARTORIS:  YOUR HONOR, SO WITH RESPECT TO

4     "SPACE" AND "MISSILES," JUST, FOR EXAMPLE, THOSE ARE

5     ITEMS THAT DEFENDANT WAS TALKING ABOUT AND FOCUSED ON

6     WITH CHENGDU GASTONE.  AND SO THE FACT THAT HE HAD

7     AWARENESS THAT -- IN THIS REALM THAT THIS IS SPECIAL

8     SENSITIVE INFORMATION IS IMPORTANT TO -- FOR THE

9     GOVERNMENT TO PROVE WILLFULNESS.  WE HAVE TO PROVE THAT

10    THE DEFENDANT ACTED WILLFULLY HERE.  AND HIS KNOWLEDGE

11    OF THE SENSITIVE NATURE OF THE ITEMS HE WAS WORKING ON

12    IS SOMETHING THAT THE GOVERNMENT MUST ESTABLISH.

13         THE COURT:  AGAIN, IT'S DIFFICULT TO MAKE A

14    CONCLUSIVE DETERMINATION ABOUT ALL OF THESE EXHIBITS AT

15    THIS TIME.  AS I'VE STATED, I HAVE OTHER THINGS GOING

16    ON TODAY.  SO I CAN'T SPEND THE ENTIRE AFTERNOON GOING

17    THROUGH EACH OF THESE EXHIBITS LINE BY LINE.

18         BUT AT THE MOMENT, I THINK THAT'S

19    SOMETHING THAT COULD BE REDACTED FROM WHAT I KNOW ABOUT

20    THE PURPOSE OF THIS.  THE PURPOSE BEING, TO SHOW THAT

21    THERE WAS TRAINING OFFERED -- OR PROVIDED TO THE

22    DEFENDANT WITH RESPECT TO THE LIMITATIONS ON EXPORTS OF

23    CERTAIN ITEMS -- EITHER ITEMS OR -- TO CERTAIN

24    COUNTRIES OR TO CERTAIN ENTITIES, AND THAT IT WAS DONE

25    KNOWINGLY AND WILLFULLY.  I DON'T KNOW THAT SOME OF

47

1     OTHER ELEMENTS HERE ARE NECESSARY TO SHOW THAT.

2                 AND THERE'S A 403 ISSUE.  I'VE SAID THIS

3     BEFORE AS TO THE CHINESE MILITARY, SO I DON'T THINK

4     THIS IS NEW.

5                 SO WITH THAT IN MIND, PERHAPS YOU CAN

6     TAKE ANOTHER PASS THROUGH THE DOCUMENTS.  TO THE EXTENT

7     THERE REMAIN ISSUES ABOUT WHAT SHOULD OR SHOULD NOT BE

8     REDACTED, I'LL HAVE TO LOOK AT THEM.  BUT FOR PRESENT

9     PURPOSES, DO YOUR BEST.

10                MS. SARTORIS:  THANK YOU, YOUR HONOR.

11                MR. HANUSZ:  THANK YOU, YOUR HONOR.

12                THE COURT:  I KNOW YOU HAVE BEEN WORKING HARD

13    AND COLLABORATIVELY TO NARROW ISSUES.

14                THE NEXT IS 1202 AND 1203.

15                IS THAT DIFFERENT?

16                MR. HANUSZ:  WE'VE COVERED THOSE, YOUR HONOR.

17                THE COURT:  THEN WE HAVE A LOT OF EXHIBITS

18    WITH RESPECT TO MILLER?

19                MR. HANUSZ:  CORRECT, YOUR HONOR.

20                THE COURT:  ARE THEY ALL UNIQUE?

21                MR. HANUSZ:  THEY -- SOME OF THEM ARE UNIQUE.

22    THERE ARE MORE CATEGORIES, YOUR HONOR, WHICH I'M HAPPY

23    TO FLAG IF THE COURT WANTS TO --

24                THE COURT:  WHAT ARE THE ISSUES?

25                MR. HANUSZ:  SO THESE ALL RELATE TO --

1    MS. MILLER WILL TESTIFY ABOUT ITEMS THAT WERE RECOVERED

2    FROM DR. SHIH'S HOME IN THE SEARCH.  SO ALL OF -- SO

3    THE UNIVERSE OF ITEMS IS, I DON'T KNOW, MAYBE 150

4    EXHIBITS.  WE HAVE NO FOUNDATIONAL OBJECTIONS TO ANY OF

5    THOSE EXHIBITS.  NONE.

6              OKAY.  SO THE OBJECTIONS WE HAVE -- SO

7    THERE ARE A COUPLE.  SO THERE ARE RELEVANCE.  FOR

8    EXAMPLE, THE GOVERNMENT WANTS TO INTRODUCE -- WOULD

9    LIKE TO INTRODUCE DR. SHIH'S PASSPORT CARD, WHICH

10   CONTAINS NO INFORMATION, HIS DRIVER'S LICENSE FROM

11   THE -- FROM CHINA.  AGAIN, IT'S MORE OF A DUPLICATIVE

12   AND JUST KIND OF -- OUR POSITION IS, IT'S DUPLICATIVE

13   AND IRRELEVANT.

14             THE OTHER CLASS OF OBJECTIONS RELATES TO

15   FINANCIAL RECORDS THAT WERE RECOVERED FROM DR. SHIH'S

16   HOME.  AND SO THE ISSUE HERE -- THE COURT DEALT WITH A

17   RESIDUAL HEARSAY -- WITH THE RESIDUAL HEARSAY ISSUE AS

18   IT RELATED TO BANK RECORDS.

19             THE GOVERNMENT PREVIOUSLY, IN A LETTER TO

20   THE DEFENSE AND IN ITS FILING WITH THE COURT,

21   REPRESENTED WHAT THOSE DOCUMENTS CONSISTED OF, WHAT THE

22   UNIVERSE OF BANK RECORDS CONSISTED OF.  THE GOVERNMENT

23   DID NOT INCLUDE -- THESE DOCUMENTS WERE NOT INCLUDED IN

24   THAT UNIVERSE OF BANK RECORDS.

25             SO I WILL SAY, I'M NOT SURE OUR OBJECTION

49

1    IS A WHOLE LOT DIFFERENT, YOUR HONOR.  BUT TO THE

2    EXTENT THAT -- I UNDERSTAND THE COURT'S RULING

3    PREVIOUSLY.  WE'RE NOT ASKING THE COURT TO REVISIT

4    THAT.  BUT THESE WERE NOT INCLUDED IN THE COURT'S PRIOR

5    RULING.

6              SO WE'VE LITIGATED THIS BEFORE.  THE

7    GOVERNMENT'S HAD AN OPPORTUNITY TO PRESENT THESE TO THE

8    COURT, TO PRESENT ARGUMENT.  IT HAS NOT WITH RESPECT TO

9    THESE DOCUMENTS.

10             THE COURT:  DO YOU THINK THIS IS THE SAME

11   ISSUE AS THE ONE THAT WAS PREVIOUSLY ADDRESSED?

12             MR. HANUSZ:  SO OUR OBJECTION WOULD PRIMARILY

13   BE THE SAME, YOUR HONOR.

14             THE COURT:  MR. HUGHES?

15             MR. HUGHES:  WITH REGARD TO THE ADDITIONAL

16   FINANCIAL EXHIBITS, THE REASON THAT THEY WERE NOT

17   DISCLOSED IN THE LETTER REGARDING EXHIBITS THAT WE WERE

18   SEEKING TO ADMIT UNDER THE RESIDUAL HEARSAY EXCEPTION

19   IS BECAUSE TWO OF THE THREE OF THESE DOCUMENTS ARE

20   ACTUALLY APPLICATIONS AND/OR FINANCIAL PROFILES THE

21   DEFENDANT ACTUALLY SIGNED AS PART OF HIS INITIAL

22   PAPERWORK SETTING UP THIS ACCOUNT.  THEY ARE PARTY

23   ADMISSIONS.

24             THEY'RE NOT COVERED UNDER THE RESIDUAL

25   HEARSAY EXCEPTION BECAUSE THESE ARE STATEMENTS HE IS

```
1     MAKING TO THE BANK IN ORDER TO OPEN HIS ACCOUNT.

2              MR. HANUSZ:  YOUR HONOR, THE PARTY ADMISSION

3     ISSUE WAS ADDRESSED IN THE SAME MOTION.  AND THESE

4     DOCUMENTS WERE NOT REFERENCED.  THEY HAVE NOT BEEN

5     REFERENCED TO DATE.  THIS IS THE FIRST TIME THEY'VE

6     BEEN REFERENCED.

7              THE COURT:  CAN YOU -- WHAT'S AN EXHIBIT

8     NUMBER THAT'S AN EXAMPLE?

9              MR. HANUSZ:  AN EXHIBIT NUMBER -- SO IT WOULD

10    BE 707, 716 AND --

11             MR. HUGHES:  754, YOUR HONOR.

12             MR. HANUSZ:  YOUR HONOR, I WOULD NOTE THE

13    GOVERNMENT MADE THE SAME PARTY ADMISSION ARGUMENT IN

14    THE PRIOR BRIEFING.  AND THE COURT REJECTED THAT.

15             MR. HUGHES:  AS A POINT OF CLARIFICATION, YOUR

16    HONOR, THOSE DOCUMENTS WERE NOT SIGNED.

17                  THE DOCUMENTS THAT WERE REFERENCED IN OUR

18    PREVIOUS ARGUMENT REGARDING PARTY ADMISSIONS, WE HAD

19    ARGUED FOR THAT BASED ON ADOPTIVE ADMISSION BASED ON

20    POSSESSION PLUS.

21                  THESE ARE DOCUMENTS, THEY'RE PHYSICALLY

22    SIGNED BY THE DEFENDANT.  HE'S INCLUDED INFORMATION IN

23    THEM.  THE GOVERNMENT JUST BELIEVES IT IS CRYSTAL CLEAR

24    THAT THESE ARE PARTY ADMISSIONS.

25             THE COURT:  TO WHAT -- WELL, LOOKING AT
```

1     EXHIBIT 754, WHAT'S ITS RELEVANCE?

2               MR. HUGHES:  IN THIS, YOUR HONOR, THE

3     DEFENDANT HAS PROVIDED INFORMATION -- ONE, IT'S

4     RELEVANT SIMPLY TO SHOW THAT THE DEFENDANT HAS OPENED

5     THIS ACCOUNT.

6               AND, TWO, IT IS RELEVANT TO SHOWING THE

7     PURPOSE OF THE ACCOUNT.

8               DEFENSE COUNSEL HAS STATED THAT THIS

9     ACCOUNT WAS OPENED PURELY TO HOLD FUNDS THAT WERE BEING

10    HELD IN TRUST BY THE DEFENDANT.

11              THIS IS RELEVANT TO SHOWING THE ACTUAL

12    PURPOSE OF OPENING THE ACCOUNT, WHICH WAS INVESTING THE

13    FUNDS, AS WELL AS SHOWING REPRESENTATIONS MADE BY THE

14    DEFENDANT TO THE BANK IN ORDER TO OPEN THAT ACCOUNT.

15              IF I COULD DIRECT YOU TO BATES NUMBERED

16    PAGE 872141.  IF YOU LOOK AT QUESTION 1 IN THE

17    QUESTIONNAIRE THAT'S BEEN FILLED OUT, DEFENDANT HAS

18    FALSELY REPRESENTED TO THE BANK THAT HE IS NOT A

19    UNITED STATES CITIZEN, AND HE DOES NOT RESIDE IN THE

20    UNITED STATES.

21              THE EVIDENCE HAS SHOWN DEFENDANT WAS BOTH

22    A UNITED STATES CITIZEN AND RESIDING IN THE

23    UNITED STATES WHEN THESE REPRESENTATIONS WERE MADE.

24              MR. HANUSZ:  ONE OF THE ISSUES HERE, YOUR

25    HONOR, IS, THESE DIDN'T COME FROM THE BANK.  WE DON'T

1    KNOW WHETHER THESE WERE -- WE DON'T KNOW WHAT

2    REPRESENTATIONS WERE MADE TO THE -- IT'S JUST -- THE

3    PROBLEM IS WITH THESE DOCUMENTS, NUMBER ONE, THEY

4    WEREN'T ADDRESSED BEFORE.

5              BUT, NUMBER TWO, THE GOVERNMENT IS

6    OFFERING THEM FOR THE TRUTH OF THE MATTER ASSERTED.

7    AND WE DON'T KNOW WHAT, IF ANY, REPRESENTATIONS WERE

8    MADE.

9              MR. HUGHES:  THE POSITION OF GOVERNMENT IS

10   UNCHANGED.  THESE ARE SIGNED DOCUMENTS FOUND IN THE

11   DEFENDANT'S RESIDENCE.

12             THE COURT:  WHERE IS 754 SIGNED?

13             MR. HUGHES:  IF YOU COULD TURN TO PAGE 872143

14   ABOVE "CUSTOMER SIGNATURE."

15             MR. HANUSZ:  I WOULD NOTE THAT THAT'S NOT IN

16   ENGLISH.  I DON'T KNOW IF WE'LL HAVE TESTIMONY

17   REGARDING THE TRANSLATION.  I DON'T THINK THIS IS A

18   DOCUMENT THAT'S BEEN SUBMITTED FOR TRANSLATION.

19             THE COURT:  I UNDERSTAND YOUR POSITION.

20             THERE'S A NAME BELOW THAT.  IT'S IN ALL

21   CAPS.

22             I'M GOING TO OVERRULE THE OBJECTION WITH

23   RESPECT TO THESE RECORDS ON THE SAME -- THESE RECORDS

24   THAT WERE OBTAINED -- AS I UNDERSTAND IT, THE ISSUE

25   BEING, THE RECORDS OBTAINED DURING THE SEARCH OF THE

1   DEFENDANT'S RESIDENCE, I'M GOING TO OVERRULE THE

2   OBJECTION TO THEM THAT'S BEEN RAISED AS TO THE

3   FINANCIAL RECORDS WHERE THE DEFENDANT HAD SIGNED THEM

4   OR THERE'S SOME OTHER INDICIA OF AUTHENTICITY FROM THE

5   RECORDS, WHICH I THINK I PREVIOUSLY ADDRESSED.

6              SECOND, WITH RESPECT TO THE PASSPORT, IS

7   IT A PASSPORT CARD THAT DOES NOT SHOW TRAVEL, OR IS IT

8   A PASSPORT THAT DOES REFLECT VISA STAMPS?

9              MR. HANUSZ:  IT DOES NOT ADDRESS TRAVEL.  IT'S

10  LIKE A DRIVER'S LICENSE -- IT LOOKS LIKE A DRIVER'S

11  LICENSE, YOUR HONOR.

12             MS. SARTORIS:  I THINK WITH THE REMAINING

13  BUCKET OF THE OBJECTIONS THAT THE DEFENDANT RAISED,

14  WE'LL JUST HAVE TO LOOK AT THEM ONE BY ONE BECAUSE

15  EACH -- THEY DON'T REALLY FIT INTO A BUCKET.  THEY'RE

16  INDIVIDUAL OBJECTIONS.

17             BUT WITH RESPECT TO THAT ONE, THE

18  GOVERNMENT, UPON RECEIVING DEFENDANT'S OBJECTIONS AND

19  HAVING CONTEMPLATED THE PRIOR-FILED OBJECTIONS, DOES

20  NOT OBJECT TO NOT INTRODUCING IT INTO EVIDENCE.  SO WE

21  DO NOT NEED TO INTRODUCE THAT PARTICULAR CARD INTO

22  EVIDENCE.

23             THE COURT:  WHAT ABOUT THE DRIVER'S LICENSE?

24             MS. SARTORIS:  YOUR HONOR, THE DRIVER'S

25  LICENSE IS VIEWED DIFFERENTLY.

54

1          THE COURT:  WHAT EXHIBIT IS THAT, PLEASE?

2          MR. HANUSZ:  727, YOUR HONOR.

3          THE COURT:  THANK YOU.

4          MS. SARTORIS:  SO, YOUR HONOR, THE DRIVER'S

5    LICENSE -- I'M TURNING TO IT MYSELF.

6                THE GOVERNMENT WOULD SEEK TO INTRODUCE

7    THE DRIVER'S LICENSE.  IT IS DIFFERENT IN KIND TO THE

8    PASSPORT CARD, WHICH IS A CARD THAT DOESN'T SHOW ANY

9    TRAVEL BY THE DEFENDANT IN PARTICULAR.

10               HERE, WE HAVE A DRIVER'S LICENSE THAT HAS

11   DEFENDANT'S PHOTOGRAPH.  AND IT SHOWS THAT IT WAS

12   ISSUED ON JULY 10TH, 2013.

13               IT COVERS A PERIOD OF TIME BEYOND THAT.

14   AND IT'S A DRIVER'S LICENSE FOR THE PEOPLE'S REPUBLIC

15   OF CHINA.

16               THIS HELPS THE GOVERNMENT TO ESTABLISH

17   THAT DEFENDANT WAS THERE.  HE WAS LIVING THERE AND WAS

18   INVESTED TO A DEGREE OF, HE EVEN WENT TO GET A DRIVER'S

19   LICENSE.

20               THE JURY IS GOING TO BE SEEING A LOT OF

21   DOCUMENTS IN THIS CASE.  AND I THINK SOME OF THE JURORS

22   MIGHT FIND IT VALUABLE TO SEE A DRIVER'S LICENSE WITH A

23   PHOTOGRAPH ON IT.  I MEAN, THAT IS A UNIQUE PIECE OF

24   EVIDENCE, WHICH COULD GIVE THEM A DATA POINT OF

25   UNDERSTANDING THE DEFENDANT LIVED THERE.

55

```
 1              THE COURT:  WELL, IS IT DISPUTED BY THE

 2    DEFENDANT THAT HE WAS IN CHINA?

 3              MR. HANUSZ:  IT'S NOT, YOUR HONOR.

 4              THE COURT:  WHEN HE WAS THE PRESIDENT OF THE

 5    ENTITY THERE, IS THAT WHEN -- I MEAN, AMONG OTHER

 6    TIMES, HE WAS THERE AT THAT TIME?

 7              MR. HANUSZ:  RIGHT.

 8                   THE PRIMARY OBJECTION IS, JUST THIS

 9    DOESN'T SHOW ANYTHING.  THERE'S NO FUNDAMENTAL

10    DIFFERENCE OF OPINION, YOUR HONOR.

11              MS. SARTORIS:  YOUR HONOR, THERE IS NO

12    PREJUDICE TO THE DRIVER'S LICENSE TO THE DEFENDANT,

13    PARTICULARLY IF DEFENSE THINKS IT DOESN'T SHOW

14    ANYTHING.

15                   IT'S THE GOVERNMENT'S POSITION THAT IT

16    DOES SHOW DEFENDANT WITH HIS PICTURE ON A DOCUMENT

17    ISSUED BY THE PEOPLE'S REPUBLIC OF CHINA.  THAT SHOWS

18    THAT HE WAS LIVING THERE AND HAD A DRIVER'S LICENSE,

19    WHICH DOES GO TO ESTABLISH HIS INVESTMENT IN LIVING

20    OVERSEAS.

21              MR. HANUSZ:  THE GOVERNMENT IS SEEKING TO

22    INTRODUCE HIS PASSPORT, WHICH HAS A VISA IN IT.  AT

23    SOME POINT, IT'S JUST TOO MUCH.

24              THE COURT:  THEY'VE WITHDRAWN THE PASSPORT.

25              MR. HANUSZ:  THE CARD.  WE'VE --
```

1          THE COURT:  JUST A MINUTE.

2              WITH RESPECT TO EXHIBIT 727, I WOULD

3     SUSTAIN -- I WILL SUSTAIN THE OBJECTION FOR THIS

4     REASON:

5              PUTTING ASIDE THE AUTHENTICITY, WHICH I

6     DON'T THINK IS DISPUTED.  AND ASSUMING THIS WOULD BE

7     TRANSLATED, WHICH I ASSUME WOULDN'T BE AN ISSUE,

8     PUTTING THAT -- SO NOT ON THOSE GROUNDS, BUT IT'S 403

9     GROUNDS.

10             I DON'T THINK THE PROBATIVE VALUE OF THIS

11    OUTWEIGHS ITS POTENTIAL PREJUDICIAL EFFECT BECAUSE A

12    JUROR MIGHT CONCLUDE, UPON SEEING A DRIVER'S LICENSE

13    THAT IS STILL VALID ACCORDING TO THE DATES HERE, JULY

14    10, 2019, IT COULD LEAD TO AN INFERENCE OF SOME

15    RELATIONSHIP BETWEEN THE DEFENDANT AND THE PEOPLE'S

16    REPUBLIC OF CHINA THAT I DON'T THINK IS -- THAT I THINK

17    RAISES THE PREJUDICIAL ISSUE THAT -- WHEN IT'S NOT

18    NEEDED BECAUSE IT'S NOT REALLY BEING OFFERED FOR

19    ANYTHING -- THE -- IT'S BEING OFFERED TO SHOW THAT HE

20    WAS IN CHINA, WHICH ISN'T DISPUTED.  THAT'S MY

21    THINKING.

22             AND I'M NOT GUIDED -- NEVER MIND.

23         MR. HANUSZ:  YOUR HONOR, I THINK THE COURT

24    JUST PUT THE FINGER ON KIND OF THE TOTALITY OF THE

25    ISSUES THAT THE DEFENSE RAISES HERE TODAY.  IT'S A

```
1     THREAD THAT RUNS THROUGH MR. MATTIS, THROUGH THE

2     GOVERNMENT'S OPENING, THROUGHOUT THIS CASE.  IT'S ABOUT

3     CHINA.  AND THAT'S -- AND THE MORE IT'S ABOUT CHINA AND

4     NOT ABOUT DR. SHIH, THAT'S A PROBLEM.

5               THE COURT:  OKAY.  I UNDERSTAND.

6               MR. HANUSZ:  THAT'S ALL I'LL SAY.

7               THE COURT:  THE CASE DOES, OBVIOUSLY, INVOLVE

8     CHINA BECAUSE THE ENTITIES ARE IN -- THE ITEMS WERE

9     ALLEGEDLY EXPORTED THERE AND -- DIRECTLY OR INDIRECTLY.

10    AND THE ENTITY LIST RELATES TO THAT COUNTRY.  IT'S

11    NOT -- THERE IS RELEVANCE TO THE COUNTRY OF CHINA.  I'M

12    JUST LOOKING AT THIS DRIVER'S LICENSE, AND I DON'T FIND

13    A COMPELLING REASON TO ALSO -- I THINK, IF I'M NOT

14    MISTAKEN, IN THIS PHOTOGRAPH, OBVIOUSLY, THE DEFENDANT

15    HAS A MUSTACHE.  I DON'T THINK HE PRESENTLY DOES.

16                   IS THAT RIGHT?

17              MR. HANUSZ:  I THINK THAT'S CORRECT, YOUR

18    HONOR.

19              MS. SARTORIS:  HE DID ONLY REMOVE HIS MUSTACHE

20    AS TO THE LAST HEARING, BUT I DON'T KNOW --

21              THE COURT:  WHETHER HE USED TO HAVE A MUSTACHE

22    OR NOT IS NOT RELEVANT TO THIS CASE.  THAT'S MY POINT.

23              MS. SARTORIS:  YOUR HONOR, THE DEFENSE DID

24    FILE A NUMBER OF OBJECTIONS.  IT IS TRUE, WE'VE GREATLY

25    NARROWED.  THERE ARE JUST A FEW LEFT.
```

58

1          THE COURT:  WHAT ARE THEY?

2          MS. SARTORIS:  SO WE COULD GO THROUGH THEM.

3              WITH RESPECT TO 687, THE GOVERNMENT --

4          THE COURT:  EXCUSE ME.

5              WHICH ARE THE REMAINING ONES, 687 AND

6    WHAT ELSE?

7          MS. SARTORIS:  687, 690, 691 AND 696.

8              I BELIEVE WE'VE COVERED 707.

9          THE COURT:  THERE'S 10 MORE AFTER THAT.

10             HOW MANY MORE DO YOU THINK I NEED TO

11   RESOLVE RIGHT NOW?

12         MS. SARTORIS:  718, 725, 726 AND THEN 787-A.

13             THERE ARE A COUPLE THAT THE DEFENDANT

14   OBJECTED TO THAT THE GOVERNMENT AGREED WE WILL NOT

15   ADMIT.

16         THE COURT:  THE ONES IN WHICH YOU THINK THE

17   RULINGS ARE NEEDED ARE:  687, 690, 691, 696, 718, 725,

18   726 AND 787-A?

19         MS. SARTORIS:  THE GOVERNMENT WILL AGREE TO

20   NOT INTRODUCE 687.

21         THE COURT:  SO IT'S THE SEVEN OTHERS, 690

22   THROUGH 787-A.

23         MR. HANUSZ:  I'M NOT SURE -- I'M HAPPY TO

24   LEAVE IT TO THE COURT, BUT I'M NOT SURE THE COURT NEEDS

25   TO RESOLVE THESE RIGHT NOW.  TOTALLY UP TO THE COURT,

59

1    OBVIOUSLY.

2                    THERE IS ONE EXHIBIT, WHICH IS A C.D.  I

3    THINK THAT WAS 736.  BASED ON CONVERSATIONS I HAD WITH

4    MR. SHOBAKI, I BELIEVE THE GOVERNMENT IS GOING TO

5    WITHDRAW THAT EXHIBIT.

6              MS. SARTORIS:  THAT'S CORRECT.

7              MR. HANUSZ:  IT WAS A PHOTO COPY OF A

8    MINI-DISC.

9              MS. SARTORIS:  THAT'S CORRECT.

10             THE COURT:  ARE ALL THESE SEVEN EXHIBITS ONES

11   THAT YOU EXPECT TO OFFER TOMORROW OR SHOW WITNESSES

12   TOMORROW?

13             MS. SARTORIS:  IF MS. MILLER IS ON THE STAND,

14   THEN, YES.

15             THE COURT:  WHAT'S THE ISSUE ON 690?

16             MR. HANUSZ:  I BELIEVE THAT'S AN

17   E-MAIL FROM --

18             THE COURT:  IT'S A LETTER, FEBRUARY 21, 2007,

19   SIGNED BY THE DEFENDANT?

20             MS. SARTORIS:  YES, YOUR HONOR.

21                  AND DEFENSE OBJECTED ON HEARSAY AND

22   RELEVANCE GROUNDS.

23                  I THINK THE HEARSAY GROUND COULD BE

24   ADDRESSED BY THE FACT THIS IS A DOCUMENT SIGNED BY

25   DEFENDANT.  SO IT'S NOT HEARSAY.

1          AND WITH RESPECT TO RELEVANCE, THIS

2    DOCUMENT SHOWS DEFENDANT ADVISING -- DISCUSSING

3    CONTRASTS THAT HE HAD WHILE AT MMCOMM WITH CERTAIN

4    MILITARY ENTITIES IN THE UNITED STATES.  AND IT GOES TO

5    A COUPLE OF DIFFERENT THINGS.

6          ONE IS, DEFENDANT, AS PRESIDENT OF

7    MMCOMM, HE HAS KNOWLEDGE OF MILITARY CONTRACTS AND

8    EXPERIENCE IN THE REALM.

9          HE IS ARGUING, IT APPEARS, THAT HE'S SORT

10   OF A SIMPLE RESEARCHER.  AND BASED ON SOME OF THE

11   OBJECTIONS AND JURY INSTRUCTIONS THE DEFENDANT IS

12   PROPOSING, ONE MIGHT THINK THAT THAT IS WHAT HE'S GOING

13   TO TRY TO ASK THE JURY TO BELIEVE, IS THAT THAT'S ALL

14   HE WAS DOING, OR PERHAPS THAT HE WAS WORKING ON CELL

15   PHONES OR ELECTRONIC VEHICLES.  WE SHOULD BE ABLE TO

16   SHOW THAT HIS WORK EXPERIENCE INVOLVED MILITARY

17   CONTRACTS.

18         THE COURT:  MMCOMM WAS THE ENTITY OWNED BY THE

19   DEFENDANT THAT HE SOLD TO HONEYWELL?

20         MS. SARTORIS:  YES, YOUR HONOR.

21         THIS DOCUMENT EVEN SAYS HE WAS PRESIDENT

22   OF IT.

23         MR. HANUSZ:  WE'LL WITHDRAW THE HEARSAY

24   OBJECTION.

25         BUT IN TERMS OF, I THINK IT'S RELEVANCE

1    AND 403, WE KNOW NOTHING ABOUT THE NATURE OF THESE

2    CONTRACTS.  AND FOR ALL ANYONE KNOWS, THESE CONTRACTS

3    RELATE TO COMMUNICATIONS -- NON-MILITARY COMMUNICATIONS

4    DEVICES.

5                    IT'S A CLEAR 403 ISSUE.  IT'S ALL ABOUT

6    GETTING NAVAL RESEARCH, AIR FORCE RESEARCH,

7    WRIGHT-PATTERSON IN FRONT OF THE JURY WITHOUT ANY

8    CONTEXT FOR WHAT THESE CONTRACTS CONSISTED OF.

9                    THE COURT:  WHY IS IT RELEVANT THAT THE

10   DEFENDANT SOLD MMCOMM TO HONEYWELL AND THAT, AT THE

11   TIME OF THE SALE, THERE WERE CERTAIN CONTRACTS IN PLACE

12   BETWEEN MMCOMM AND THESE GOVERNMENTAL ENTITIES?

13                   MS. SARTORIS:  YOUR HONOR, THE DEFENDANT --

14   YOU MAY RECALL FROM THE OPENING STATEMENT, THE DEFENSE

15   COUNSEL DISCUSSING HOW DEFENDANT HAS A LONG HISTORY.

16   AND WHEN HE GOT TO THE PORTION OF ABOUT HOW HE WENT TO

17   WORK FOR CHENGDU GASTONE, THE DISCUSSION WAS, WELL, OF

18   COURSE, THEY NEEDED AN ENGINEER, AND SO THEY HIRED HIM

19   BECAUSE OF HIS EXPERIENCE.

20                   AND I THINK THE GOVERNMENT HAS AN

21   OBLIGATION TO HELP THE JURY TO UNDERSTAND SOME OF THE

22   EXPERIENCE THE DEFENDANT HAD, BECAUSE WHAT WILL ALSO BE

23   INTRODUCED INTO EVIDENCE, THROUGH DEFENDANT'S E-MAILS

24   AND POWER POINTS, ARE DISCUSSIONS OF COMMERCIAL AND

25   MILITARY USES AND OBJECTIVES OF CHENGDU GASTONE.  SO

62

1    THE GOVERNMENT CAN SHOW THAT THIS IS ACTUALLY -- THE

2    MILITARY ASPECT IS WITHIN THE EXPERIENCE OF DEFENDANT.

3    IT IS CONSISTENT WITH HIS EXPERIENCE THAT HE HAD THIS

4    KNOWLEDGE OF INVOLVEMENT IN MILITARY.  HE WASN'T

5    SOMEBODY WHO WAS JUST DOING ELECTRIC CARS OR CELL

6    PHONES.

7         MR. HANUSZ:  WITHOUT ANY CONTEXT FOR THOSE

8    CONTRACTS, YOUR HONOR, IT'S A CLEAR 403 ISSUE.

9         THE COURT:  I UNDERSTAND.

10        I'M GOING TO OVERRULE THE OBJECTION TO

11   THIS ON THE -- I THINK THIS -- TO BE CLEAR, THAT

12   DOESN'T MEAN THERE'S -- I'M GOING TO -- THERE'S GOING

13   TO BE A LOT OF TESTIMONY ABOUT THIS OR TESTIMONY ABOUT

14   WHAT THESE CONTRACTS WERE.  I DON'T HAVE THAT IN MIND

15   AT ALL.

16        IT'S SIMPLY THAT THIS IS PART OF THE SALE

17   OF THE ENTITY TO HONEYWELL.  AND IT DOES -- I THINK IT

18   DOES -- IT'S -- THE 403 ISSUE IS ADDRESSED BECAUSE OF

19   THE ASSERTION BY THE DEFENDANT HERE THAT THE ACTIONS

20   HERE INVOLVED ACADEMIC, NOT COMMERCIAL WORK, AMONG

21   OTHER THINGS.

22        WHAT'S THE NEXT ONE, 691?

23        IS THAT DIFFERENT?

24        MS. SARTORIS:  YES, YOUR HONOR.

25        DEFENDANT HAS OBJECTED TO THIS ONE ON

63

1    HEARSAY AND RELEVANCE GROUNDS AS WELL.

2                HERE, AGAIN, WE HAVE A FORM.  IT'S FILLED

3    OUT BY DEFENDANT, HIS HANDWRITING.  AND SO, AGAIN, THE

4    HEARSAY ISSUE SHOULD BE RESOLVED FOR THAT REASON AS

5    DEFENDANT'S STATEMENT.

6                THIS DOCUMENT, THE RELEVANCE IS VERY --

7    WHEN THE COURT HAS AN OPPORTUNITY TO GO THROUGH IT, YOU

8    WILL SEE IT SHOWS DEFENDANT'S KNOWLEDGE OF EXPORT

9    CONTROLS.  HE CHECKS, IN LINE 1, THAT THE COMPANY THAT

10   HE IS SELLING TO HONEYWELL EXPORTED GOODS IN

11   TECHNOLOGIES.  LINE 2 DESCRIBES HOW IT HAD COMMODITIES

12   THAT WERE SUBJECT TO THE E.A.R.  IT SHOWS DEFENDANT AS

13   ONE OF THE EXPORT COMPLIANCE PERSONNEL.

14           THE COURT:  I UNDERSTAND.

15               MR. HANUSZ?

16          MR. HANUSZ:  SO A COUPLE OF THINGS.

17               FIRST OF ALL, IT'S NOTABLE THAT THIS

18   WASN'T INCLUDED IN THE MATERIALS THAT WERE -- WAS

19   RECEIVED BY THE GOVERNMENT FROM HONEYWELL.  BUT OUR

20   OBJECTIONS HEARSAY.  ITS RELEVANCE.  DON'T KNOW WHEN

21   THIS WAS FILLED OUT.  I UNDERSTAND THE GOVERNMENT'S

22   CONTENTION THAT IT WAS DR. SHIH.

23           THE COURT:  WELL, MY VIEW ON THIS IS SIMILAR,

24   THAT I WOULD OVERRULE THE OBJECTION.

25               IT'S A DOCUMENT THAT WAS OBTAINED FROM

64

1    THE RECORDS OF DR. SHIH.  I THINK IT DOES -- IT HAS HIS

2    NAME WRITTEN IN IT.  WHO WROTE IT?  I DON'T KNOW.  AND

3    THAT'S ON PAGE 1.  THERE'S A HANDWRITTEN STATEMENT

4    THERE.

5              I THINK THIS DOES -- HIS NAME APPEARS

6    ELSEWHERE ON THE THIRD PAGE OF THE DOCUMENT.  I DON'T

7    KNOW -- AGAIN, I HAVE NO IDEA WHOSE HANDWRITING THAT

8    IS.  BUT I THINK THIS DOES BEAR ON THE ISSUE OF

9    WILLFULNESS AND KNOWLEDGE.

10             IS THE NEXT ISSUE 696?

11             MR. HANUSZ:  YES, YOUR HONOR.

12             MS. SARTORIS:  THIS IS A DOCUMENT OBJECTED TO

13   ON HEARSAY AND RELEVANCE.

14             THE GOVERNMENT IS NOT OFFERING IT FOR THE

15   TRUTH OF THE MATTER ASSERTED, BUT INSTEAD FOR THE

16   EFFECT ON THE DEFENDANT.  IT'S AN E-MAIL SENT TO HIM,

17   FOUND IN HIS RESIDENCE THAT HE RECEIVED, PRINTED OUT

18   AND HAD STORED AT HIS HOUSE.

19             AND IT GOES TO SHOW THAT, WHEN HE LEFT

20   HONEYWELL, THAT HONEYWELL REMINDED THEM THAT THEY HAD

21   PROPRIETARY RIGHTS THAT HE NEEDED TO ADHERE TO, THAT HE

22   HAD -- WAS NOT TO DISCLOSE INFORMATION RELATING TO

23   HONEYWELL'S BUSINESSES AS HE LEFT THE COMPANY.

24             THE COURT:  WHY IS THAT RELEVANT TO THE ISSUES

25   HERE?

1    MS. SARTORIS:  IT'S RELEVANT BECAUSE WE HAVE

2  U.S. COMPANY B HERE WHO THE GOVERNMENT HAS ALLEGED THAT

3  DEFENDANT DEFRAUDED.  AND IT GOES TO SHOW, AGAIN, TO

4  PAINT THE WHOLE PICTURE OF DEFENDANT SHIH AS A

5  KNOWLEDGEABLE BUSINESSMAN WHO UNDERSTOOD THAT WHEN HE'S

6  OPERATING IN THESE TYPES OF BUSINESSES, THAT THERE'S

7  VERY SENSITIVE TECHNOLOGY AND BUSINESSES AT PLAY.

8    THE COURT:  I WOULD SUSTAIN THE OBJECTION.

9  403.

10    THIS IS LARGELY -- I INTERPRET THIS

11  LARGELY AS A FORM LETTER.

12    IT DOES REMIND THE DEFENDANT OF CERTAIN

13  OBLIGATIONS THAT HE HAS, PERHAPS PURSUANT TO A WRITTEN

14  EMPLOYMENT AGREEMENT.  BUT IT'S REFERRING TO HIS

15  TERMINATION FROM HONEYWELL.

16    MS. SARTORIS:  YOUR HONOR, HE RESIGNED.

17    THE COURT:  IT SAYS, "THE OBLIGATION SURVIVES

18  THE TERMINATION OF YOUR EMPLOYMENT HERE."

19    I THINK THE PROBATIVE VALUE IS OUTWEIGHED

20  BY THE POTENTIAL PREJUDICIAL EFFECT.  AND I DON'T THINK

21  THAT I'M PERSUADED THIS BEARS, THE WAY THE OTHER

22  DOCUMENT DOES, ON THE ISSUE OF KNOWLEDGE ABOUT EXPORT

23  CONTROLS.

24    SO THAT TAKES US TO, WHAT, 718?

25    MR. HANUSZ:  YES, YOUR HONOR.

```
1          MS. SARTORIS:  YOUR HONOR, THIS IS RELEVANT

2    BECAUSE IT SHOWS -- IT'S A DOCUMENT WRITTEN BY THE

3    DEFENDANT.  AND IN IT, HE IS WRITING DOWN, IN HIS OWN

4    HANDWRITING, THAT HE IS PRESIDENT AND CEO OF CHENGDU

5    GASTONE AND WHAT HIS SALARY IS.  SO IT ESTABLISHES THE

6    DEFENDANT, IN HIS OWN HANDWRITING, THAT HE WORKS THERE.

7          THE COURT:  IS THAT DISPUTED?

8          MR. HANUSZ:  NO.

9          THE COURT:  IS HIS SALARY DISPUTED?

10          MR. HANUSZ:  NO.

11          MS. SARTORIS:  WE DO HAVE TAX ALLEGATIONS IN

12    THIS CASE.

13              BUT I WILL ALSO TELL YOU THAT IT'S

14    RELEVANT FOR ANOTHER REASON.  FOR EXAMPLE, WHEN WE WERE

15    LOOKING AT THE PRIOR EXHIBIT, 691, AND BOTH DEFENSE

16    COUNSEL AND THE COURT OPINED THAT IT WASN'T CLEAR WHO

17    WROTE THE DOCUMENT.

18              WHEN YOU LOOK AT THIS DOCUMENT, THE WAY

19    THAT THE WORD "YEARS" IS WRITTEN, IT MATCHES THE WAY

20    THE WORD "YEARS" IS WRITTEN ON THE OTHER DOCUMENT.  SO

21    THERE ARE TIMES WHEN WE'RE INTRODUCING DEFENDANT'S

22    DOCUMENTS WHERE THE JURY -- HAVING SOME SAMPLING OF HIS

23    WRITING, IT WILL BE HELPFUL FOR THE JURY TO UNDERSTAND

24    AND JUDGE WHO WROTE WHICH DOCUMENTS.

25          THE COURT:  JUST A MINUTE.
```

67

```
1              WITH RESPECT TO THE SALARY, DOES THAT --
2     YOU MENTIONED THE TAX COUNTS.
3              IS THE SALARY -- DO YOU CONTEND THAT THE
4     SALARY IS RELEVANT TO THE TAX COUNTS?
5         MR. HUGHES:  NO, YOUR HONOR.
6              THE AMOUNT OF THE TRADITIONAL SALARY
7     RECEIVED BY DEFENDANT FROM THE CHENGDU GASTONE IS NOT
8     IN DISPUTE IN THIS CASE.
9         THE COURT:  OKAY.  THEN I DON'T SEE THE -- IN
10    TERMS OF COMPARING HANDWRITING, YOU'RE RIGHT,
11    LAYPERSONS CAN COMPARE SIGNATURES.  AND FROM THAT, ONE
12    COULD INFER THEY CAN COMPARE HANDWRITING.  BUT I THINK
13    THAT'S A PRETTY LIMITED REASON TO ADMIT THIS.
14             AND IT'S TALKING ABOUT GUARANTEEING THE
15    OBLIGATION OF A NEPHEW.  I JUST DON'T SEE THAT THE
16    RELEVANT -- WHAT THE RELEVANCE IS.  AND, THEREFORE, I
17    DON'T HAVE TO GET TO THE SOCIAL SECURITY NUMBER AND THE
18    NEED TO REDACT IT.  SO I'LL EXCLUDE THIS.
19             WHAT'S THE NEXT ONE?
20        MR. HANUSZ:  725, YOUR HONOR.
21             725 AND 726 ARE SIMILAR, YOUR HONOR.
22        THE COURT:  OKAY.  THESE WERE, AGAIN, OBTAINED
23    FROM THE DEFENDANT'S RESIDENCE?
24        MR. HANUSZ:  CORRECT, YOUR HONOR.
25        THE COURT:  IS IT DISPUTED WHO WROTE THEM?
```

68

1          MR. HANUSZ:  IT'S NOT, YOUR HONOR.

2          THE COURT:  DID THE DEFENDANT WRITE THEM?

3          MR. HANUSZ:  IT APPEARS SO.

4          THE COURT:  SO WHAT'S THE RELEVANCE?

5          MS. SARTORIS:  YOUR HONOR, YOU'LL NOTE, WITH

6     RESPECT TO CONCERNS ABOUT PROVIDING TOO MUCH TO THE

7     JURY, THE GOVERNMENT HAS REALLY MADE AN EFFORT TO

8     REDUCE THE AMOUNT OF INFORMATION THAT IT'S PROVIDING TO

9     THE JURY FROM DEFENDANT'S RESIDENCE.  THERE WAS VOLUMES

10    OF INFORMATION SEIZED.

11          WITH RESPECT TO THIS NOTEBOOK, THIS FIRST

12    NOTEBOOK, EXHIBIT 725, THE ONE PAGE OF THIS ENTIRE

13    NOTEBOOK IS WHAT THE GOVERNMENT IS OFFERING TO

14    INTRODUCE.

15          AND THAT'S BECAUSE THE GOVERNMENT WANTS

16    TO SHOW THAT, IN THIS PAGE, THAT MMCOMM, IN DEFENDANT'S

17    OWN NOTES, HE WRITES "50 PERCENT COMMERCIAL AND 50

18    PERCENT MILITARY."  AND UNDERNEATH THE "MILITARY," HE

19    "WRITES RADAR DESIGN" AND "ADVANCED MODULE."

20          THIS IS HIGHLY RELEVANT TO THE WORK HE

21    WAS DOING AT CHENGDU GASTONE, WHICH ALSO APPEARS TO

22    HAVE HAD A COMMERCIAL AND MILITARY DUAL USE.

23          THIS IS THE WORLD THAT HE WORKED IN.  HE

24    WAS FAMILIAR WITH IT.  HE HAD A LONG HISTORY OF

25    EMPLOYMENT.  AND THIS IS HIS OWN BUSINESS DOING 50

1    PERCENT COMMERCIAL AND 50 PERCENT MILITARY BASED ON HIS

2    OWN NOTES.

3              MR. HANUSZ:  YOUR HONOR, NONE OF THESE

4    DOCUMENTS GO TO THE ISSUE OF WHETHER DR. SHIH WORKED

5    FOR CHENGDU GASTONE.  THEY'RE IRRELEVANT TO THE

6    LICENSING COUNT, WHICH IS REALLY WHAT COUNTS 1 AND 2

7    ARE.

8                   IT'S ALSO WORTH NOTING THAT MMCOMM CEASED

9    TO EXIST AS A CORPORATION WELL BEFORE DR. SHIH BEGAN

10   ANY EMPLOYMENT WITH CGTC, WHICH WOULD HAVE BEEN IN

11   2011.  AND MMCOMM CEASED TO EXIST, I BELIEVE, IN 2007.

12             MS. SARTORIS:  YOUR HONOR, THAT'S IN THE TIME

13   PERIOD OF THE CONSPIRACY.

14             THE COURT:  JUST A MINUTE.

15                  BUT MMCOMM WAS ACQUIRED BY HONEYWELL.

16   AND THEN DR. SHIH CONTINUED TO WORK FOR HONEYWELL

17   FOLLOWING THE SALE?

18             MR. HANUSZ:  CORRECT.

19             THE COURT:  WAS HE CONTINUING TO DO THE SAME

20   SORT OF THINGS THAT HE HAD PREVIOUSLY DONE IN

21   CONNECTION WITH MMCOMM?

22             MR. HANUSZ:  WE CAN'T -- NOT PREPARED TO SPEAK

23   TO THAT, YOUR HONOR.

24                  THE BIGGER ISSUE IS JUST, IT'S THE

25   MILITARY REFERENCES IN THIS DOCUMENT THAT --

1          THE COURT:  IN OUR -- IN THE PRIOR -- SOME

2     TIME AGO AND TODAY, WE WERE DISCUSSING THE ISSUE OF

3     LINKAGE.  I DID THAT IN MY COLLOQUY WITH MR. ROLLINS.

4     AND I WAS LOOKING FOR EVIDENCE THAT WOULD LINK THE

5     DEFENDANT WITH PARTICULAR ENTITIES ABOUT WHICH THE

6     EXPERT MIGHT TESTIFY.

7          IT SEEMS TO ME THE SAME LOGIC APPLIES

8     HERE.  THIS IS SAYING THAT AT THE TIME MMCOMM -- MMCOMM

9     WAS OPERATING, IT WAS DOING SOME WORK WITH THE

10    MILITARY.  WHAT THAT IS?  I CAN'T TELL.

11          BUT LET'S ASSUME, HYPOTHETICALLY, IT WAS

12    GOVERNMENT CONTRACTING TO PROVIDE CERTAIN THINGS TO THE

13    MILITARY.  I'M NOT QUITE -- I THINK IT'S A PRETTY

14    TENUOUS LINK TO LINK DR. -- THE DEFENDANT TO AN ENTITY

15    AT ISSUE HERE THAT WOULD SHOW -- THAT GOES, AGAIN, TO

16    HIS KNOWLEDGE ABOUT EXPORTING AN ITEM FOR WHICH A

17    LICENSE WAS REQUIRED.

18          MS. SARTORIS:  YOUR HONOR, IF I MAY?

19          THE CONSPIRACY AND THE DEFENDANT'S WORK

20    AT CHENGDU GASTONE, WHEN YOU LOOK AT THE DOCUMENTS WITH

21    RESPECT TO CHENGDU GASTONE, AND IN PARTICULAR LIKE SOME

22    OF THE POWER POINT SLIDES, THEY SHOW AN INTENT.  THEY

23    SHOW CELL PHONES, AND THEY SHOW MISSILES.

24          AND SO THE GOVERNMENT ANTICIPATES THAT

25    DEFENDANT MIGHT SAY, RIGHT, THAT I WAS INTERESTED IN

```
1    THE CELL PHONES, AND THAT'S MY HISTORY.  AND I THINK
2    THE GOVERNMENT NEEDS THE OPPORTUNITY TO ESTABLISH THAT
3    THE DEFENDANT HAS A HISTORY OF WORKING AND LOOKING AND
4    THINKING IN BUSINESS IN TERMS OF COMMERCIAL AND
5    MILITARY APPLICATIONS, JUST AS HE DID AT CHENGDU
6    GASTONE, WHICH IS PART OF THE CONSPIRACY.
7              THE COURT:  MY VIEW ON THIS IS THE FOLLOWING:
8              I DON'T HAVE MUCH INFORMATION ABOUT WHEN
9    THIS WAS GENERATED.  AND FOR THE REASONS THAT I'VE
10   EXPLAINED, I THINK THAT RAISES ISSUES IN TERMS OF
11   RELEVANCE.
12             BUT I WOULD SAY THE FOLLOWING:  THE
13   GOVERNMENT CAN RENEW ITS REQUEST.  AND I WILL REVIEW,
14   AGAIN, MY CURRENT RULING THAT -- TWO THINGS.
15             ONE, IF YOU -- THAT THIS COULD BE
16   INTRODUCED, BUT WITH THE "MILITARY" REDACTED SO THERE'S
17   NOT A REFERENCE TO THAT.
18             BUT, SECOND, TO THE EXTENT THAT THE
19   DEFENDANT OPENS THE DOOR IN THE PRESENTATION OF
20   CROSS-EXAMINATION OR, HYPOTHETICALLY, IN THE
21   DEFENDANT'S CASE, WERE THE DEFENDANT ELECT TO PRESENT
22   ONE, BEYOND THE LIMITED DIRECT EXAMINATION OF ONE
23   WITNESS, WHICH WE'VE ALREADY ADDRESSED, I WOULD REVIEW
24   IT AGAIN AND SEE WHETHER THE DOOR HAS BEEN OPENED TO A
25   CLAIM THAT, THROUGHOUT THE -- THAT THROUGHOUT
```

72

1    DEFENDANT'S TIME AT WORK, INCLUDING AT MMCOMM, THIS WAS

2    ALL ABOUT CIVILIAN COMMUNICATIONS, ACADEMIC WORK,

3    NOTHING TO DO WITH THESE OTHER AREAS, THEN I WOULD

4    RECONSIDER THIS.

5              MS. SARTORIS:  FOR MY CLARIFICATION, YOUR

6    HONOR, FOR PURPOSES OF SPECIAL AGENT MILLER'S

7    TESTIMONY, WOULD THE COURT THEN BE AMENABLE TO NOT

8    SHOWING IT TO THE JURY OR DISCUSSING IT, BUT JUST

9    HAVING HER STATE THAT THE NOTEBOOK WAS RECOVERED FROM

10   THE LOCATION.  AND THAT WAY, THE GOVERNMENT CAN MOVE IT

11   INTO EVIDENCE AT A LATER POINT IF THE DOOR IS OPENED?

12             MR. HANUSZ:  NO OBJECTION, YOUR HONOR.

13             THE COURT:  YOU CAN DO THAT.  THAT'S FINE.

14                  726?

15             MR. HANUSZ:  726 WAS DEALT WITH, YOUR HONOR.

16   THAT WAS THE DRIVER'S LICENSE -- I'M SORRY, 726 --

17             THE COURT:  NO.

18                  726 ARE TWO MORE PAGES FROM THE

19   NOTEBOOKS.

20             MR. HANUSZ:  SORRY, THAT'S RIGHT.

21                  SO SAME SIMILAR OBJECTION, YOUR HONOR.  I

22   THINK THE COURT CAN LOOK AT THESE IN TANDEM.

23             MS. SARTORIS:  THEY ARE SLIGHTLY DIFFERENT.

24   726, IT'S A DIFFERENT NOTEBOOK.

25                  BUT, HERE THE PAGES THAT ARE REFLECTED IN

1    THIS EXHIBIT ARE ONES THAT DIRECTLY DISCUSS EXPORT

2    RESTRICTIONS.  SO DEFENDANT'S WRITING ABOUT EMBARGOES,

3    END USERS, THE ENTITY LIST, RESTRICTIONS ON FOREIGN

4    PURCHASES.

5              THE COURT:  I UNDERSTAND.

6              MR. HANUSZ:  IT ALSO HAS "NAVY" AT THE TOP.

7              THE COURT:  I WOULD ADMIT THIS DOCUMENT, BUT

8    REDACT "NAVY."

9                   I CAN'T TELL WHAT THAT'S A REFERENCE TO.

10   THAT "NAVY" AND THE "4024 HAD A SIGNED COPY," I DON'T

11   KNOW WHAT THAT MEANS.

12                  DO YOU KNOW WHAT THAT MEANS?

13             MS. SARTORIS:  I DON'T, YOUR HONOR.  IT'S

14   DEFENDANT'S NOTES.

15                  IN THE CONTEXT HERE, IT LOOKS LIKE IT IS

16   THE HEADING.  HE'S TALKING ABOUT THINGS REFLECTING

17   THAT.

18                  BUT THE MAIN PURPOSE HERE IS REALLY TO

19   SHOW NOTES ABOUT DEFENDANT'S SOPHISTICATION WITH

20   RESPECT TO EXPORT RESTRICTIONS.

21             THE COURT:  I'LL ADMIT 726 WITH THAT

22   REDACTION.

23                  THAT LEAVES 787-A.

24             MR. HANUSZ:  THIS WAS A DISCOVERY CUTOFF

25   ISSUE, YOUR HONOR.

74

```
1          MS. SARTORIS:  YOUR HONOR, I THINK THAT WAS
2   ALREADY ADDRESSED BY THE COURT'S PRIOR STATEMENT ABOUT
3   THE DISCOVERY CUTOFF.
4              BUT WITH RESPECT TO THIS ONE IN
5   PARTICULAR, I WILL ALSO NOTE, IT WAS PRODUCED ON -- IN
6   DRAFT FORM TO DEFENSE COUNSEL ON MARCH 14TH AND, AGAIN,
7   ON APRIL 10TH, AND THEN A FINAL FORM ON APRIL 28TH,
8   WHICH WOULD BE PRIOR TO THE MAY 1ST CUTOFF.
9          THE COURT:  OKAY.  IS THERE AN OBJECTION,
10  OTHER THAN TIMING?
11         MR. HANUSZ:  THERE'S NOT, YOUR HONOR.
12         THE COURT:  I'D OVERRULE THE OBJECTION ON
13  THAT.
14         MR. HANUSZ:  LASTLY, THE GOVERNMENT IS
15  INTENDING TO USE VISUAL AIDS WITH AGENT WESTBY
16  TOMORROW.  THERE ARE FOUR POWER POINT SLIDES.  THE
17  DEFENSE OBJECTS TO THE USE OF THESE AS JUST NOT
18  NECESSARY.  IT'S NOT A WEALTH OF INFORMATION THAT'S
19  BEING SUMMARIZED.
20         MR. ROLLINS:  WE CAN WAIT TO TAKE THIS UP FOR
21  THE BREAK TOMORROW.
22         MR. HANUSZ:  IF THE GOVERNMENT WANTS TO HAVE
23  THESE SLIDES IN THE CLOSING ARGUMENT, NO ONE WILL
24  OBJECT TO THAT.  BUT WITH A WITNESS --
25         THE COURT:  I'LL HAVE TO EVALUATE IN THE
```

1  CONTEXT OF THE TESTIMONY.  I DON'T THINK THIS IS THE

2  MOST DRAMATIC OF THE ISSUES WE'VE ADDRESSED TODAY.

3          MR. HANUSZ:  I WOULD AGREE WITH THAT, YOUR

4  HONOR.

5          THE COURT:  I'LL SEE YOU TOMORROW.

6          MR. SHOBAKI:  THANK YOU, YOUR HONOR.

7          MR. HANUSZ:  IF WE MAY ASK THE GOVERNMENT FOR

8  AN ORDER OF WITNESSES ON WEDNESDAY AS WELL TO ROUND OUT

9  THE WEEK?

10          THE COURT:  ANY OBJECTION TO THAT?

11          MR. SHOBAKI:  I DON'T KNOW WHAT IT IS, BUT

12  WE'LL FIGURE IT OUT.

13              DOES THE COURT ORDER TO FIGURE IT OUT TWO

14  DAYS IN ADVANCE?

15          THE COURT:  WELL, YOU KNOW OR YOU HAVE A

16  REASONABLE BASIS TO KNOW.  LET THEM KNOW SO THAT

17  EVERYBODY CAN BE PREPARED, AND WE CAN MOVE FASTER.

18          MR. HANUSZ:  THANK YOU, YOUR HONOR.  WE WOULD

19  PRIORITIZE ANY REMAINING OBJECTIONS BASED ON WITNESSES,

20  YOUR HONOR.

21              **(END OF PROCEEDINGS)**

22

23

24

25

1                    **CERTIFICATE OF OFFICIAL REPORTER**

2

3      COUNTY OF LOS ANGELES          )
                                      )
4      STATE OF CALIFORNIA            )

5
               I, ALEXANDER T. JOKO, FEDERAL OFFICIAL
6
       COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT
7
       COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY
8
       CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
9
       STATES CODE, THAT THE FOREGOING IS A TRUE AND CORRECT
10
       TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS
11
       HELD IN THE ABOVE-ENTITLED MATTER, AND THAT THE
12
       TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE
13
       REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED
14
       STATES.
15
       DATE:  AUGUST 26, 2019
16

17

18                         /S/ ALEXANDER T. JOKO
                           _____
19                         ALEXANDER T. JOKO, CSR NO. 12272
                           FEDERAL OFFICIAL COURT REPORTER
20

21

22

23

24

25